IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>Plaintiff,<br><br>UTAH DEMOCRATIC PARTY,<br><br>Intervenor Plaintiff,<br><br>v.<br><br>SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>Defendant. | **SECOND MEMORANDUM DECISION AND ORDER OF CERTIFICATION**<br><br>Case No. 2:16-cv-00038-DN<br><br>Judge David Nuffer |

On February 4, 2016, a Memorandum Decision and Order of Certification was issued, which certified a controlling question of law ("First Question") in this case to the Utah Supreme Court.[1] At a hearing held earlier that same day, all parties agreed that the First Question should be certified immediately due to pressing election deadlines.[2] The Memorandum Decision and Order of Certification containing the First Question was entered immediately to allow the certification process to move forward as quickly as possible.

At the February 4 hearing, the Utah Democratic Party ("UDP") stated that it believed there were additional questions that needed to be certified.[3] UDP was granted leave to file a

---

[1] Memorandum Decision and Order of Certification, docket no. 22, entered Feb. 4, 2016.

[2] *See id.* at 2.

[3] Minute Entry, docket no. 21, entered Feb. 4, 2016.

motion for certification of additional questions,[4] and UDP filed that motion the next day, on February 5 ("UDP Motion").[5] Pursuant to this court's expedited briefing schedule on the UDP Motion,[6] the Utah Republican Party ("URP") filed a response on February 9[7] and Lieutenant Governor Cox filed a response on February 10.[8] UDP filed a reply on February 11.[9]

After careful review of the briefing, the UDP Motion[10] is GRANTED. Depending on the Utah Supreme Court's answer to the First Question, the additional question now being certified ("Second Question") may be "a controlling issue of law in [this] proceeding." There appears to be no controlling Utah law on the Second Question.[11] To avoid a prolonged and inefficient series of events in which the Second Question is not certified until the Utah Supreme Court issues a decision on the First Question, this Second Question is being certified now to avoid possible delay.

The purpose of certification is "to provide meaningful and comprehensive assistance . . . ."[12] Thus, it "would not . . . promot[e] efficiency, or otherwise serv[e] the objectives of the question certification process, [to return] an answer to the federal court which

---

[4] *Id*.

[5] Utah Democratic Party's Motion to Certify Question and Memorandum in Support Thereof ("UDP Motion"), docket no. 25, filed Feb. 5, 2016.

[6] Docket Text Order, docket no. 27, entered Feb. 8, 2016.

[7] Opposition to the Utah Democratic Party's Motion to Certify Question, docket no. 28, filed Feb. 9, 2016.

[8] Defendant's Response to the Utah Democratic Party's Motion to Certify Question to the Utah Supreme Court, docket no. 29, filed Feb. 10, 2016.

[9] Consolidated Reply Memorandum in Support of Utah Democratic Party's Motion to Certify Question, docket no. 31, filed Feb. 11, 2016.

[10] Utah Democratic Party's Motion to Certify Question and Memorandum in Support Thereof ("UDP Motion"), docket no. 25, filed Feb. 5, 2016.

[11] *See* Utah Rule of Appellate Procedure 41(a).

[12] *Miller v. United States*, 2004 UT 96 ¶ 10, 104 P.3d 1202.

all concerned know has spawned additional state law questions and upon which [it] elect[ed] to remain silent."[13] Therefore, even though the certification process is not designed for "advisory opinions on general matters of interest to the federal courts,"[14] this Second Question is certified at this time to promote efficiency, avoid unnecessary delay, and to allow the Utah Supreme Court to consider this important issue. As always, the Utah Supreme Court retains complete authority to accept or reject the certification;[15] to "reformulate the question if necessary regardless of whether the federal court has expressly stated this in the certification,"[16] "in order for [the] answer of the certified question to clarify the disputed issue of law and to assist the federal district court[;]"[17] and to answer the question "more expansive[ly] . . . than a literal reading of the certified question may warrant."[18]

The Second Question that is now being certified to the Utah Supreme Court for resolution pursuant to Utah Rule of Appellate Procedure 41(a) is:

> If a registered political party ("RPP") that has elected to be designated as a Qualified Political Party ("QPP") fails to satisfy the requirements of a QPP, must the Lieutenant Governor treat that political party as an RPP under Utah law?

The statutes that may be at issue include: Utah Code §§ 20A-8-401(1); 20A-8-401(2); 20A-9-101(12)(d); 20A-9-401(2); 20A-9-406(1); 20A-9-406(3); 20A-9-406(4); 20A-9-407;

---

[13] *Id.* ¶ 8.

[14] *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne,* 2012 UT 66, ¶ 8, 289 P.3d 502.

[15] Utah Rule of Appellate Procedure 41(e); Utah Const. Art. VIII, § 3 ("The [Utah] Supreme Court shall have original jurisdiction . . . to answer questions of state law certified by a court of the United States.").

[16] *In re W. Side Prop. Assocs.*, 2000 UT 85, ¶ 13, 13 P.3d 168.

[17] *Egbert v. Nissan Motor Co.*, 2010 UT 8, ¶ 13 n. 2, 228 P.3d 737.

[18] *Miller*, 2004 UT 96, ¶ 10.

20A-9-408; 20A-9-409; and 67-1a-2(2)(a). State Constitutional provisions that may be at issue include: Utah Const. art. I, §§ 1, 2, 7, 17, and 24.

## RELEVANT FACTS

The URP filed this lawsuit on January 15, 2016, alleging that SB54 violates the URP's federal constitutional rights. On February 3, 2016, the Court granted UDP's motion to intervene. UDP filed its complaint on February 4, 2016. SB54 is a law that was enacted by the Utah State Legislature in the 2014 General Session modifying the Utah Election Code as it relates to the nomination of candidates, primary and general elections, and ballots. The sections of the Utah Election Code that are affected by SB54 include: 20A-1-102, 20A-1-501, 20A-5-101, 20A-6-301 through 305, 20A-9-101, 20A-9-202, 20A-9-403, and 20A-9-701.

On November 3, 2015, this court entered, in a separate prior lawsuit, a ruling that held Utah Code § 20A-9-101(12)(a) ("Unaffiliated Voter Provision") unconstitutional as applied to the URP and the Constitution Party of Utah ("CPU") because it severely burdened their associational rights without a compelling state interest.[19] The separate lawsuit declared that the URP and the CPU, as "Qualified Political Parties" ("QPP") under SB54, were not required to permit unaffiliated voters to vote in their primary elections.

On August 17, 2015, URP "certifie[d] its intent to nominate candidates in 2016 in accordance with its internal rules and procedures and Utah Code Ann. § 20A-9-406."[20] After the

---

[19] *Utah Republican Party v. Herbert et al.*, Case No. 2:14-cv-00876-DN-DBP, 2015 WL 6695626 (D. Utah, Nov. 3, 2015). UDP did not participate in this prior lawsuit. Therefore, the Unaffiliated Voter Provision still applies to UDP.

[20] Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox (August 17, 2015), attached as Exhibit B to the Defendants' Motion for Summary Judgment and Memorandum in Support in Case No. 2:14-cv-00876-DN-DBP (D. Utah) docket no. 162-2, filed Sept. 21, 2015.

4

previous lawsuit concluded, the URP formally declared to the Lieutenant Governor's Office that it would restrict its candidate-selection procedures to the convention method, thereby prohibiting any URP candidate from gathering signatures.[21] On November 19, 2015, the Lieutenant Governor stated that he disagreed that URP could make this restriction, asserting that "it is the individual who has the right to choose their path to the ballot and the individual may seek a nomination by the use of both methods."[22] Later, in a letter to Republican State Senator Todd Weiler, who wrote a letter to the Lieutenant Governor's Office asking about his options for gathering signatures in light of the URP's formal declaration, the Lieutenant Governor's Office stated that Sen. Weiler had the option to gather signatures and if the URP revoked Sen. Weiler's party membership for gathering signatures, the URP would no longer qualify as a QPP under Utah election law.[23]

Subsequently, on January 19, 2016, the Lieutenant Governor's Office issued a Voter and Candidate Clarification memorandum which modified the position taken in the letter to Sen. Weiler:

> Question #5: Is it possible that the Republican Party will lose its Qualified Political Party (QPP) status and that candidates who choose only the caucus/convention path will be removed from the ballot?
>
> No. Because there is nothing in the law that anticipates what happens if a party fails to follow the requirements of a QPP, and because there is no provision to subsequently disqualify a party,

---

[21] Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox at 2-3 (Dec. 3, 2015), *available at* http://www.scribd.com/doc/292657060/James-Evans-Letter-to-Spencer-Cox-12-3-2015#scribd.

[22] Letter from Lt. Gov. Spencer J. Cox to URP Chairman James Evans at 1 (Nov. 19, 2015), *available at* http://elections.utah.gov/Media/Default/2016%20Election/James%20Evans%20letter%2011.19.2015.pdf.

[23] Letter from Utah Director of Elections Mark Thomas, Lieutenant Governor's Office, to Utah State Senator Todd Weiler (Nov. 20, 2015), attached as Exhibit 2 to Complaint in Case No. 2:16-cv-00038-DN (D. Utah), docket no. 2, filed Jan. 15, 2016.

> this has been subject to different legal interpretations. On August 17, 2015, the Utah Republican Party certified their designation as a QPP and specifically stated their intention to follow all of the statutory QPP provisions and requirements. As such, my intention is to rely on this certification, and allow candidates access to the ballot through the caucus/convention process, unless and until the party officially revokes that certification. While I reject the possibility of removing candidates that rely on the law to get on the ballot by gathering signatures, I also reject the possibility of removing candidates that rely on the law to participate in the caucus/convention system.[24]

The Lieutenant Governor's Office thus takes the position that a political party which has expressed its intent to restrict candidate-selection procedures to the convention method will still remain a QPP, and that the political party's candidates who use the convention method will have access to the ballot without concern that their party's QPP status will be revoked. The Lieutenant Governor's Office has also taken the position that signature-gathering candidates from that political party will still have access to the ballot.[25] To date, several URP members have declared their intention to gather signatures, including Sen. Weiler and the Lieutenant Governor's running mate, Governor Herbert.[26]

In this lawsuit, a central question is whether a QPP must permit its members to seek its nomination by "either" or "both" of the methods set forth in § 20A-9-407 and § 20A-9-408 and if so, what the consequences for failing to permit "either" or "both" routes to the primary ballot are. The previous question ("First Question") certified to the Utah Supreme Court addressed the

---

[24] Voter and Candidate Clarification Memorandum (Jan. 19, 2016), *available at* http://elections.utah.gov/Media/Default/2016%20Election/SB54%20Clarification%20Memo.pdf

[25] However, it is unclear if the Lieutenant Governor's Office will place signature-gathering candidates from that political party on the ballot *as a candidate of the political party* they listed on their declaration of candidacy or if the signature-gathering candidates will appear on the ballot *with no party affiliation*.

[26] Utah Lieutenant Governor's Office, 2016 Candidate Signatures (Feb. 10, 2016, 9:51:21 AM), http://www.elections.utah.gov/election-resources/2016-candidate-signatures.

meaning of "either or both" in § 20A-9-101(12)(d),[27] but did not address the effect of the conflict between the URP's August 17, 2015 certification to abide by all QPP requirements and the URP's stated position to prohibit URP candidates from gathering signatures. The question being certified now ("Second Question") is whether a political party may maintain its declared QPP status (and thus provide its candidates access to the ballot through the caucus/convention process) if it fails to satisfy the requirements of a QPP.

Title 20A of the Utah Code may be read to require the Lieutenant Governor to treat an RPP as a QPP as long as it receives a certification from the RPP that it elects to be designated as a QPP, regardless of whether the RPP has followed all QPP provisions. The Lieutenant Governor believes there is no express authority given to the Lieutenant Governor in Title 20A to "revoke" QPP status once a designation has been made. On the other hand, Utah Code §§ 20A-9-101(12)(d) and 67-1a-2(2)(a) may be read to require the Lieutenant Governor to enforce SB54's definition of a QPP by "revoking" self-declared QPP status of an RPP that has failed to meet the requirements of a QPP. In this case, the First Question deals with Utah Code § 20A-9-101(12)(d). That section provides that:

> (12) "Qualified political party" means a registered political party that:
>
> > . . .
> >
> > (d) permits a member of the registered political party to seek the registered political party's nomination for any elective office by the member choosing to seek the nomination by either or both of the following methods:

---

[27] Memorandum Decision and Order of Certification, docket no. 22, entered Feb. 4, 2016.

>> (i) seeking the nomination through the registered political party's convention process, in accordance with the provisions of Section 20A-9-407; or
>
>> (ii) seeking the nomination by collecting signatures, in accordance with the provisions of Section 20A-9-408; . . .

Depending on the answer to the First Question, the Second Question may become relevant. The Second Question is whether, when a political party provides only one method to its candidates—the "convention method" (Utah Code § 20A-9-407) *but not* the "signature method" (Utah Code § 20A-9-408)—the Lieutenant Governor must deem that political party an RPP rather than a self-designated QPP.

This court is unaware of any decision interpreting the applicable provisions of Utah law, particularly Utah Code § 20A-9-101(12)(d). Therefore, the court enters the following order of certification:

**ORDER**

IT IS HEREBY ORDERED that the Joint Motion to Certify Question to the Utah Supreme Court[28] is GRANTED. The following question is hereby certified to the Utah Supreme Court for resolution pursuant to Utah Rule of Appellate Procedure 41(a):

> If a registered political party ("RPP") that has elected to be designated as a Qualified Political Party ("QPP") fails to satisfy the requirements of a QPP, must the Lieutenant Governor treat that political party as an RPP under Utah law?

IT IS FURTHER ORDERED that the Clerk of this Court shall forward a certified copy of this Order to the Utah Supreme Court pursuant to Utah Rule of Appellate Procedure 41(d).

---

[28] Motion to Certify Question to the Utah Supreme Court, docket no. 25, filed Feb. 5, 2016.

IT IS FURTHER ORDERED that the Clerk of this Court shall forward to the Utah Supreme Court all or any portion of the record in this case and *Utah Republican Party v. Herbert*, No. 2:14-cv-00876-DN-DBP (D. Utah), which may be requested by the Utah Supreme Court pursuant to Utah Rule of Appellate Procedure 41(d).

Dated February 11, 2016.

BY THE COURT:

_____
David Nuffer
United States District Judge