IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>                    Plaintiff,<br><br>UTAH DEMOCRATIC PARTY, a registered political party of Utah,<br><br>                    Plaintiff and Intervenor,<br><br>v.<br><br>SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>                    Defendant. | **ORDER FOR ADDITIONAL BRIEFING AND RESCHEDULING HEARING**<br><br><br>Case No. 2:16-cv-00038-DN<br>District Judge David Nuffer |

On February 4, 2016, a status conference was held to discuss issues and scheduling.[1] At that status conference, the parties were ordered to brief, among other things, the issues identified in the Utah Republican Party's ("URP") Complaint at subparagraphs 73(i), and 73(j). Those subparagraphs provide as follows:

>  73.    The Party is entitled to a declaratory judgment establishing the unconstitutionality of the SB54 set forth above as applied to the manner in which
>
>           . . .
>
>           i. burdened the Party's associational rights and the rights of disassociation, by imposing on candidates seeking the Party's nomination onerous signature gathering requirements beyond those ever allowed by the United States Supreme Court, and thus unconstitutionally burdens the Party's rights;

---

[1] Minute Entry, docket no. 21, entered Feb. 4, 2016.

j. burdened the rights of the Party and its members by imposing on them signature-gathering requirements beyond those ever allowed by law . . . .[2]

Consistent with the expedited briefing schedule set at the February 4 status conference, the URP filed a motion for partial summary judgment regarding these subparagraphs on February 12;[3] the Utah Democratic Party ("UDP") filed a response on February 19;[4] Lieutenant Governor Cox ("LG") filed a memorandum in opposition on February 19;[5] and the URP filed a reply on February 27.[6]

After reviewing the briefing, it appears that the signature gathering requirements under Utah Code § 20A-9-408(8)(b)(iii) and -408(8)(b)(iv), which require respectively 2,000 signatures for a state Senate district race and 1,000 signatures for a state House district race, may be unconstitutional as applied to the URP. Several cases hold that requirements of low percentages, such as two and three percent of eligible voters or signers, are constitutional and do not impose a severe burden on ballot access.[7] Other cases have held that signature-gathering requirements from two to five percent can be unconstitutional if accompanied by other harmful factors.[8] One

---

[2] [URP] Complaint at 25-26, ¶73, docket no. 2, filed Jan. 15, 2016.

[3] Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs 73(a), (i) and (j), docket no. 39, filed Feb. 12, 2016.

[4] Utah Democratic Party's Response to Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs 73(a), (i) and (j), docket no. 44, filed Feb. 19, 2016.

[5] Defendant's Memorandum in Opposition to Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs 73(a), (i) and (j), docket no. 46, filed Feb. 19, 2016.

[6] Reply Memorandum in Support of Motion for Summary Judgment Regarding Subparagraphs 73(a), (i) and (j), docket no. 55, filed Feb. 27, 2016. This reply was due on February 26. *See* Minute Entry, docket no. 21, entered Feb. 4, 2016.

[7] *See Jenness v. Fortson,* 403 U.S. 431 (1971) (5%); *Am. Party of Tex. v. White,* 415 US 767 (1974) (3%, but a maximum of 500 total votes); *Arutunoff v. Oklahoma State Election Board,* 687 F.2d 1375 (10th Cir. 1982) (5% for party formation); *Libertarian Party of Florida v. Florida,* 710 F.2d 790 (11th Cir. 1983) (3% for party formation); and *Stone v. Board of Election Comm'rs for City of Chicago,* 750 F.3d 678 (7th Cir. 2014) (effectively 1%).

[8] *See Storer v. Brown,* 415 U.S. 724 (1974) (vacating and remanding lower court decision that 5% was not unduly burdensome); *Tucker v. Salera,* 424 U.S. 959 (1976) ("summarily affirming" lower court decision that 2% was unduly burdensome because of an unreasonably early deadline for signature submission); *Mandel v. Bradley,* 432 U.S. 173 (1977) (vacating and remanding lower court decision that 3% was not unduly burdensome, and instructing lower court to consider additional factors besides percentage); and *McLain v. Meier,* 637 F.2d 1159 (8th Cir. 1980)

case struck down a ten percent signature gathering requirement when considered with other factors.[9] Under SB54, the subsequent ruling in the First Lawsuit, and the fact that only Republicans are allowed to vote in URP's primary election,[10] signature gathering percentage requirements for the URP in House district races appear to range from 7.14% (District 27) to 57.21% (District 26), with the requirement in 54 of the 75 House districts exceeding 10%.[11] Signature gathering percentage requirements for the URP in Senate district races appear to range from 6.21% (District 14) to 30.82% (District 1), with 12 of the 29 Senate Districts exceeding 10%.[12]

In addition to varying signature gathering percentages *among different* House and Senate districts, there is a disparate signature requirement between RPPs and QPPs *in the same district*. For example, a candidate seeking office in House District 26 *under the RPP path* would need to obtain signatures from only "two percent of the registered political party's members who reside in [House District 26]."[13] By contrast, a URP candidate seeking office in the same House District 26 *under the QPP path* would currently be required to obtain signatures from 57% "of registered voters who are residents of [House District 26] and are permitted by the qualified political party to vote for the qualified political party's candidates in a primary election."[14] The large difference in percentages is due to the fact that a *fixed number* of signatures is required for a QPP, rather

(holding that a signature requirement for party formation that amounted to 3.3% was unconstitutional in light of other factors).

[9] *Lee v. Keith,* 463 F.3d 763 (7th Cir. 2006) (10%).

[10] *See* Utah Code § 20A-9-406(1) (allowing QPP to "identity of one or more registered political parties whose members may vote for the qualified political party's candidates").

[11] URP MPSJ at 11-14, docket no. 39, filed Feb. 12, 2016.

[12] *Id.* at 10-11, docket no. 39, filed Feb. 12, 2016.

[13] Utah Code § 20A-9-403(3)(a)(ii).

[14] *Id.* § 20A-9-408(8)(b)(iv).

than a *percentage*, as required for RPPs.[15] While there is a difference in the "percentage"[16] of signatures a QPP candidate needs to gather depending on who the QPP allows to vote in the QPP's primary, the disparate requirement between QPPs and RPPs in the same geographical area appears to run directly contrary to the principles set forth by the U.S. Supreme Court in *Illinois Board of Elections v. Socialist Workers Party*.[17] There, the Court determined that there was no

> rational reason why a petition with identical signatures can satisfy the legitimate state interests for restricting ballot access in state elections, and yet fail to do the same in a lesser unit. Any greater requirement than 25,000 signatures cannot be said to be the least drastic means of accomplishing the state's goals, and must be found to unduly impinge [on] the constitutional rights of independents, new political parties, and their adherents.[18]

Here, it would seem that if a two percent signature requirement satisfies the legitimate state interests in House District 26 when a party is a RPP, there would be no "rational reason" why a much higher percentage would be required in the same "unit" where the only difference is the candidate's political party is a QPP. The cases cited in the briefing to date do not appear to support the high *numeric* signature requirements imposed under the QPP path of SB54, which translates into a high *percentage* for the URP.[19]

High and disparate signature requirements are not the only factors that tend to show the unconstitutionality of Utah Code § 20A-9-408(8)(b)(iii) and -408(8)(b)(iv). In addition to a high percentage of signatures required, there is a restriction on voters signing more than one

---

[15] *Compare* Utah Code § 20A-9-403(3) (RPP) *with* Utah Code § 20A-9-408(8)(b) (QPP).

[16] A fixed number of signatures is required under the statute, but that fixed number of signatures may be expressed as a "percentage" when divided by the number of eligible signers (*e.g.*, signatures required/eligible signers).

[17] *Illinois Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979).

[18] *Id.* at 179 (alterations in original, citation omitted).

[19] While not as comparable as the percentage standards applicable to RPP candidates gathering signatures, at the county level the standard applicable to RPP and QPP candidates is also expressed as a percentage, a low percentage of 3%. *See* Utah Code § 20A-9-408(8)(b)(v).

petition.[20] The restriction on voters signing petitions is a factor that is analyzed in several of the cases cited by the parties.[21] The rule that voters in Utah can only sign one petition for each office in their geographical area is another factor tending to show the burden on candidates attempting to gather enough signatures to access the ballot, especially in a House district, for example, that requires as high as 57% signatures. In such a district, only one candidate could obtain access by signature gathering to the party's primary ballot because no other candidate would also be able to obtain 57% signatures. Other factors include the filing deadline, the time to gather signatures, the costs, whether the nomination scheme applies equally to all candidates gathering signatures, and ballot access history (whether candidates have been able to successfully access the ballot using the signature gathering process provided).[22]

UDP and the LG argue that there is no "severe burden" because there are two paths in the QPP route. They argue that a candidate need not take the signature path to the ballot because that candidate could go through the party's convention to obtain access to the ballot. This is very similar to the argument the State raised in the First Lawsuit, which was rejected. It seems that if the law provides a path to the ballot, that path should be free of constitutional infirmity. The signature path within the QPP route effectively imposes signature percentages on the URP that are much higher than have been approved under precedent reviewed to date. And, in contrast to the "alternative paths" language in *Jenness v. Fortson*, where the Supreme Court found no

---

[20] Utah Code § 20A-9-411.

[21] *Jenness v. Fortson,* 403 U.S. 431 (1971); *Storer v. Brown*, 415 U.S. 724 (1974); *Am. Party of Tex. v. White*, 415 US 767 (1974); *Libertarian Party of Florida v. Florida*, 710 F.2d 790 (11th Cir. 1983); *Lee v. Keith,* 463 F.3d 763 (7th Cir. 2006); and *Stone v. Board of Election Comm'rs for City of Chicago*, 750 F.3d 678 (7th Cir. 2014).

[22] *See, e.g., Mandel v. Bradley*, 432 U.S. 173 (1977), *Lee v. Keith,* 463 F.3d 763 (7th Cir. 2006), *Stone v. Board of Election Comm'rs for City of Chicago*, 750 F.3d 678 (7th Cir. 2014),

constitutional infirmity in either path,[23] here there is a significant concern regarding the constitutionality of the signature-gathering path of the QPP route, as applied to the URP.

The signature requirements under the QPP path were enacted with the expectation that unaffiliated voters would be part of the pool from which candidates could obtain the number of required signatures. But, assuming the number of unaffiliated voters is roughly equal to the number of registered Republican voters,[24] the percentages of eligible signers required for some Senate and House candidates would still be very high even *with* unaffiliated voters in the calculation. Now, as a result of the First Lawsuit, unaffiliated voters are not part of the pool from which candidates in the URP may obtain signatures because the Unaffiliated Voter Provision was held to be unconstitutional as applied to the URP[25] and the replacement provision, Utah Code § 20A-9-406(1), unlike the RPP counterpart,[26] does not provide for the URP to allow unaffiliated voters into its primary.[27] The ruling in the First Lawsuit greatly reduced the pool from which candidates in the URP may obtain signatures. The requirement of a fixed number of signatures under the QPP route, instead of a presumptively reasonable percentage as was enacted for the RPP candidate[28] or a QPP candidate in a county race,[29] gives life to the claims in URP's complaint ¶ 73(i) and (j).

---

[23] *Jenness v. Fortson,* 403 U.S. 431, 440-41 (1971) ("We cannot see how Georgia has violated the Equal Protection Clause of the Fourteenth Amendment by making available these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other.").

[24] There are approximately 640,000 registered Republicans in the State of Utah and approximately 610,000 unaffiliated voters. Mark Thomas, Director of Elections for the State of Utah, Dep. at 215:8-12, docket no. 69-3 in Case No. 2:14-cv-00876-DN-DBP, filed Nov. 3, 2015.

[25] The Unaffiliated Voter Provision, Utah Code § 20A-9-101(12)(a) was held unconstitutional as applied to both URP and the Constitution Party of Utah ("CPU"), *see* Memorandum Decision and Order at 39, docket no. 207 in Case No. 2:14-cv-00876-DN-DBP, filed Nov. 3, 2015, but the CPU is not a party to this case.

[26] Utah Code § 20A-9-403(2)(a)(ii) (" . . . and whether or not persons identified as unaffiliated with a political party may vote for the registered political party's candidates").

[27] Utah Code § 20A-9-406(1).

[28] Utah Code § 20A-9-403(3) (2%)

IT IS HEREBY ORDERED that the parties, on or before **4:00 p.m. March 10, 2016**, shall:

(1)      Provide any additional authority that bears on the precise signature gathering issue presented in this case. Much of the case law that has been cited either refers to signatures in the *party formation* context—that is, a requirement that a party obtain sufficient signatures *to be recognized as a political party in the state*, or refers to signature gathering with respect to independent candidates. A *party's* access to the ballot is a different context than a requirement of a party-member candidate (not an independent) to gather signatures to gain access to the ballot. The parties shall submit any authority they may have regarding signature gathering requirements on a party-member candidate seeking ballot access. Also, the parties shall submit any additional authority applying signature gathering principles in the *party formation* context to the *ballot access* context or applying signature gathering principles in the *independent candidate* context to the *party-member* candidate context.

(2)      Provide any additional authority on the alternative path argument that would suggest that it can apply when the challenged path is constitutionally infirm.

(3)      Identify any statutory provision that could take the function of Utah Code § 20A-9-408(8)(b) if it were struck down. If there is no provision to stand in for Utah Code § 20A-9-408(8)(b), the parties should articulate the effect striking down this section of the law would have on the 2016 election cycle.

IT IS HEREBY ORDERED that the Defendant, on or before **noon March 12, 2016** shall file any statement of legislation proposed or enacted which would amend the signature thresholds found in Utah Code § 20A-9-408(8)(b).

---

[29] Utah Code § 20A-9-408(8)(b)(v).

IT IS FURTHER ORDERED that the hearing currently scheduled for March 10, 2016 at

8:30 a.m.[30] is VACATED and RESCHEDULED for **Monday, March 14, 2016 at 3:00 p.m.**


Dated March 4, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[30] Docket no. 48.