IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>Plaintiff,<br><br>UTAH DEMOCRATIC PARTY,<br><br>Intervenor Plaintiff,<br><br>v.<br><br>SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>**DENYING IN PART [37] MOTION FOR JUDGMENT ON THE PLEADINGS;**<br><br>**DENYING IN PART [38] MOTION FOR JUDGMENT ON THE PLEADINGS;**<br><br>**DENYING [39] MOTION FOR PARTIAL SUMMARY JUDGMENT;**<br><br>**GRANTING SUMMARY JUDGMENT UNDER RULE 56(F) FOR THE LG AND AGAINST THE URP; AND**<br><br>**GRANTING LEAVE TO THE UDP TO FILE AN AMENDED COMPLAINT**<br><br>Case No. 2:16-cv-00038-DN<br><br>District Judge David Nuffer |

The following motions are currently pending: (1) Utah Democratic Party's Motion for Judgment on the Pleadings and Memorandum in Support Thereof ("37 UDP MJP");[1]

(2) Defendant's Motion for Judgment on the Pleadings and Memorandum in Support ("38 LG MJP");[2] (3) Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs

---

[1] Utah Democratic Party's Motion for Judgment on the Pleadings and Memorandum in Support Thereof ("37 UDP MJP"), docket no. 37, filed Feb. 12, 2016.

[2] Defendant's Motion for Judgment on the Pleadings and Memorandum in Support ("38 LG MJP"), docket no. 38, filed Feb. 12, 2016.

73(a), (i) and (j) ("39 URP MPSJ");[3] and (4) Utah Republican Party's Motion for Partial

Summary Judgment on Subparagraphs 73(b)-(g) ("41 URP MPSJ").[4] This Memorandum

Decision and Order deals only with the first three motions listed above. No decision is rendered

as to the 41 URP MPSJ because it raises issues that must await answers to questions certified to

the Utah Supreme Court.[5]

     For the reasons set forth below, the 37 UDP MJP is DENIED IN PART, the 38 LG MJP

is DENIED IN PART, and the 39 URP MPSJ is DENIED. Summary judgment is GRANTED for

the LG under Rule 56(f) with respect to the judicial estoppel and "onerous" signature arguments

raised in the 39 URP MPSJ. Additionally, leave is granted for the Utah Democratic Party to file

an amended complaint.

## CONTENTS

CONTENTS ............................................................................................................................ 2
STANDARD FOR JUDGMENT ON THE PLEADINGS ..................................................... 3
STANDARD FOR SUMMARY JUDGMENT ....................................................................... 3
UNDISPUTED MATERIAL FACTS ..................................................................................... 4
    The First Lawsuit ............................................................................................................ 4
    URP and LG Communication Following the First Lawsuit ........................................... 11
    The Current Lawsuit ...................................................................................................... 13
    URP and SB54 ............................................................................................................... 14
DISCUSSION ......................................................................................................................... 16
    Claim Preclusion Does Not Bar Subparagraphs 73(i) and (j) ...................................... 16
    Issue Preclusion Does Not Bar Subparagraphs 73(i) and (j) ........................................ 20
    Claim Splitting Does Not Bar URP's Claims ................................................................ 22
    Waiver Does Not Bar URP's Claims .............................................................................. 24
    Judicial Estoppel Does Not Apply .................................................................................. 25
    Constitutionality of the QPP Path's "Onerous" Signature Gathering Requirements ....... 28
        Standard for Determining Constitutionality of Ballot Access Laws .................. 28

---

[3] Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs 73(a), (i) and (j) ("39 URP MPSJ"), docket no. 39, filed Feb. 12, 2016.

[4] Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(b)-(g) ("41 URP MPSJ"), docket no. 41, filed Feb. 17, 2016.

[5] Memorandum Decision and Order of Certification, docket no. 22, entered Feb. 4, 2016; Second Memorandum Decision and Order of Certification, docket no. 34, entered Feb. 11, 2016.

        If Analyzed without the Convention Path, Subsections (8)(b)(iii) and (iv) of the
            Signature Gathering Provision Are Likely Unconstitutional .................... 31
        The Convention Route Is Constitutional ............................................................. 34
        Subsections (8)(b)(iii) and (iv) Are Not "Wholly Irrational" ............................... 35
        Subsections (8)(b)(iii) and (iv) Are Constitutional When Viewed in Totality ..... 38
    Rule 56(f) Judgment Independent of the Motion ....................................................... 39
    The UDP's Third Cause of Action ................................................................................. 39
CONCLUSION ............................................................................................................................ 40
ORDER ........................................................................................................................................ 42

## STANDARD FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[6] The factual record for such a motion is the text of the challenged pleading. The factual details supporting a claim must be great enough to make the claim plausible, rather than merely possible; i.e., "enough to raise a right to relief above the speculative level. . . ."[7] It must be reasonable for a court to draw the inference that the defendant is liable, based on the facts stated.[8] Recitations of elements of a claim and conclusory statements lack sufficient detail, and cannot trigger a court's assumption that all of the statements made in the pleading are true.[9]

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11] In

---

[6] *See, e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(b)(6).

[7] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

[8] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[9] *Id.*

[10] Fed. R. Civ. P. 56(a).

[11] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[12]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[13] The factual record for a motion for summary judgment is the undisputed material facts derived from the parties' briefing. The following Undisputed Material Facts were derived from the 39 URP MPSJ and the LG's[14] and the UDP's[15] oppositions to that motion, and the portions of the record cited in that briefing. The UDP did not respond to any statements of fact in its reply.[16]

The Undisputed Material Facts which come from the First Lawsuit history, from the statutes, and from the Complaint in this lawsuit are considered in the motions for judgment on the pleadings.

## UNDISPUTED MATERIAL FACTS

### The First Lawsuit

In December 2014, the Utah Republican Party ("URP") filed a lawsuit (the "First Lawsuit") against the Governor and Lieutenant Governor ("LG") of the State of Utah (collectively "State Defendants").[17] The First Lawsuit concerned the constitutionality of Senate Bill 54 ("SB54"). SB54 was enacted in 2014 by the Utah State Legislature to modify the Utah Election Code provisions about the nomination of candidates, primary and general elections, and

---

[12] *Id.*

[13] *Id.* at 670-71.

[14] Defendant's Memorandum in Opposition to Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs 73(a), (i), and (j) ("LG Opposition"), docket no. 46, filed Feb. 19, 2016.

[15] Utah Democratic Party's Response to Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs 73(a), (i), and (j) ("UDP Response"), docket no. 44, filed Feb. 19, 2016.

[16] Reply Memorandum in Support of Motion for Summary Judgment Regarding Subparagraphs 73(a), (i), and (j) ("URP Reply"), docket no. 55, filed Feb. 27, 2016.

[17] *Utah Republican Party et al. v. Herbert et al.*, Case No. 2:14-cv-00876-DN-DBP ("First Lawsuit").

ballots. Specifically, the URP asserted that it was entitled to a declaratory judgment and

injunctive relief under the First and Fourteenth Amendments with respect to the manner in which

the State, through SB54, has:

a. . . . taken away and misappropriated the Party's right to certify and endorse its
nominees for elected office;

b. . . . taken away and misappropriated the Party's right to communicate its
endorsement on the general election ballot and to control the use of its name
and emblem on the ballot;

c. . . . taken away and misappropriated the Party's right to determine for itself
the candidate selection process that will produce a nominee who best
represents the Party's political platform;

d. burdened the Party's associational rights by mandating changes to the Party's
internal rules and procedures, at the threat of depriving the Party of its rights if
it refuses to comply, that disadvantage the Party, and that the Party has
rejected and that conflict with the rules the Party has determined for itself, as
set forth in its Constitution and Bylaws, will produce a nominee who best
represents the Party's political platform;

e. burdened the Party's associational rights, and the rights of disassociation, by
imposing upon the Party a nominee who may not necessarily be a Party
member and without guaranteeing that nominee has been selected by a
majority of Party members participating in the primary election;

f. burdened the Party's associational rights and rights to free speech, by taking
away the Party's right to have its nominees commit themselves to the Party
Platform "as the standard by which my performance as a candidate and as an
officeholder should be evaluated," and replacing it with a process that requires
only that candidates gather signatures; and

g. burdened the Party's associational rights, and the rights of disassociation, by
taking away the Party's convention system as its preferred way of selecting
nominees and allowing a party to designate candidates in the primary election
by convention only if it agrees to open that primary election, that the State
now mandates, to persons unaffiliated with the Party; and

h. otherwise burden[ed] the Party's rights of association, or depriving it of its
rights of disassociation, free speech and due process as set forth above.[18]

The Constitution Party of Utah ("CPU") was permitted to intervene in the First Lawsuit

and asserted similar claims against the State Defendants.[19] CPU specifically challenged the

---

[18] Complaint ("URP Complaint 1") ¶ 110, ECF No. 2 in First Lawsuit, filed Dec. 1, 2014. The URP also asserted
trademark infringement claims in the First Lawsuit, but the trademark claims are not relevant to the current issues in
question.

[19] Complaint ("CPU Complaint"), ECF No. 27 in First Lawsuit, filed Jan. 27, 2015.

constitutionality of the nominating petition signature gathering requirements set forth in Utah Code § 20A-9-408 ("Signature Gathering Provision").[20] CPU contended that SB54 was unconstitutional because the "signature gathering processes are a severe burden on CPU's associational rights."[21] The Signature Gathering Provision permits a candidate to appear on a party's primary ballot by gathering a specified percentage or number of signatures from persons who are qualified to vote in that party's primary.[22]

URP sought a preliminary injunction in the First Lawsuit to stay the enforcement or implementation of SB54, but the preliminary injunction was denied.[23] The Memorandum Decision and Order Denying Preliminary Injunction noted that none of the burdens URP alleged were "severe," except one, which was not ripe for a challenge:

> **[N]one of the asserted burdens are severe except one,** which is not ripe for review since the evidence now presented by the Party cannot sustain an as-applied challenge to the QPP path of SB54.[24]

The Order explained Utah Code § 20A-9-101(12)(a) was potentially unconstitutional.[25] This subsection forced a political party to allow unaffiliated voters into the party's primary election in order to be considered a "qualified political party" ("QPP"). Subsection (12)(a) was referred to

---

[20] Motion for Partial Summary Judgment and Memorandum in Support at 15, ECF No. 163 in First Lawsuit, filed Sep. 21, 2015.

[21] Reply Memorandum in Support of Plaintiff Constitution Party of Utah's Motion for Partial Summary Judgment at 13, ECF No. 188 in First Lawsuit, filed Oct. 19, 2015.

[22] *See, e.g.* Utah Code § 20A-9-408(8)(b)(ii) (allowing candidate to appear on ballot for "a congressional district race" if the candidate collects "7,000 signatures of registered voters who are residents of the congressional district and are permitted by the qualified political party to vote for the qualified political party's candidates in a primary election"). All citations to the Utah Code are to the 2015 edition unless otherwise noted.

[23] Memorandum Decision and Order Denying Preliminary Injunction ("Order Denying Preliminary Injunction"), ECF No. 170 in First Lawsuit, entered Sep. 24, 2015.

[24] Order Denying Preliminary Injunction at 15 (emphasis added). A comprehensive explanation of the QPP/RPP path distinction is included in the Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment [162] and Granting in Part and Denying in Part Constitution Party of Utah's Motion for Partial Summary Judgment [163] ("First Lawsuit Summary Judgment Order"), ECF No. 207 in First Lawsuit, entered Nov. 3, 2015. It will not be repeated here.

[25] Order Denying Preliminary Injunction at 20.

as the "Unaffiliated Voter Provision." The Order explained that the unaffiliated voter issue was not ripe at the preliminary injunction stage because URP had not yet chosen to become a QPP.[26] All other asserted burdens were rejected. The Order made the following conclusions:

*Requiring Primary Election*

[T]he State can constitutionally require the Party to select its candidates through a primary election and the State can lawfully certify the Party's candidates who receive the most votes in the primary election as the candidates to appear on the general election ballot.[27]

*Use of Party's Symbol on the General Election Ballot*

[T]here is no protected free speech right to communicate the Party's endorsement on the general election ballot. . . . The Party may still hold a convention, campaign for candidates, fundraise, and endorse any candidate the Party chooses to support.[28]

*Interference with Internal Structure of Party*

SB54 does not prevent the Party from holding neighborhood caucus meetings and conducting those meetings as the Party chooses. Moreover, not all regulation of a party's internal processes is prohibited or constitutionally questionable.[29] . . . Moreover, SB207 [a bill enacted in 2015 by the Utah Legislature] eliminates the Party's concern that its nominees may not be members of the Republican Party. . . . Thus, the Party's concern that its nominees will not be members of the Party is unfounded.[30]

*Plurality*

The Party accurately identifies the possibility that, under the provisions of SB54, its nominee may be elected by a plurality, as opposed to a majority, of its members. However, the Party presented no legal authority indicating that there is any constitutional deficiency in a party's candidate gaining access to the general election ballot based on a plurality vote from a primary election.[31]

---

[26] *Id.* at 31.

[27] *Id.* at 17.

[28] *Id.*

[29] *Id.* at 18.

[30] *Id.* at 20.

[31] *Id.*

Thus, the only potentially "severe" burden identified in the First Lawsuit was the Unaffiliated Voter Provision because it *forced* a QPP to allow unaffiliated voters in the QPP's primary election.

On or about August 18, 2015, the URP sent a letter to the Utah Lieutenant Governor's office designating itself a QPP in the 2016 election cycle:

> Pursuant to Utah Code Ann. § 20A-9-101(12)(e), the Utah Republican Party certifies its intent to nominate candidates in 2016 in accordance with its internal rules and procedures and Utah Code Ann. § 20A-9-406. This is without prejudice to the positions the party has asserted in the matter Utah Republican Party v. Herbert, et al., Case No. 2:14-cv-876 (D. Utah), challenging the constitutionality of recent amendments to the Utah Election Code.[32]

Later, the State Defendants and the CPU brought separate motions for summary judgment.[33] The central issue in those motions was whether the Unaffiliated Voter Provision was unconstitutional.[34] CPU argued it was unconstitutional because it forced QPPs to allow unaffiliated voters to vote in the QPP's primary election, thus imposing a "severe" burden, and the State did not have a compelling state interest to justify the burden imposed. The State argued the Unaffiliated Voter Provision was constitutionally sound.

On October 27, 2015, a hearing was held regarding CPU's and the State Defendants' motions for summary judgment. Discussion was held on the Unaffiliated Voter Provision and other topics, including a very brief discussion regarding the Signature Gathering Provision. State Defendants' counsel, Mr. Wolf, stated that "in order to be a qualified political party, the party has to allow the member to either seek the nomination through the convention process or seek

---

[32] Undisputed by UDP. UDP Response at 19, ¶ 48(a). Undisputed by LG, LG Opposition at xxii, ¶ 48.

[33] The URP also filed a motion for summary judgment, but it was stricken. Order Striking [167] Motion for Summary Judgment and [168] Corrected Motion for Summary Judgment, ECF No. 171 in First Lawsuit, entered Sep. 24, 2015.

[34] First Lawsuit Summary Judgment Order at 10.

the nomination through the signature process or both."[35] Mr. Wolf was referring to Utah Code § 20A-9-101(12)(d), which states that in order to qualify as a QPP, the political party must allow the party candidate to seek the party's nomination "by the member choosing to seek the nomination by either or both of the following methods: [convention] or [signature gathering]."[36] This is known as the "Either or Both Provision," and questions of interpretation of this provision have been certified to the Utah Supreme Court.[37]

The following exchange took place between the court and Mr. Wolf, counsel for the State:

> THE COURT: So are there two levels of choice here, then? The qualified political party -- let me go back to that – under 12(d), has to permit the member to do one or both of the petition method or nomination through the convention method. So if they only permit nomination by convention, they would be a QPP under 12(d). But then under 406 –
>
> MR. WOLF: Yes.
>
> THE COURT: -- the member of the party has the option to use either method regardless of what the party permitted.
>
> MR. WOLF: And therein lays the dispute or the conflict between the party defining its membership.
>
> THE COURT: That's the next lawsuit. I can't deal with it today.
>
> MR. WOLF: It's not before you today, but I want to make sure our record is clear when we go through and create these facts. So I agree with you. You can be a QPP by providing either of those methods or both.
>
> THE COURT: Okay.
>
> MR. WOLF: But the candidate or the member or the individual has the right to seek the nomination through either or both of those methods. And that sets up a

---

[35] Transcript of Summary Judgment Oral Argument (Oct. 27, 2015) ("Oct. 27 Tr.") at 34, Ex. A to 38 LG MJP, docket no. 38-1, filed Feb. 12, 2016.

[36] Utah Code § 20A-9-101(12)(d).

[37] Memorandum Decision and Order of Certification ("First Certification Order"), docket no. 22, filed Feb. 4, 2016; Second Memorandum Decision and Order of Certification ("Second Certification Order"), docket no. 34, filed Feb. 11, 2016.

conflict between the party and its members who choose to run for office and potentially the Lieutenant Governor's office, the Lieutenant Governor is called on to make a decision concerning the objection.[38]

Discussion also took place during the October 27 hearing about whether the claims raised by CPU and URP in their respective complaints were moot if the Unaffiliated Voter Provision were held to be unconstitutional. The following exchange took place between the court and Messrs. Troupis and Mumford, counsel for URP:

> THE COURT: I want to turn now to the Republican Party. If I rule and enter a declaratory judgment and possibly an injunction that 12(a) is unconstitutional and strike it, what other claims remain for adjudication in this case?
>
> MR. MUMFORD: May we just confer?
>
> THE COURT: Yeah. Everybody talk for a minute. Well, not everybody, just counsel. (Time lapse.)
>
> MR. TROUPIS: Your Honor, there would be no other issues for the Republican Party. No other claims. That would resolve the issues.[39]

CPU's counsel also made similar statements that no other claims would remain, other than a "prevailing party" issue.[40] Based upon statements made by CPU's and URP's counsel that no other claims beyond the Unaffiliated Voter Provision required resolution, and after analyzing in detail the Unaffiliated Voter Provision and the governing law regarding forced association, an order was entered on November 3, 2015 finding the Unaffiliated Voter Provision unconstitutional as applied to CPU and URP.[41] On November 23, 2015, a Declaratory Judgment and Injunction was entered which closed the case.[42] The order noted that Utah Code § 20A-9-406(1) replaced the function of the Unaffiliated Voter Provision even though "subsection 406

---

[38] Oct. 27 Tr. at 35-36.

[39] Oct. 27 Tr. at 90.

[40] Oct. 27 Tr. at 91.

[41] The court granted summary judgment in favor of nonmovant URP under Rule 56(f). First Lawsuit Summary Judgment Order at 37-38.

[42] Declaratory Judgment and Injunction, ECF No. 215 in First Lawsuit, entered Nov. 23, 2015.

does not expressly allow a QPP to designate unaffiliated voters to vote in its primary."[43] The order stated that "such a deficiency is not unconstitutional."[44]  The practical effect of the First Lawsuit was that unaffiliated voters were not able to participate in the URP or CPU primary election, and were not able to sign petitions for URP or CPU candidates. There are 610,654 unaffiliated registered voters in Utah.[45] There are about 640,000 registered Republicans in Utah.[46]

### URP and LG Communication Following the First Lawsuit

After the First Lawsuit concluded, the URP formally declared to the LG that it would restrict its candidate-selection procedures to the convention method.[47] On November 19, 2015, the LG responded that he disagreed the URP could make this restriction, asserting that "it is the individual who has the right to choose their path to the ballot and the individual may seek a nomination by the use of both methods."[48] Republican State Senator Todd Weiler wrote a letter to the LG's Office asking about his options for gathering signatures in light of the URP's formal declaration. The LG's Office replied in a letter dated November 20, 2015 that Sen. Weiler had the option to gather signatures and if the URP revoked Sen. Weiler's party membership for gathering signatures, the URP *would no longer qualify as a QPP under Utah election law*.[49]

---

[43] First Lawsuit Summary Judgment Order at 36.

[44] *Id.*

[45] *Id.* at 8, ¶ 25.

[46] *Id.* at 8, ¶ 26.

[47] Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox at 2-3 (Dec. 3, 2015), attached as Ex. 1 to Notice of Filing of December 3, 2015 Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox, docket no. 74-1, filed Apr. 5, 2016.

[48] Letter from Lt. Gov. Spencer J. Cox to URP Chairman James Evans at 1 (Nov. 19, 2015), attached as Ex. 2 to Complaint of Intervenor Utah Democratic Party ("UDP Complaint"), docket no. 20-2, filed Feb. 4, 2016.

[49] Letter from Utah Director of Elections Mark Thomas, Lt. Gov.'s Office, to Utah State Senator Todd Weiler (Nov. 20, 2015), attached as Ex. 2 to Complaint ("URP Complaint"), docket no. 2-2, filed Jan. 15, 2016.

Subsequently, on January 19, 2016, the LG's Office issued a Voter and Candidate Clarification memorandum which modified the position taken in the letter to Sen. Weiler:

> Question #5: Is it possible that the Republican Party will lose its Qualified Political Party (QPP) status and that candidates who choose only the caucus/convention path will be removed from the ballot?
>
> No. Because there is nothing in the law that anticipates what happens if a party fails to follow the requirements of a QPP, and because there is no provision to subsequently disqualify a party, this has been subject to different legal interpretations. On August 17, 2015, the Utah Republican Party certified their designation as a QPP and specifically stated their intention to follow all of the statutory QPP provisions and requirements. As such, my intention is to rely on this certification, and allow candidates access to the ballot through the caucus/convention process, unless and until the party officially revokes that certification. While I reject the possibility of removing candidates that rely on the law to get on the ballot by gathering signatures, I also reject the possibility of removing candidates that rely on the law to participate in the caucus/convention system.[50]

The LG's Office's current position, then, is that a political party which has expressed its intent to restrict candidate-selection procedures to the convention method will still remain a QPP, and that the political party's candidates who use the convention method will have access to the ballot without concern that their party's QPP status will be revoked. The LG's Office has also taken the position that signature-gathering candidates from that political party will still have access to the ballot even though use of that method is contrary to stated URP intent.[51] To date, several URP members have declared their intention to gather signatures, including Sen. Weiler and the LG's running mate, Governor Gary R. Herbert.[52]

---

[50] Voter and Candidate Clarification Memorandum at 3 (Jan. 19, 2016), docket no. 73, lodged Apr. 5, 2016.

[51] However, it is unclear if the Lieutenant Governor's Office will place signature-gathering candidates from that political party on the ballot *as a candidate of the political party* they listed on their declaration of candidacy or if the signature-gathering candidates will appear on the ballot *with no party affiliation*.

[52] Utah Lieutenant Governor's Office, 2016 Candidate Signatures (Apr. 4, 2016, 04:18:41 PM), http://www.elections.utah.gov/election-resources/2016-candidate-signatures (last visited Apr. 5, 2016).

### The Current Lawsuit

The URP filed the current lawsuit on January 15, 2016, asserting that SB54 was unconstitutional.[53] The current lawsuit appears to be very similar to the First Lawsuit in that it named Governor Herbert and Lt. Governor Cox as Defendants and seeks relief under the First and Fourteenth Amendments.[54] Specifically, URP asserts in the current lawsuit that it is entitled to a declaratory judgment and injunctive relief establishing the unconstitutionality of SB54 "as applied to the manner in which"

    a.  the State has taken a different position from that taken in the First Lawsuit, that the Party relied on in terminating prior litigation;
    . . .
    i.  burdened the Party's associational rights, and the rights of disassociation, by imposing on candidates seeking the Party's nomination *onerous signature gathering requirements* beyond those ever allowed by the United States Supreme Court, and thus unconstitutionally burdens the Party's rights;
    j.  burdened the rights of the Party and its members by imposing on them *signature-gathering requirements* beyond those ever allowed by law . . . .[55]

URP also asserts other claims in its Complaint which are stated in language used in the Complaint in the First Lawsuit. Those other claims are not addressed in this Memorandum Decision and Order.[56] The Utah Democratic Party ("UDP") was permitted to intervene in the current lawsuit, and it asserts claims under the First and Fourteenth Amendment as well.[57]

After the current lawsuit was filed, a hearing was held to discuss the claims raised by the new lawsuit.[58] At the hearing, upcoming election deadlines were discussed and an expedited

---

[53] URP Complaint ¶ 36, docket no. 2, filed Jan. 15, 2016.

[54] URP Complaint ¶ 5.

[55] URP Complaint ¶¶ 73(a), (i), and (j) (emphasis added).

[56] URP Complaint ¶ 73(b) through (g). URP Complaint ¶ 73(h) was dropped after discussion at an early hearing revealed it dealt with issues addressed in the First Lawsuit.

[57] UDP Complaint ¶¶ 36, 49, 56, docket no. 20, filed Feb. 4, 2016; *see also* Important Dates in 2016 Utah Election Schedule, attached to Minute Entry, docket no. 21, filed Feb. 4, 2016.

[58] Minute Entry, docket no. 21, entered Feb. 4, 2016.

schedule was set for briefing of motions.[59] The four motions identified in the first paragraph of this order were filed pursuant to that expedited schedule.

## URP and SB54

The URP is a Utah registered political party.[60] The URP's Constitution provides that "Party membership is open to any resident of the State of Utah who registers to vote as a Republican and complies with the Utah Republican Party Constitution and Bylaws, and membership may be further set forth in the Utah Republican Party Bylaws."[61] The URP's Bylaws require that candidates running for "any federal or statewide office" must "sign and submit a certification . . . and a disclosure statement."[62] The certification states that the candidate "will comply with the rules and processes set forth in the Utah Republican Party Constitution and these Bylaws . . . ."[63] The disclosure statement must state that

> either: (1) "I have read the Utah Republican Party Platform. I support that Platform and accept it as the standard by which my performance as a candidate and as an officeholder should be evaluated. I certify that I am not a candidate, officer, delegate nor position holder in any party other than the Republican party [sic]." Or (2) "I have read the Utah Republican Party Platform. Except for the provisions specifically noted below, I support that Platform and accept it as the standard by which my performance as a candidate and as an officeholder should be evaluated. I certify that I am not a candidate, officer, delegate nor position holder in any party other than the Republican party [sic]."[64]

The URP's nominating convention procedures require that delegates be notified of any candidate's failure to submit a Platform disclosure statement immediately prior to balloting for

---

[59] *Id.*

[60] Undisputed by UDP. UDP Response at 6, ¶ 1(a). Undisputed by LG. LG Opposition at x, ¶ 1.

[61] Utah Republican Party Constitution ("URP Constitution") Art. I.C., Ex. 1 to Memorandum in Opposition to Defendant's Motion for Summary Judgment, ECF No. 177-1 in First Lawsuit, filed Oct. 9, 2015.

[62] Utah Republican Party Bylaws ("URP Bylaws") at § 8.0(A), Ex. 2 to Memorandum in Opposition to Defendant's Motion for Summary Judgment, ECF No. 177-1 in First Lawsuit, filed Oct. 9, 2015.

[63] *Id.*

[64] *Id.*

that candidate's office.[65] Except for candidates running unopposed, delegates to the nominating convention vote for URP nominees only after substantive speeches are made either by the individual candidates or on their behalf.[66] The URP's Constitution and Bylaws dictate the voting procedure for the nominating conventions, mandating multiple ballots for each elected office until the field is winnowed to the top two candidates, or until a candidate receives 60% or more of the delegate's vote.[67] The URP's Constitution provides that "[a] candidate for an office that receives 60% or more of the votes cast at any point in the balloting process at the state nominating conventions shall proceed to the general election."[68] If no candidate receives 60% or more of the delegates' vote at convention as to a particular elected office, the URP nominates the top two candidates to run in a primary election.[69]

A URP candidate seeking nomination under the Signature Gathering Provision in one of the State's twenty-nine state Senate districts would have to collect signatures from between 6.21% to 30.82% of all registered Republicans in his or her respective district.[70] A URP candidate seeking nomination under the Signature Gathering Provision in one of the State's seventy-five state House districts would have to collect signatures from between 7.14% to 57.21% of all registered Republicans in the respective district.[71]

---

[65] *Id.* at § 8.0(B).

[66] URP Constitution Art. XII, § 2(F).

[67] *Id.* § 2(I); URP Bylaws §7.0(D)(3).

[68] URP Constitution Art. XII, § 2(I).

[69] URP Bylaws §7.0(D)(3).

[70] UDP does not dispute this statement of fact, but argues it is irrelevant and immaterial. UDP Response at 23, ¶ 61(a). UDP is incorrect. The LG disputes this statement of fact, arguing that a candidate does not "have to" collect signatures because there are two paths to a QPP primary. LG Opposition at xxx, ¶ 61. The LG is correct that a candidate is not required to gather signatures to obtain access to a QPP's primary ballot, and the statement of fact has been altered to address this concern.

[71] UDP does not dispute this statement of fact, but argues it is irrelevant and immaterial. UDP Response at 23, ¶ 62(a). UDP is incorrect. The LG disputes this statement of fact, arguing that a candidate does not "have to" collect signatures because there are two paths to a QPP primary. LG Opposition at xxx, ¶ 62. The LG is correct that a

**DISCUSSION**

The 37 UDP MJP and the 38 LG MJP raise procedural bars to the URP claims, all rooted in the First Lawsuit: claim preclusion (res judicata); issue preclusion (collateral estoppel); claim splitting; and waiver. The 39 URP MPSJ raises judicial estoppel; the constitutionality of the QPP path's "onerous" signature gathering requirements; and severability. Each of these topics will be addressed in turn.

**Claim Preclusion Does Not Bar Subparagraphs 73(i) and (j)**

The LG argues that claim preclusion applies to bar *all* of URP's claims.[72] The UDP argues that claim preclusion applies only to bar URP's claims as to the "Either or Both Provision" and the "Signature Gathering Provision."[73] The arguments that claim preclusion bars URP claims about the Signature Gathering Provision will be addressed. The potential bar to URP's remaining claims will not be addressed in this Memorandum Decision and Order.

Claim preclusion "ensures finality of decisions."[74] "A final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[75]  Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."[76] Claim preclusion applies when the following elements are present: (1) a final judgment on the

---

candidate is not required to gather signatures to obtain access to a QPP's primary ballot, and the statement of fact has been altered to address this concern.

[72] 38 LG MJP at 1.

[73] 37 UDP MJP at 7 (arguing that claim preclusion applies to the Either or Both Provision); *id.* at 15 (arguing that claim preclusion applies to the Signature Gathering Provision).

[74] *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

[75] *Id.*

[76] *Id.*

merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.[77]

With respect to the first element, all parties agree that the First Lawsuit resulted in a final judgment on the merits.[78] Therefore, the first element of claim preclusion is satisfied.

The second element also is satisfied since the URP was a party to the First Lawsuit and initially sued the Governor and LG in their official capacities. While it is true that the intervenors in the two cases are different,[79] and that the Governor was dismissed from the current case,[80] the named parties at the commencement of each suit are identical—the URP, as plaintiff, sued the Governor and the LG. Often the "identity of parties" element is asserted against a plaintiff who *did not* take part in a prior lawsuit, and a defendant will argue that the plaintiff was in "privity" with the plaintiff who was a party in the prior lawsuit.[81] Thus, as to the UDP, this element is not satisfied because the UDP was not a plaintiff in the First Lawsuit and likely cannot be said to be in "privity" with the URP. However, claim preclusion is not raised as to the UDP. It is raised as to the URP. Thus, *as to the URP*, the second element of "identity of parties or privies" is satisfied.

The third element—identity of the cause of action in both suits—is not satisfied with respect to the Signature Gathering Provision because the arguments regarding the Signature

---

[77] *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999) ("Generally, Supreme Court precedent, Tenth Circuit precedent, and the majority of circuit courts note only three requirements in the initial determination of whether claim preclusion may apply."); *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008).

[78] 37 UDP MJP at 7 ("The First Case Was Finally Adjudicated on the Merits."); *id.* at 15 ("[T]here was a final judgment on the merits in the First Case"); 38 LG MJP at 2 ("The Court's orders of dismissal in the prior case constitute a final judgment on the merits."); Combined Opposition to the Motions of Lieutenant Governor Cox and the Utah Democratic Party for Judgment on the Pleadings ("URP Opposition to MJPs") at 13, docket no. 47, filed Feb. 19, 2016 ("[T]he First Lawsuit already resulted in a final judgment").

[79] CPU intervened in the First Lawsuit; UDP intervened in the current lawsuit.

[80] Order Dismissing Defendant Gary R. Herbert Governor of Utah, docket no. 16, entered Feb. 1, 2016.

[81] *See Pelt*, 539 F.3d at 1281.

Gathering Provision raised in this lawsuit were not "previously available to the parties" in the First Lawsuit.[82]

The Signature Gathering Provision, among other things, requires that a QPP candidate who elects to gather signatures to qualify for the primary election ballot in lieu of attending his party's convention must gather 2,000 signatures in a state Senate district[83] and must gather 1,000 signatures in a state House district.[84] The URP's argument is that these signature requirements are "onerous" and that they burden the party's associational rights.[85] This argument was not made in the First Lawsuit, and could not have been raised because it is based largely on the fact that unaffiliated voters are no longer part of the pool of eligible signers for URP candidates because of the ruling in the First Lawsuit.

The UDP and LG argue that this issue was previously litigated by CPU in the First Lawsuit.[86] The LG argues that "[t]he Court ruled on this very issue, concluding 'there is no basis to find the Signature Gathering Provision unconstitutional.'"[87] The UDP and the LG are incorrect. This cause of action was not litigated in the First Lawsuit.

A full review of the Memorandum Decision and Order on summary judgment in the First Lawsuit shows that CPU raised the signature gathering issue *in the context of the Unaffiliated Voter Provision*.[88] CPU's argument was that the Signature Gathering Provision was unconstitutional because *unaffiliated voters' signatures* would "drown out" the CPU voters' voice and was therefore "unconstitutional for all of the same reasons" the Unaffiliated Voter

---

[82] *Brown*, 442 U.S. at 131.

[83] Utah Code § 20A-9-408(8)(b)(iii).

[84] Utah Code § 20A-9-408(8)(b)(iv).

[85] URP Complaint ¶¶ 73(i) and (j).

[86] 37 UDP MJP at 15-16; 38 LG MJP at 6.

[87] 38 LG MJP at 6.

[88] First Lawsuit Summary Judgment Order at 33.

Provision was unconstitutional.[89] The order notes that "the danger the CPU was concerned

about—having unaffiliated voters signing petitions for CPU candidates (candidates who may not

subscribe to the CPU's values and principles)—has been eliminated."[90] The issue raised by CPU

was not ballot access; it was the associational concern of being overrun by unaffiliated voters.

The issue of ballot access certainly was not articulated as it is in the current lawsuit, with

citations to case law and numeric analysis of applicable requirements. Therefore, the issue was

not identical in the First Lawsuit.

      Additionally, the current signature gathering concerns raised by URP were not

"previously available" because they arose when the Unaffiliated Voter Provision was struck

down. The ruling in the First Lawsuit did not change the *number* of signatures required but,

because it excluded unaffiliated voters from the URP primary and therefore excluded unaffiliated

voters from signing petitions, it changed the *percentage* of signatures a URP candidate would be

required to gather because the pool of eligible signers was reduced.[91] The change in the pool of

eligible signers only happened at the conclusion of First Lawsuit. Therefore, the "signature

gathering" issue "was not and could not have been raised" in the First Lawsuit. Thus, the

arguments regarding the Signature Gathering Provision are not subject to claim preclusion

because they were not "previously available to the parties."[92]

      Because the constitutionality of the Signature Gathering Provision was not raised and

could not have been raised in the First Lawsuit in the same context presented here, the URP's

---

[89] *Id.*

[90] *Id.* at 34.

[91] *See* Utah Code § 20A-9-408(8)(b) (requiring that signatures come from those who are eligible "to vote for the qualified political party's candidates in a primary election").

[92] *Brown*, 442 U.S. at 131 ("Res judicata [claim preclusion] prevents litigation of all grounds for, or defenses to, recovery *that were previously available to the parties*, regardless of whether they were asserted or determined in the prior proceeding." (emphasis added)).

claims about the Signature Gathering Provision are not barred by the doctrine of claim preclusion. The 37 UDP MJP and the 38 LG MJP are denied with respect to claim preclusion on the Signature Gathering Provision.

### Issue Preclusion Does Not Bar Subparagraphs 73(i) and (j)

The LG and the UDP also argue that issue preclusion applies to bar URP's claims as to the Signature Gathering Provision.[93] "In contrast to claim preclusion [which bars identical causes of action], issue preclusion [also known as collateral estoppel] bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."[94] Issue preclusion applies when the following elements are present: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."[95] Issue preclusion does not apply to the signature gathering issues raised by the URP because not all of these elements are met.

With respect to the second element, all parties agree that the First Lawsuit resulted in a final judgment on the merits.[96] Thus, the second element is met. The third element is also

---

[93] 37 UDP MJP at 12 (arguing that issue preclusion applies to the Signature Gathering Provision); 38 LG MJP at 7-8 (arguing collateral estoppel (issue preclusion) applies to bar signature gathering issues).

[94] *Park Lake Resources LLC v. U.S. Dep't of Ag.*, 378 F.3d 1132, 1136 (10th Cir. 2004).

[95] *Id.*

[96] 37 UDP MJP at 7 ("The First Case Was Finally Adjudicated on the Merits."); *id.* at 15 ("[T]here was a final judgment on the merits in the First Case"); 38 LG MJP at 2 ("The Court's orders of dismissal in the prior case constitute a final judgment on the merits."); URP Opposition to MJPs at 13 ("[T]he First Lawsuit already resulted in a final judgment").

satisfied since URP was a party to the First Lawsuit and is the party against whom issue preclusion is invoked.[97]

The first element, however, is not satisfied as to the Signature Gathering Provision for the same reasons the "identical cause of action" element (third element) was not satisfied as to the Signature Gathering Provision for claim preclusion. The discussion in the First Lawsuit about the Signature Gathering Provision was in the context of the Unaffiliated Voter Provision and CPU's fear that its voters' signatures would be drowned out by unaffiliated voters' signatures. That is not the issue presented in this case. In this case, the issue is whether the requirements in the Signature Gathering Provision, specifically the requirements for state Senate and House districts, are unconstitutional as applied to the URP, now that that the number of eligible signers for URP candidates' nominating petitions is significantly reduced. This issue arose only after the ruling in the First Lawsuit was issued, which excluded unaffiliated voters from voting in the URP primary and consequently barred unaffiliated voters from being eligible to sign a URP candidate's nominating petition.[98] Because of the large number of unaffiliated voters in Utah, the ruling in the First Lawsuit significantly reduced the pool of eligible signers for a URP candidate seeking to access the ballot through the Signature Gathering Provision. For instance, if a state Senate district included 5,000 unaffiliated voters and 5,000 registered Republican voters, the exclusion of the unaffiliated voters cuts the pool of eligible signers in half. Therefore, the issue in this case

---

[97] *See Park Lake Resources*, 378 F.3d at 1136.

[98] Utah Code § 20A-9-408(8)(b)(i) through (v) (providing that only those "who are permitted by the qualified political party to vote for the qualified political party's candidates in a primary election" are permitted to sign a nominating petition; Utah Code § 20A-9-406(1) (allowing QPP to designate "*one or more registered political parties*" whose members may vote for the qualified political party's candidates"—not unaffiliated voters); *compare* Utah Code § 20A-9-101(12)(a) (permitting "voters who are unaffiliated with any political party to vote for the registered political party's candidates in a primary election"). Subsection (12)(a) is inapplicable to the URP as a result of the ruling in the First Lawsuit.

is not identical with the one presented in the First Lawsuit, and the first element of issue preclusion is not satisfied.

The fourth element also is not satisfied. Because the "party against whom the doctrine is raised" did not have a "full and fair opportunity to litigate" the signature gathering issue in the prior action, the signature gathering issue presented in this case was not available to URP in the First Lawsuit. Therefore, URP did not have "a full and fair opportunity to litigate the issue in the prior action."[99]

Because the first and fourth elements of issue preclusion have not been satisfied with respect to the Signature Gathering Provision, the URP is not barred from pursuing its signature gathering claims in this lawsuit. The 37 UDP MJP and the 38 LG MJP are denied with respect to issue preclusion.

### Claim Splitting Does Not Bar URP's Claims

Next, the UDP argues that claim splitting applies to bar URP's claims as to the Either or Both Provision.[100] LG argues that claim splitting applies to bar all of URP's claims.[101] These arguments are not successful.

"[A] party seeking to enforce a claim legal or equitable must present to the court, either by the pleadings or proofs, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fails. There would be no end to litigation if such a practice were permissible."[102]

---

[99] *Park Lake Resources*, 378 F.3d at 1136.

[100] 37 UDP MJP at 10.

[101] 38 LG MJP at 8.

[102] *Stark v. Starr*, 94 U.S. 477, 485 (1877).

This doctrine is referred to as "claim splitting."[103] A claim splitting bar arises when a plaintiff decides at the outset to "split potential legal claims against a defendant by bringing them in two different lawsuits,"[104] while *res judicata* bars a claim when litigation in one case has concluded and a second lawsuit has begun.[105]

Because the First Lawsuit is concluded, claim splitting does not bar URP's claims in this case. There is no showing that the claims brought by URP in this case were available to URP during the First Lawsuit. UDP argues that the proper analysis for claim splitting is: "assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion."[106] This analysis is correct, and underscores why claim splitting does not apply here. First, the claim splitting analysis presumes that a "first suit" is *not* final. Here, the First Lawsuit *is* final and no party disputes this. Second, the claim splitting analysis relies on a finding of hypothetical claim preclusion. Here, claim preclusion does not apply.

The URP did not decide at the outset to split potential claims by bringing them in two different lawsuits. Rather, additional facts emerged after the conclusion of the First Lawsuit which gave rise to additional claims. This lawsuit involves additional facts, such as the First Lawsuit's ruling; URP candidates deciding to follow the signature gathering path in apparent contravention of the URP's wishes; and the fact that by the filing of this lawsuit, URP had chosen to become a QPP under the law. At the beginning of the First Lawsuit, none of these facts had occurred. Therefore, there are important factual differences in this case that distinguish it

---

[103] *Hartsel Springs Ranch of Colo. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002).

[104] *Katz v. Gerardi*, 655 F.3d 1212, 1214 (10th Cir. 2011).

[105] *Id.* at 1218 ("While it is correct that a final judgment is necessary for traditional claim preclusion analysis, *it is not required* for the purposes of claim splitting." (emphasis added)).

[106] 37 UDP MJP at 10 (citing *Hartsel Springs Ranch*, 296 F.3d at 990).

from the First Lawsuit. Accordingly, there is no indication that URP has decided to "split potential legal claims against [the LG] by bringing them in two different lawsuits[.]"[107]

While both lawsuits generally arise from the passage of SB54, the passage of a law cannot be the "transaction, event or occurrence" that provides the factual commonality between the two lawsuits, as the LG argues.[108] If that were the rule, only *one* as-applied challenge could ever be brought to challenge a law. This certainly is not the intended consequence of the claim splitting doctrine. The "equity of the situation"[109] allows the URP to bring its current claims. Claim splitting does not apply. The 37 UDP MJP and the 38 LG MJP are denied with respect to the arguments on claim splitting.

### Waiver Does Not Bar URP's Claims

The LG argues that waiver applies to bar all of URP's claims.[110] The LG argues that the URP waived any claims it had with respect to SB54 at the conclusion of the First Lawsuit when it stated at a hearing that it had no further claims.[111] The LG further argues that the "Court expressly ruled that all of URP's remaining 'claims are moot because they were relinquished during the hearing on October 27.'"[112] The LG is correct that these statements were made, but the LG is incorrect that these statements are sufficient to find waiver.

"Waiver is an intentional relinquishment of a known privilege."[113] Waiver occurs when made with "sufficient awareness of the relevant circumstances and likely consequences."[114]

---

[107] *Katz*, 655 F.3d at 1214.

[108] 38 LG MJP at 12.

[109] *Hartsel Springs Ranch*, 296 F.3d at 986.

[110] 38 LG MJP at 14.

[111] *Id.*

[112] *Id.* (citing First Lawsuit Summary Judgment Order at 37).

[113] *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

[114] *Brady v. United States*, 397 U.S. 742, 748 (1970).

There is no "clear and compelling"[115] proof that URP relinquished the claims it brings in this lawsuit. When the URP stated it had "[n]o other claims," it was in the context of the *unaffiliated voter and forced association* issues raised in the First Lawsuit. It was not in the context of ballot access. Therefore, the statement in the First Lawsuit that the URP had no other claims was not a waiver of any possible future constitutional challenges to SB54. Waiver of constitutional rights is discouraged and there is no "one-shot" limit to constitutional challenges.

As explained above, the signature gathering issues raised by URP in this lawsuit did not fully arise until a ruling was issued in the First Lawsuit. The issues raised with regard to the Either or Both Provision did not arise until URP candidates began declaring their intent to gather signatures despite URP's disapproval. Those issues were not waived because they did not exist during the First Lawsuit. Therefore, waiver does not apply. The 37 UDP MJP and the 38 LG MJP are denied with respect to waiver.

### Judicial Estoppel Does Not Apply

The UDP and LG are not the only parties seeking to use the First Lawsuit to restrict another party's actions in this lawsuit. The URP seeks a ruling that the LG cannot take a different position in this case regarding the Either or Both Provision from the position the LG took in the First Lawsuit. URP's argument is based on judicial estoppel. URP seeks summary judgment that the LG is estopped from "reversing its admission that § 20A-9-101(12)(d) [the Either or Both Provision] allows [URP] to limit candidates seeking its nomination to the convention method."[116] The URP is incorrect because there is no clear record that the LG made an "admission" that the Either or Both Provision allows URP to foreclose signature gathering as an option for URP candidates. Therefore, judicial estoppel does not apply.

---

[115] *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145 (1967).

[116] 39 URP MPSJ at 2.

Judicial estoppel applies when the following factors are satisfied: (1) a party takes a position clearly inconsistent with an earlier-taken position; (2) adopting the later, inconsistent, position would create an impression that either the earlier or the later court was misled; and (3) allowing the party to change position would give the party an unfair advantage.[117] "Additional considerations may inform the doctrine's application in specific factual contexts."[118] For example, "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake."[119] Also, in the Tenth Circuit, "judicial estoppel only applies when the position to be estopped is one of fact, not one of law."[120] "[J]udicial estoppel is a powerful weapon . . . and there are often lesser weapons that can keep alleged inconsistent statements in check while preserving a party's option to have its day in court."[121] Judicial estoppel is an affirmative defense, not an individual cause of action.[122] The burden to establish judicial estoppel is on the party raising it.[123]

URP argues that in the First Lawsuit, the LG took the position that *the party* could permit nomination by convention only, but now the LG takes the position that URP must allow *its candidates* to choose their path to the ballot.[124] The LG argues it did not take inconsistent positions, but has always argued that the candidate has the right to choose their path to the

---

[117] *Hansen v. Harper Excavating, Inc.,* 641 F.3d 1216 (10th Cir. 2011).

[118] *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

[119] *Id.* at 753.

[120] *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1240 (10th Cir. 2015).

[121] *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 767 F.3d 987, 993 (10th Cir. 2014) (citation omitted).

[122] *See Hansen*, 641 F.3d at 1227.

[123] *Vehicle Mkt. Research*, 767 F.3d at 998.

[124] 39 URP MPSJ at 3.

ballot.[125] The UDP also argues that the LG has not taken inconsistent positions.[126] All parties quote several passages from the summary judgment hearing in the First Lawsuit, but each party emphasizes the portion of the passage that supports their argument. For example, the LG stated in the First Lawsuit that "the party has to allow the member to seek the nomination through the convention process *or* seek the nomination through the signature process . . . ."[127] The URP focuses on the word "or" in the statement above, while the LG focuses on word "member." These diverging focuses lead to different interpretations and different conclusions of the Either or Both Provision.[128]

Proper interpretation of the Either or Both Provision is certified to the Utah Supreme Court. Regardless of the correct interpretation, the URP is incorrect that the LG now takes a position "clearly inconsistent" with its position in the First Lawsuit. The URP does not cite to any clear statement by the LG that the decision is left up to *the political party*. The statements cited in the briefing are clear that the LG has consistently taken the position that "in order to be a qualified political party, the party has to allow the member to either seek the nomination through the convention process or seek the nomination through the signature process or both."[129] The LG acknowledged at the October 27 hearing that there may be a different interpretation of the Either or Both Provision, but did not adopt that interpretation. In fact, the LG pointed out that under Utah Code § 20A-9-406, the candidate had the right to choose their path to the ballot regardless

---

[125] LG Opposition at 6 (citing 38 LG MJP at 15-23); *see also* LG Opposition at 8-9 (stating that LG's position in this case is consistent with position in First Lawsuit "that a QPP must allow its members to seek the party's nomination by gathering signatures").

[126] UDP Response at 28 (citing 37 UDP MJP at 8-10).

[127] URP Reply at 4 (emphasis added by URP) (citing Oct. 27 Tr. at 34).

[128] The Either or Both Provision provides that a QPP must "permit[] a member of the registered political party to seek the registered political party's nomination for any elective office by the member choosing to seek the nomination by either or both of the following methods: [convention route or signature route]." Utah Code § 20A-9-101(12)(d).

[129] LG Opposition at 8.

of their party's interpretation of the Either or Both Provision.[130] The parties simply disagree on

the proper interpretation. A disagreement regarding interpretation of a statute does not establish

that the LG took a "clearly inconsistent" position in the First Lawsuit.

Because the first factor of the judicial estoppel analysis is not satisfied, URP has failed to

carry its burden to establish judicial estoppel.[131] Additionally, URP's judicial estoppel argument

fails because the LG's position URP seeks to estop is one of law—the interpretation of a

statute—not a position of fact.[132] Further, judicial estoppel is an affirmative defense, not an

individual cause of action,[133] so URP is incorrect to seek summary judgment on judicial estoppel

as if it were an independent cause of action.[134] For these reasons, URP's judicial estoppel

argument fails and the 39 URP MPSJ is denied with respect to judicial estoppel.[135]

### Constitutionality of the QPP Path's "Onerous" Signature Gathering Requirements

Finally, URP argues that SB54's signature requirements are unconstitutional because

they are "onerous" and severely burden URP's constitutional rights.[136]

### *Standard for Determining Constitutionality of Ballot Access Laws*

There is no "hard-and-fast general rule or standard by which to measure state ballot

access laws."[137] Instead, "each case must be resolved on its own facts after due consideration is

---

[130] Oct. 27 Tr. at 35-36 ("But then under 406 . . . the member of the party has the option to use either method regardless of what the party permitted.").

[131] *Vehicle Mkt. Research*, 767 F.3d at 998.

[132] *BancInsure*, 796 F.3d at 1240 ("[J]udicial estoppel only applies when the position to be estopped is one of fact, not one of law.").

[133] *See Hansen*, 641 F.3d at 1227.

[134] *See id.*

[135] URP Complaint ¶ 73(a).

[136] 39 URP MPSJ at 6-7.

[137] *Arutunoff v. Oklahoma State Election Bd.*, 687 F.2d 1375, 1379 (10th Cir. 1982).

given to the practical effect of the election laws of a given state, viewed in their totality."[138] In assessing the constitutionality of ballot access, the determinative factor is "not the absolute or relative number of signatures required but whether a 'reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot.'"[139]

When determining the constitutionality of signature gathering requirements, courts have looked at the following factors: the time given to gather signatures, whether voters may sign more than one nominating petition, ballot access history (whether any candidates have previously been successful in gathering signatures to obtain access to the ballot), who is eligible to sign a nominating petition, whether the law is uniformly applied, whether there is an early filing deadline, and the costs to file or verify signatures.[140] Another key factor is whether an alternative path exists for candidates to access the ballot. *LaRouche v. Kezer*[141] described such a situation.

In *LaRouche*, candidates Lyndon H. LaRouche, Jr. and Eugene McCarthy sought access to the 1992 Democratic presidential primary ballot in Connecticut.[142] At the time, Connecticut had two routes to the primary ballot: (1) the "media recognition" route, and (2) the petition

---

[138] *Id.* at 1379.

[139] *Stone v. Board of Election Comm'rs for City of Chicago*, 750 F.3d 678, 683 (7th Cir. 2014).

[140] *See Jenness v. Fortson*, 403 U.S. 431, 442 (1971) ("The 5% figure is, to be sure, apparently somewhat higher than the percentage of support required to be shown in many States as a condition for ballot position, but this is balanced by the fact that Georgia has imposed no arbitrary restrictions whatever upon the eligibility of any registered voter to sign as many nominating petitions as he wishes."); *Storer v. Brown*, 415 U.S. 724, 738-39 (1974) (stating that 5% "does not appear to be excessive, . . . but to assess realistically whether the law imposes excessively burdensome requirements upon independent candidates it is necessary to know other critical facts . . . ."); *Am. Party of Tex. v. White*, 415 US 767, 778 (1974) (discussing factors); *Mandel v. Bradley*, 432 U.S. 173, 178 (1977) (listing factors); *Libertarian Party of Florida v. Florida*, 710 F.2d 790, 794 (11th Cir. 1983) (discussing factors); *LaRouche v. Kezer*, 990 F.2d 36, 40 (2d Cir. 1993) ("Second, Connecticut's petition statute is free from many restrictive features found elsewhere."); *Lee v. Keith*, 463 F.3d 763, 768-69 (7th Cir. 2006) (discussing factors); and *Stone*, 750 F.3d at 682-84 (discussing factors).

[141] *LaRouche v. Kezer*, 990 F.2d 36 (2d Cir. 1993).

[142] *Id.* at 37.

route.[143] Connecticut's Secretary of State Pauline Kezler "placed nine of the thirty-nine announced candidates on the ballot" via the media recognition route, including "several long shots [such as] Republican David Duke and Democrat Larry Agran. However, LaRouche and McCarthy were not given places on the ballot because Kezer considered neither 'a seriously advocated candidate.'"[144] Neither McCarthy nor LaRouche "attempted to gather the signatures but instead wrote to Kezer asking her to reconsider. After failing to convince her, they and their supporters brought suit[.]"[145] The district court struck down the media recognition statute as unconstitutionally vague, but because the petition route was constitutional the district court granted judgment for Kezer.[146] On appeal, the Second Circuit reversed the district court and upheld both standards:

> Our disagreement with the district court regarding the media recognition statute concerns its separate analysis of each statutory method for getting on the ballot. It thus examined the media recognition route as though it stood alone and found it constitutionally wanting. It then examined the petition alternative as though it stood alone and concluded that it passed constitutional muster. However, if the petition alternative would be constitutional standing alone, the additional method of a media recognition test is not in any sense an unconstitutional burden. To the contrary, because it is not constitutionally required, the media recognition test, whether or not vague, increases the opportunities to get on the ballot and reduces the burdens on candidates. Indeed, the injunction entered by the district court reduced rather than increased the opportunities for ballot access. In short, if the district court was correct about the constitutionality of the petition alternative standing alone, then the media recognition statute is a fortiori valid as an additional means of ballot access.[147]

Thus, following the reasoning in *LaRouche*, a law providing ballot access is not unconstitutional simply because one of the routes, standing alone, is constitutionally infirm. The

---

[143] *Id.*

[144] *Id.* at 38.

[145] *Id.*

[146] *Id.*

[147] *Id.* at 38-39.

existence of an alternate path to the ballot is one of the most decisive factors in evaluating the

practical effect of an election law. And as long as there is a clearly constitutional path to the

ballot, an alternative method of ballot access is not unconstitutional unless it is "wholly

irrational."[148] Indeed, if a path is "wholly irrational—a coin-flip test, for example—it would not

be saved by the presence of additional valid-access methods."[149]

### *If Analyzed without the Convention Path, Subsections (8)(b)(iii) and (iv) of the Signature Gathering Provision Are Likely Unconstitutional*

As indicated in a prior order, "the signature gathering requirements under Utah Code

§§ 20A-9-408(8)(b)(iii) and -408(8)(b)(iv), which require respectively 2,000 signatures for a

state Senate district race and 1,000 signatures for a state House district race, may be

unconstitutional as applied to the URP."[150] This is because signature gathering percentage

requirements for the URP in state House district races range from 7.14% (District 27) to 57.21%

(District 26), with 54 of the 75 state House districts exceeding 10%.[151] Signature gathering

percentage requirements for the URP in state Senate district races range from 6.21% (District 14)

to 30.82% (District 1), with 12 of the 29 state Senate districts exceeding 10%.[152] These

percentages are *all* above 5%, which is the highest percentage approved in any of the cases cited

by the parties.[153]

---

[148] *Id.* at 38 n.1.

[149] *Id.*

[150] Order for Additional Briefing and Rescheduling Hearing ("Order for Briefing") at 2, docket no. 60, filed Mar. 4, 2016.

[151] 39 URP MPSJ at 11-14.

[152] *Id.* at 10-11.

[153] *See Jenness v. Fortson*, 403 U.S. 431 (1971) (upholding 5%); *Am. Party of Tex. v. White*, 415 U.S. 767 (1974) (upholding 3%, but a maximum of 500 total votes); *Arutunoff v. Oklahoma State Election Board*, 687 F.2d 1375 (10th Cir. 1982) (upholding 5% for party formation); *Libertarian Party of Florida v. Florida*, 710 F.2d 790 (11th Cir. 1983) (upholding 3% for party formation); and *Stone v. Board of Election Comm'rs for City of Chicago*, 750 F.3d 678 (7th Cir. 2014) (upholding an "effective" 1%); *Storer v. Brown*, 415 U.S. 724 (1974) (vacating and remanding lower court decision that 5% was not unduly burdensome); *Tucker v. Salera*, 424 U.S. 959 (1976) ("summarily affirming" lower court decision that 2% was unduly burdensome because of an unreasonably early

Other factors also weigh *against* the constitutionality of subsections (8)(b)(iii) and (iv):

**Time to Gather Signatures.** 66-99 days is permitted to gather signatures.[154] By itself, this time frame is not so far out of acceptable range. But when considered *with the percentage of signatures a candidate must gather*, this factor weighs against a finding of constitutionality.

**Voters cannot sign more than one petition.** The restriction on voters signing only one petition[155] hampers a candidate's ability to gather enough signatures, especially in a district that requires over 50 % signatures. In such a district, only *one candidate* would be able to obtain ballot access through signature gathering.

**Not uniformly applied.** There are different signature requirements for the same geographical area. While an *RPP* candidate in a geographical area must collect signatures from only 2% "of the [party]'s members who reside in [the area],"[156] a *QPP* candidate in the URP *in the same area* may have to collect signatures from up to 57% "of registered voters who are residents of [the area] and are permitted by [the party] to vote for [the party's] candidates in a primary election.[157] If the state has indicated that its interests are satisfied by having *2% signatures from only party members in a geographical area*, there is no rational basis to require a significantly higher amount of signatures to be gathered from the same area.[158] Also, the fixed-number signature requirement results in a disparity of percentages among the QPP's different districts in the same election. This is not uniform application in terms of percentages.

However, the following factors weigh *in favor of* the constitutionality of subsections (8)(b)(iii)

and (iv):

**Ballot access history.** Although there is no official ballot access history because there has not been an election under the new scheme, the LG's Office submitted

---

deadline for signature submission); *Mandel v. Bradley*, 432 U.S. 173 (1977) (vacating and remanding lower court decision that 3% was not unduly burdensome, and instructing lower court to consider additional factors besides percentage); and *McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980) (holding that a signature requirement for party formation that amounted to 3.3% was unconstitutional in light of other factors); *Lee v. Keith*, 463 F.3d 763 (7th Cir. 2006) (striking down 10% in light of other factors).

[154] Utah Code § 20A-9-408(8)(b) (allowing signature gathering from January 1 to "14 days before" the QPP's convention).

[155] *Id.* § 20A-9-411.

[156] *Id.* § 20A-9-403(3)(a)(ii).

[157] *Id.* § 20A-9-408(8)(b)(iv).

[158] *See Illinois Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 179 (1979) (holding there is no rational reason to require more than 5% signatures in a smaller unit when that number of signatures would exceed 25,000 because the state's interests were satisfied with 25,000 signatures for a statewide race).

evidence that several candidates have obtained enough verified signatures to obtain access to the primary ballot in their respective elections.[159]

**Filing Deadline.** The filing deadline 14 days before a party convention is not so early as to constitute a significant burden.[160]

**Costs.** There are no costs associated with filing or verifying signatures other than a filing fee that is required of all candidates to run for office.[161]

**Voter Eligibility to Vote in Primary if Signing a Petition.** Other than the limitation that signers be registered voters and members of a party that has been designated by the QPP as being able to vote in the QPP's primary, there is no restriction on who is eligible to sign a petition under the subsections (8)(b)(iii) and (iv). Unlike *Lee*, where a person who signed a petition was not able to vote in the primary,[162] here there is no such restriction.

As the URP explains, and as has been explained previously in this Memorandum Decision and Order, the ruling in the First Lawsuit reduced the number of eligible voters in the URP primary election by cutting out unaffiliated voters.[163] This reduced the pool of eligible voters by "more than 50%"[164] and caused the *percentage* of signatures needed to increase dramatically. This, combined with the factors identified immediate above, severely restricts the ability of candidates to access the URP primary election ballot and would likely be held unconstitutional if subsections (8)(b)(iii) and (iv) were analyzed without reference to the convention path candidates may use to access the URP primary ballot.[165] But the signature requirements of subsections (8)(b)(iii) and (iv) do not stand alone. Instead, they stand as an *alternative means* to ballot access in addition to the convention route.

---

[159] Utah Lieutenant Governor Elections 2016 Candidate Signatures, Ex. A to Defendant's Supplemental Memorandum in Opposition to the Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(i) and 73(j) of Plaintiff's Complaint, docket no. 64-1, filed Mar. 10, 2016.

[160] Utah Code § 20A-9-408(8)(b).

[161] *Id.* § 20A-9-408(3)(c).

[162] *See Lee*, 463 F.3d at 765 (noting that under statutory scheme being examined, a voter is disqualified from voting in primary if the voter has signed a nominating petition).

[163] 39 URP MPSJ at 6-7.

[164] *Id.* at 7.

[165] Order for briefing at 7 (noting constitutional concerns with Utah Code §§ 20A-9-408(8)(b)(iii) and (iv)).

*LaRouche* instructs that alternative paths to the ballot should not be analyzed in isolation, but should be viewed in their totality. Under *LaRouche*, a law is not unconstitutional simply because *one* of the routes may be constitutionally infirm. Instead, the law must be viewed in its entirety. This comports with the Tenth Circuit view that "each case must be resolved on its own facts after due consideration is given to the practical effect of the election laws of a given state, viewed in their totality."[166] As long as there is a clearly constitutional path to the ballot, an alternative method of ballot access is not unconstitutional unless it is "wholly irrational."[167] Thus, the next questions are whether there is a constitutional path to the ballot for URP candidates and whether the signature-gathering route—the "alternative method of ballot access" under subsections (8)(b)(iii) and (iv)—are "wholly irrational." The constitutionality of the convention route is addressed first, followed by a discussion of whether the signature-gathering route is "wholly irrational."

### The Convention Route Is Constitutional

No party claims that the QPP convention path, found in Utah Code § 20A-9-407, is unconstitutional. In fact, the URP has taken the position that the convention path is the *only* proper path for its candidates. Thus, because there is no challenge to the convention route, it is assumed to be a constitutional path to the ballot for URP candidates.

It necessarily follows that the QPP signature gathering route is an "additional" way for URP candidates to access the ballot. The UDP argues that "URP ignores that the Signature Gathering Provision is an option *in addition to* the caucus/convention system available to QPPs. No one contends that going through a caucus/convention system imposes a serious obstacle to

---

[166] *Arutunoff*, 687 F.2d at 1379.

[167] *LaRouche*, 990 F.2d at 38 n.1.

gain access to the ballot . . . ."[168] The LG similarly argues that there is no constitutional problem

with the Signature Gathering Provision because "QPP members are able to access the ballot

through their party's convention *as well as* by gathering signatures."[169] The LG and the UDP are

correct, following the reasoning in *LaRouche*. The alternative signature-gathering route is

constitutional even if it has constitutional infirmity, unless it is "wholly irrational."[170]

### Subsections (8)(b)(iii) and (iv) Are Not "Wholly Irrational"

The URP argues that subsections (8)(b)(iii) and (iv) are irrational because they pick "an

arbitrary number of 2,000 signatures for State Senate candidates and 1,000 signatures for State

House candidates[,]" and that those numbers "have no relationship to the number of registered

Party members or to the number of voters who are eligible to vote for the UTGOP candidate in

the District."[171]

The Eleventh Circuit addressed a similar argument in *Libertarian Party of Florida*.[172]

Although the opinion analyzed whether a numerical requirement of signatures was the "least

drastic means" to accomplish the state's objectives, the reasoning is still persuasive:

> Obviously any percentage or numerical requirement is "necessarily arbitrary."
> Once a percentage or number of signatures is established, it would probably be
> impossible to defend it as either compelled or least drastic. At any point, probably
> a fraction of a percentage point less, or a few petitioners less would not leave the
> interests of the state unprotected. Any numerical requirement could be challenged
> and judicially reduced, and then again, and again until it did not exist at all. This

---

[168] UDP Response at 31 (emphasis added).

[169] LG Opposition at 17 (emphasis added).

[170] The LG argues that the *Anderson* balancing test applies, *see Rainbow Coalition of Okla. v. Okla. State Elec. Bd.*, 844 F.2d 740, 743 (10th Cir. 1988), and that the analysis must end at the first prong of that test because there is no constitutional injury. The LG takes this position because the LG reasons that the presence of the convention route under the QPP path eliminates the need to consider any "justification for the burden" imposed by subsections (8)(b)(iii) and (iv). However, because *LaRouche* makes clear that an alternative route is constitutional *unless it is* "wholly irrational," *LaRouche*, 990 F.2d at 38 n.1, the rationality of subsections (8)(b)(iii) and (iv) will be addressed.

[171] 39 URP MPSJ at 6.

[172] *Libertarian Party of Florida v. State of Florida*, 710 F.2d 790 (11th Cir. 1983).

is not the thrust of the Court's teachings, however. Rather, a court must determine whether the challenged laws . . . provide a realistic means of ballot access. The focal point of this inquiry is whether a "reasonably diligent [ ] candidate [can] be expected to satisfy the signature requirements." . . . .[173]

Here, it could be said that a lower number would increase ballot access. A low percentage, such as 2% or 3%, would allow candidates to more easily obtain the required amount of signatures. And it is difficult to understand how, if 2% signatures satisfies the State's interests under the RPP path, any higher percentage is needed under the QPP path. But this does not mean subsections (8)(b)(iii) and (iv) are "wholly irrational" in the same sense a coin flip is irrational.

There are two reasons. First, there is a realistic means of ballot access under subsections (8)(b)(iii) and (iv). Several candidates have already gathered enough verified signatures to obtain access to the primary ballot in their respective elections.[174] Second, "[j]ust as States may require persons to demonstrate 'a significant modicum of support' before allowing them access to the general-election ballot, lest it become unmanageable, . . . they may similarly demand a minimum degree of support for candidate access to a primary ballot."[175] The 1,000 and 2,000 signature requirements under subsections (8)(b)(iii) and (iv) allow the LG to manage the primary ballot in

---

[173] *Id.* at 793 (citations omitted).

[174] Utah Lieutenant Governor Elections 2016 Candidate Signatures, Ex. A to Defendant's Supplemental Memorandum in Opposition to the Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(i) and 73(j) of Plaintiff's Complaint, docket no. 64-1, filed Mar. 10, 2016. The URP attempts to create a dispute of material fact about this chart, stating that there are fewer numbers of URP candidates "who ha[ve] qualified under the thresholds set in Utah Code § 20A-9-408[8](b)(iii)-(iv)," Utah Republican Party's Response to the Court's Rule 56(f) Notice ("URP 56(f) Response") at 3, docket no. 72, filed Apr. 1, 2016, but this attempt is unsuccessful because the URP recognizes that there are at least some URP candidates who have successfully met the signature requirements to obtain access to the ballot.

[175] *New York State Bd. of Elections v. Lopez-Torres*, 552 U.S. 196, 204 (2008) (citation omitted).

a quantifiable way.[176] Contrary to the URP's argument, a signature requirement does not need to be represented as a percentage to be considered rational.[177]

The signature requirements under the QPP path were enacted with the expectation that unaffiliated voters would be part of the pool from which candidates could gather signatures. This is no longer the case for the URP. Consequently, signature gathering is more difficult for URP candidates—especially candidates in districts where percentages are high. But increased difficulty to gather signatures and potential disparity between districts does not mean the requirements are "wholly irrational." Requiring the same number of signatures for each district can pass the rationality test because the State is allowed to require candidates to show "a significant modicum of support" before placing them on a ballot.[178]

Perhaps the Legislature desired to incentivize QPP House and Senate candidates to follow the convention route instead of the signature route, and therefore included a higher signature hurdle than contained in the RPP path where signature gathering is the only option and is set at 2%. Perhaps the legislature wished to avoid ballot overcrowding on a QPP House and Senate primary ballot and knew that candidates would emerge from convention to appear on a primary ballot, so it decided to avoid a flood of signature-gathering candidates on the QPP primary ballot. These are conceivable reasons for requiring a fixed number of 1,000 or 2,000 signatures in a state House or state Senate district. The reasons the legislature chose these numbers is uncertain. But certainty is unnecessary because a court is "*obligated* to seek out other conceivable reasons for validating a state policy" and "must independently consider whether

---

[176] *Brown v. N.Y.C. Bd. of Elections*, Case No. 13-cv-2729, 2013 WL 6248451, *3 (E.D.N.Y. Dec. 3, 2013) (upholding requirement of a fixed number of 4,000 signatures even though areas from which signatures could be gathered varied).

[177] *Id.*

[178] *New York State Bd. of Elections*, 552 U.S. at 204.

there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court."[179] The rational basis determination "is a legal question which need not be based on any evidence or empirical data."[180] Applying this low standard, subsections (8)(b)(iii) and (iv) have a conceivable rational basis.

### *Subsections (8)(b)(iii) and (iv) Are Constitutional When Viewed in Totality*

When determining the "practical effect" of SB54, viewed in totality, and determining whether a "reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot," subsections (8)(b)(iii) and (iv) are not unconstitutional because they are an *additional method* to access the ballot and are supplementary to the convention path, which no party contends is unconstitutional. Furthermore, the evidence that several candidates have used the QPP signature gathering provisions to access the primary ballot in their respective districts is strong evidence that subsections (8)(b)(iii) and (iv) provide a realistic option for reasonably diligent candidates who seek to gather signatures as a means for accessing the ballot.

Even though subsections (8)(b)(iii) and (iv) would raise serious constitutional concerns as applied to URP if analyzed on their own, the convention path undisputedly provides constitutional access to the primary ballot. Therefore, the provision of an additional way to the ballot under subsections (8)(b)(iii) and (iv) is not unconstitutional because those provisions are not "wholly irrational." Thus, the 39 URP MPSJ is denied with respect to URP's claim that the Signature Gathering Provision is unconstitutional because it imposes "onerous" signature requirements.[181]

---

[179] *Teigen v. Renfrow*, 511 F.3d 1072, 1084 (10th Cir. 2007) (emphasis in original, alteration incorporated).

[180] *Id.*

[181] URP Complaint ¶ 73(i) and (j).

### Rule 56(f) Judgment Independent of the Motion

Rule 56(f) provides that "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."[182] After considering the briefing and argument on the 39 URP MPSJ, notice was given that the court may grant summary judgment for the Lieutenant Governor.[183] The parties were given one week to respond to this notice.[184] Having reviewed the responses filed by the UDP[185] and the URP,[186] summary judgment is granted for the LG and against the URP on the issues raised by subparagraphs (a), (i), and (j) of paragraph 73 of the Complaint (judicial estoppel and "onerous" signature arguments).

### The UDP's Third Cause of Action

The UDP supports summary judgment in favor of the LG on subparagraphs 73(a), (i), and (j), and states that "granting the LG summary judgment on those subparagraphs prudentially moots UDP's Third Cause of Action."[187] The UDP argues that its "rights will be preserved by a grant of summary judgment in favor of the LG on the signature gathering requirements"[188] and therefore the UDP "would not object to a dismissal of its Third Cause of Action as prudentially

---

[182] Fed. R. Civ. P. 56(f).

[183] Notice, docket no. 68, entered Mar. 25, 2016.

[184] *Id.*

[185] Utah Democratic Party's Response to Rule 56(f) Notice Regarding Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(a), (i), (j) ("UDP 56(f) Response"), docket no. 69, filed Apr. 1, 2016.

[186] URP 56(f) Response.

[187] UDP 56(f) Response at 5.

[188] *Id.* at 5.

moot under the circumstances, subject to its ability to raise the Third Cause of Action in the future should URP appeal this Court's ruling in favor of the LG and prevail."[189]

Voluntary dismissal of single claims is generally not allowed because Rule 41 refers to dismissal of "actions," not dismissal of claims.[190] Where a plaintiff wishes to dismiss certain claims but not dismiss the entire case or dismiss a defendant, the proper procedure is to amend the complaint under Rule 15.[191] Accordingly, the UDP is granted leave to amend its complaint to omit its Third Cause of Action. Any amended complaint should be filed no later than April 14, 2016.

## CONCLUSION

The 37 UDP MJP raises claim preclusion as to the URP's claims about the Either or Both Provision and the Signature Gathering Provision, as well as issue preclusion as to the Signature Gathering Provision. The 37 UDP MJP also raises claim splitting. The claim preclusion argument with respect to the Either or Both Provision is not addressed in this Memorandum Decision and Order, but the remaining preclusion arguments fail. The UDP's claim splitting argument fails as well. Other arguments that were raised in the 37 UDP MJP but not addressed expressly in this Memorandum Decision and Order have been reviewed and do not have merit.

The 38 LG MJP raises claim preclusion as to all the URP's claims; issue preclusion as to the URP's claims about the Signature Gathering Provision; claim splitting as to all the URP's claims; and waiver as to the URP's claims about the constitutionality of SB54. The LG's

---

[189] *Id.* at 6.

[190] *See Gobbo Farms and Orchards v. Poole Chemical Co., Inc.*, 81 F.3d 122, 123 (10th Cir. 1996) (stating that plaintiff "offers no authority, and we have found none, to support its contention that Rule 41(a) applies to dismissal of less than all claims in an action" and "at least one district court in this circuit . . . specifically held to the contrary").

[191] *Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d 1360, 1364-65 (Fed. Cir. 2000) (stating that where a plaintiff wishes to dismiss certain causes of action but not dismiss the entire action or dismiss a defendant, the proper procedure is to amend the complaint under Rule 15); *see also* Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 16-G, § 16:310 ("No dismissal of single claims").

argument that claim preclusion applies to bar *all* of URP's claims is not addressed in this Memorandum Decision and Order. However, claim preclusion does not apply as to the URP's claims about the Signature Gathering Provision. Issue preclusion does not apply as to the URP's claims about the Signature Gathering Provision. Claim splitting does not apply to bar all claims. And waiver does not apply as to the constitutionality of SB54. Other arguments that were raised in the 38 LG MJP but not addressed expressly in this Memorandum Decision and Order have been reviewed and do not have merit.

The 39 URP MPSJ raises judicial estoppel, constitutionality of the "onerous" QPP signature requirements, and severability. URP's argument that judicial estoppel validates its claims fails. Further, even though subsections (8)(b)(iii) and (iv) raise serious constitutional concerns as applied to URP if analyzed on their own, the convention path undisputedly provides constitutional access to the primary ballot. Therefore, the provision of an additional way to the ballot under subsections (8)(b)(iii) and (iv) is not unconstitutional because those provisions are not "wholly irrational." Finally, because subsections (8)(b)(iii) and (iv) are not unconstitutional when viewed in totality, there is no need to address severability. Other arguments that were raised in the 39 URP MPSJ but not addressed expressly in this Memorandum Decision and Order have been reviewed and do not have merit.

After notice and a reasonable time to respond, summary judgment is granted under Rule 56(f) for the LG and against the URP on the URP's judicial estoppel and "onerous" signature arguments raised in the 39 URP MPSJ. Specifically, summary judgment is granted for the LG on the issues raised by subparagraphs (a), (i), and (j) of paragraph 73 of the Complaint. There is no genuine issue as to any material fact and the LG is entitled to judgment as a matter of law.

Finally, the UDP is granted leave to amend its complaint to omit its Third Cause of Action since that claim is moot by the grant of summary judgment in favor of the LG.

### ORDER

IT IS HEREBY ORDERED that the 37 UDP MJP[192] is DENIED IN PART.

IT IS FURTHER ORDERED that the 38 LG MJP[193] is DENIED IN PART.

IT IS FURTHER ORDERED that the 39 URP MPSJ[194] is DENIED.

IT IS FURTHER ORDERED that summary judgment is GRANTED under Rule 56(f) for the LG with respect to the judicial estoppel and "onerous" signature arguments raised in the 39 URP MPSJ. The URP's claims for relief under subparagraphs (a), (i), and (j) of paragraph 73 of the Complaint are DISMISSED.

IT IS FURTHER ORDERED that the UDP is granted leave to file an amended complaint. Any amended complaint must be filed on or before April 14, 2016.

Dated April 6, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[192] Utah Democratic Party's Motion for Judgment on the Pleadings and Memorandum in Support Thereof ("37 UDP MJP"), docket no. 37, filed Feb. 12, 2016.

[193] Defendant's Motion for Judgment on the Pleadings and Memorandum in Support ("38 LG MJP"), docket no. 38, filed Feb. 12, 2016.

[194] Utah Republican Party's Motion for Summary Judgment Regarding Subparagraphs 73(a), (i) and (j) ("39 URP MPSJ"), docket no. 39, filed Feb. 12, 2016.