IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>Plaintiff,<br><br>UTAH DEMOCRATIC PARTY,<br><br>Intervenor Plaintiff,<br><br>v.<br><br>SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br>    • **DENYING [37] MOTION FOR JUDGMENT ON THE PLEADINGS;**<br>    • **DENYING [38] MOTION FOR JUDGMENT ON THE PLEADINGS;**<br>    • **DENYING [41] MOTION FOR PARTIAL SUMMARY JUDGMENT; AND**<br>    • **ENTERING PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00038-DN<br>District Judge David Nuffer |

The Utah Republican Party ("URP") claims in subparagraphs 73(b) through (g) of its Complaint[1] (mirrored in subparagraphs 79(a) through (f) of that Complaint) that the State of Utah may not require it to permit its members to seek a place on the primary election ballot through gathering signatures. The URP argued first that the plain language of the Either or Both Provision[2] did not require the URP to allow members the option of gathering signatures, but this argument was rejected by the Utah Supreme Court.[3] The URP also argues that by leaving the choice of paths to the primary election ballot in the hands of party members, the statute is unconstitutional because it abridges the rights of the party.[4]

---

[1] Complaint ("URP Complaint") ¶ 73, docket no. 2, filed Jan. 15, 2016.

[2] Utah Code § 20A-9-101(12)(d) ("Either or Both Provision").

[3] *Utah Republican Party v. Cox*, 2016 UT 17, ¶ 5.

[4] URP Complaint ¶¶ 54-57.

This Memorandum Decision and Order concludes that the Either or Both Provision, which, as interpreted by the Utah Supreme Court, allows URP members to choose to access the primary election ballot by either signature gathering, or through Utah's more traditional caucus and convention route, or both, does not impair the URP's constitutional rights but is a legitimate exercise of the state's power to regulate elections.

## <u>CONTENTS</u>

PENDING MOTIONS ............................................................................................................ 1
STANDARD FOR JUDGMENT ON THE PLEADINGS .............................................. 4
STANDARD FOR SUMMARY JUDGMENT ................................................................ 5
UNDISPUTED MATERIAL FACTS ............................................................................. 6
    The First Lawsuit ........................................................................................................ 6
    URP and LG Communication Following the First Lawsuit ............................................ 14
    The Current Lawsuit .................................................................................................. 15
    Certified Questions .................................................................................................... 17
    Utah Supreme Court Ruling on Certified Questions .................................................... 18
    URP's Constitution, Bylaws, and Rules ...................................................................... 20
    URP's Additional Statements of Position .................................................................... 21
DISCUSSION .................................................................................................................. 23
    Preclusion Issues Presented ...................................................................................... 24
        Claim Preclusion Does Not Bar URP Claims in Subparagraphs 73(b) through
            (g) ............................................................................................................ 24
        Issue Preclusion Does Not Bar URP Claims in Subparagraphs 73(b) through
            (g) ............................................................................................................ 29
    The Issues are Ripe .................................................................................................... 30
    Standing Issues and Doctrine .................................................................................... 34
        The URP has Standing in the Case ............................................................................ 35
        The UDP has Standing on the Motion ...................................................................... 36
    The Either or Both Provision is Constitutional ............................................................ 37
        The Signature Gathering Provision and the Either or Both Provision Fulfill
            Important State Regulatory Interests ...................................................... 40
        Issue Framing is Not Determinative ........................................................................ 40
        SB54 Provides Significant Control to the URP in the Primary Election
            Process .................................................................................................... 41
        None of the URP's Rights Are Severely Burdened ................................................. 42
    SB54 is Not the Product of Invidious Discrimination .................................................. 52
    Severability Need Not Be Considered ........................................................................ 53
CONCLUSION ................................................................................................................ 53
ORDER ........................................................................................................................... 55
DECLARATORY JUDGMENT ................................................................................... 55

## PENDING MOTIONS

The URP moves for partial summary judgment on subparagraphs 73(b) through (g) of its

Complaint ("41 URP MPSJ").[5] Paragraph 73 of the Complaint asserts that:

73. The Party is entitled to a declaratory judgment establishing the unconstitutionality of the SB54 set forth above as applied to the manner in which

    a.   the State has taken a different position from that taken in the First Lawsuit, that the Party relied on in terminating prior litigation;

    b.   the State has taken away and misappropriated the Party's right to certify and endorse its nominees for elected office;

    c.   the State has taken away and misappropriated the Party's right to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot;

    d.   the State has taken away and misappropriated the Party's right to determine for itself the candidate selection process that will produce a nominee who best represents the Party's political platform;

    e.   burdened the Party's associational rights by mandating changes to the Party's internal rules and procedures, at the threat of depriving the Party of its rights if it refuses to comply, that disadvantage the Party, and that the Party has rejected and that conflict with the rules the Party has determined for itself, as set forth in its Constitution and Bylaws, will produce a nominee who best represents the Party's political platform;

    f.   burdened the Party's associational rights, and the rights of disassociation, by imposing upon the Party a nominee who may not necessarily be a Party member and without guaranteeing that nominee has been selected by a majority of Party members participating in the primary election;

    g.   burdened the Party's associational rights and rights to free speech, by taking away the Party's right to have its nominees commit themselves to the Party Platform "as the standard by which my performance as a candidate and as an officeholder should be evaluated," and replacing it with a process that requires only that candidates gather signatures;

    h.   burdened the Party's associational rights, and the rights of disassociation, by taking away the Party's convention system as its preferred way of selecting nominees and allowing a party to designate candidates in the primary election

---

[5] Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(b)-(g) ("41 URP MPSJ"), docket no. 41, filed Feb. 17, 2016.

by convention only if it agrees to open that primary election, that the State now mandates, to persons unaffiliated with the Party;

i. burdened the Party's associational rights and the rights of disassociation, by imposing on candidates seeking the Party's nomination onerous signature gathering requirements beyond those ever allowed by the United States Supreme Court, and thus unconstitutionally burdens the Party's rights;

j. burdened the rights of the Party and its members by imposing on them signature-gathering requirements beyond those ever allowed by law; and

k. otherwise burdening the Party's rights of association, or depriving it of its rights of disassociation, free speech and due process as set forth above.[6]

Summary judgment was previously granted in favor of the Lieutenant Governor ("LG") with respect to subparagraphs 73(a), (i), and (j).[7] That order rejected the URP dclaims that the numeric signature requirements rendered the signature gathering path unconstitutional. Also, the URP acknowledged in a hearing on February 4, 2016 that subparagraph 73(h) was not at issue because it was resolved in the First Lawsuit.[8] Further, subparagraph 73(k) is a "catch-all" which does not raise new subject matter that is not already alleged in the previous subparagraphs. Thus, this Memorandum Decision and Order resolves subparagraphs 73(b) through (g), the only remaining URP claims in its first cause of action and the only subparagraphs raised in the 41 URP MPSJ. The LG and the Utah Democratic Party ("UDP") oppose the 41 URP MPSJ ("LG

---

[6] URP Complaint ¶ 73.

[7] *See* Memorandum Decision and Order Denying in Part [37] Motion for Judgment on the Pleadings; Denying in Part [38] Motion for Judgment on the Pleadings; Denying [39] Motion for Partial Summary Judgment; Granting Summary Judgment under Rule 56(f) for the LG and against the URP; and Granting Leave to the UDP to File an Amended Complaint ("75 Order"), docket no. 75, filed Apr. 6, 2016.

[8] *Utah Republican Party et al. v. Herbert et al.*, Case No. 2:14-cv-00876-DN-DBP ("First Lawsuit"). Summary judgment was previously granted in favor of the Lieutenant Governor ("LG") with respect to subparagraphs 73(a), (i), and (j). *See* 75 Order at 42. Also, the URP acknowledged in a hearing on February 4, 2016 that subparagraph 73(h) was not at issue because it was resolved in the First Lawsuit. Transcript of Status Conference (Feb. 4, 2016) ("Feb. 4 Tr.") at 23, docket no. 42, filed Feb. 18, 2016.

Opposition" and "UDP Opposition" respectively).[9] For the reasons stated below, the 41 URP MPSJ is DENIED.

Furthermore, since proper notice has been given under Rule 56(f)[10] that summary judgment may be granted for the LG as to the issues raised in the 41 URP MPSJ,[11] and the parties have had the opportunity to file responses to that notice,[12] summary judgment is granted in favor of the LG and against the URP as to the issues raised in the 41 URP MPSJ. Specifically, summary judgment is GRANTED in favor of the LG and against the URP with respect to subparagraphs 73(b) through (g). Further, declaratory judgment is entered that Utah Code § 20A-9-101(12)(d) ("Either or Both Provision") is a valid exercise of the state's power to regulate elections. The Either or Both Provision, by allowing a URP member candidate to gather signatures to obtain access to the URP primary election ballot, imposes a permissible burden on the URP and fulfills the stated purposes of the statute.[13] Those purposes are to manage elections in a controlled manner, increase voter participation, and increase access to the ballot.[14]

Importantly, it is *not* the *state* that decides which candidates will be placed on the general election ballot; rather, *only those voters who the URP allows to vote in the URP primary* can

---

[9] Defendant's Memorandum in Opposition to Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(b)-(g) ("LG Opposition"), docket no. 49, filed Feb. 24, 2016; Utah Democratic Party's Response to Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(b)-(g) ("UDP Opposition"), docket no. 51, filed Feb. 24, 2016.

[10] Fed. R. Civ. P. 56(f).

[11] Notice from the Court, docket no. 76, entered Apr. 11, 2016.

[12] The UDP was the only party to file a response to the Rule 56(f) notice. Utah Democratic Party's Response to Rule 56(f) Notice Regarding Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(b)-(g), docket no. 81, filed Apr. 14, 2016.

[13] *See Greenville County Republican Party Executive Committee v. South Carolina*, 824 F. Supp. 2d 655, 662 (D.S.C. Mar. 30, 2011) (stating that burdens may be necessarily imposed on political parties in order to advance legitimate state interests).

[14] Utah Code § 20A-9-401 ("This part shall be construed liberally so as to ensure full opportunity for persons to become candidates and for voters to express their choice."); Utah Code § 20A-2-300.6 (stating that the LG is "Utah's chief elections officer" and shall "ensure compliance with state and federal election laws").

make that decision. In the 2016 election, only members of the URP are allowed to vote in the

URP primary, so the members of the URP—and the members of the URP alone—will decide

who represents the URP on the general election ballot. Historically, delegates of the URP often

made that decision. Under the state's new election processes, delegates share that decision with

other members of the URP. While the URP claims this is a "severe" burden on the URP's rights

of association and disassociation, the URP is incorrect. The burden imposed is a reasonable

regulation that accomplishes the objectives of the statute.

Additionally, the LG and the UDP have moved for judgment on the pleadings.[15] The

UDP's motion for judgment on the pleadings ("37 UDP MJP") and the LG's motion for

judgment on the pleadings ("38 LG MJP") were previously denied in part.[16] For the reasons

stated below, the remaining portions of the 37 UDP MJP and the 38 LG MJP are DENIED.

## STANDARD FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil

Procedure is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss for failure to

state a claim.[17] The factual record for such a motion is the text of the challenged pleading. The

factual details supporting a claim must be great enough to make the claim plausible, rather than

merely possible. That is, the factual details must be "enough to raise a right to relief above the

speculative level. . . ."[18] It must be reasonable for a court to draw the inference that the defendant

---

[15] Utah Democratic Party's Motion for Judgment on the Pleadings and Memorandum in Support Thereof ("37 UDP MJP"), docket no. 37, filed Feb. 12, 2016; Defendant's Motion for Judgment on the Pleadings and Memorandum in Support ("38 LG MJP"), docket no. 38, filed Feb. 12, 2016.

[16] *See* 75 Order at 40-42.

[17] *See, e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(b)(6).

[18] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

is liable, based on the facts stated.[19] Recitations of elements of a claim and conclusory statements lack sufficient detail, and cannot trigger a court's assumption that all of the statements made in the pleading are true.[20]

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[22] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[23]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[24] The factual record for a motion for summary judgment is the undisputed material facts derived from the parties' briefing. The following Undisputed Material Facts are derived from the 41 URP MPSJ, the LG Opposition, the UDP Opposition, and the portions of the record cited in that briefing. In its Reply, the URP did not respond to any statements of fact.[25]

---

[19] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[20] *Id.*

[21] Fed. R. Civ. P. 56(a).

[22] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[23] *Id.*

[24] *Id.* at 670-71.

[25] Reply Memorandum in Support of Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(b)-(g) ("URP Reply"), docket no. 57, filed Feb. 29, 2016.

The Undisputed Material Facts which come from the First Lawsuit history, from the statutes, and from the Complaint in this lawsuit are considered in the 37 UDP MJP and the 38 LG MJP.

## UNDISPUTED MATERIAL FACTS

### The First Lawsuit

In December 2014, the URP filed the First Lawsuit against the Governor and the LG of the State of Utah (collectively "State Defendants"). The First Lawsuit concerned the constitutionality of Senate Bill 54 ("SB54"). SB54 was enacted in 2014 by the Utah State Legislature to modify the Utah Election Code provisions regarding the nomination of candidates, primary and general elections, and ballots. Specifically, the URP claimed that it was entitled to a declaratory judgment and injunctive relief under the First and Fourteenth Amendments of the United States Constitution with respect to the manner in which the State Defendants, through SB54, had:

    a.  . . . taken away and misappropriated the Party's right to certify and endorse its nominees for elected office;

    b.  . . . taken away and misappropriated the Party's right to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot;

    c.  . . . taken away and misappropriated the Party's right to determine for itself the candidate selection process that will produce a nominee who best represents the Party's political platform;

    d.  burdened the Party's associational rights by mandating changes to the Party's internal rules and procedures, at the threat of depriving the Party of its rights if it refuses to comply, that disadvantage the Party, and that the Party has rejected and that conflict with the rules the Party has determined for itself, as set forth in its Constitution and Bylaws, will produce a nominee who best represents the Party's political platform;

    e.  burdened the Party's associational rights, and the rights of disassociation, by imposing upon the Party a nominee who may not necessarily be a Party member and without guaranteeing that nominee has been selected by a majority of Party members participating in the primary election;

6

f.  burdened the Party's associational rights and rights to free speech, by taking away the Party's right to have its nominees commit themselves to the Party Platform "as the standard by which my performance as a candidate and as an officeholder should be evaluated," and replacing it with a process that requires only that candidates gather signatures; and

g.  burdened the Party's associational rights, and the rights of disassociation, by taking away the Party's convention system as its preferred way of selecting nominees and allowing a party to designate candidates in the primary election by convention only if it agrees to open that primary election, that the State now mandates, to persons unaffiliated with the Party; and

h.  otherwise burden[ed] the Party's rights of association, or depriving it of its rights of disassociation, free speech and due process as set forth above.[26]

The Constitution Party of Utah ("CPU") was permitted to intervene in the First Lawsuit and asserted similar claims against the State Defendants.[27] The CPU specifically challenged the constitutionality of the nominating petition signature gathering requirements set forth in Utah Code § 20A-9-408 ("Signature Gathering Provision").[28] The CPU contended that SB54 was unconstitutional because the "signature gathering processes are a severe burden on CPU's associational rights."[29] The Signature Gathering Provision permits a candidate to appear on a party's primary ballot by gathering a specified percentage or number of signatures from persons who are qualified to vote in that party's primary.[30]

---

[26] Complaint ("URP Complaint 1") ¶ 110, ECF No. 2 in First Lawsuit, filed Dec. 1, 2014. The URP also asserted trademark infringement claims in the First Lawsuit, but the trademark claims are not relevant to the current issues in question. *See also* 41 URP MPSJ at 5, ¶ 2 (citing URP Complaint 1 ¶¶ 110(e)-112 and 41 (Prayer)). Undisputed by the LG. LG Opposition at xii, ¶ 2. UDP does not dispute these allegations were made in the First Lawsuit. UDP Opposition at 5-6, ¶ 2(a).

[27] Complaint ("CPU Complaint"), ECF No. 27 in First Lawsuit, filed Jan. 27, 2015.

[28] Motion for Partial Summary Judgment and Memorandum in Support at 15, ECF No. 163 in First Lawsuit, filed Sep. 21, 2015.

[29] Reply Memorandum in Support of Plaintiff Constitution Party of Utah's Motion for Partial Summary Judgment at 13, ECF No. 188 in First Lawsuit, filed Oct. 19, 2015.

[30] *See, e.g.* Utah Code § 20A-9-408(8)(b)(ii) (allowing candidate to appear on ballot for "a congressional district race" if the candidate collects "7,000 signatures of registered voters who are residents of the congressional district and are permitted by the qualified political party to vote for the qualified political party's candidates in a primary election"). All citations to the Utah Code are to the 2015 edition unless otherwise noted.

The URP sought a preliminary injunction in the First Lawsuit to stay the enforcement or implementation of SB54.[31] After the URP's motion for preliminary injunction was filed, the Utah Legislature enacted Senate Bill 207 ("SB207"), amending SB54 to clarify that anyone seeking the nomination of a political party must be a registered member of that party.[32]

The URP's motion for preliminary injunction was denied.[33] The Order Denying Preliminary Injunction rejected the URP's claims that SB54 restricted its ability to endorse the candidates of its choice and to regulate the URP's internal affairs free from state influence, concluding: "[s]ignificantly, under SB54, the State does not dictate who is allowed to be a member of a political party," that "state law allows all political parties to define membership in accordance with party rules," and that "SB207 eliminate[d] the [URP]'s concern that its nominees may not be members of the Republican Party" because "a candidate may not file a declaration of candidacy for a political party of which the candidate is not a member, except to the extent that the political party permits otherwise in the political party's bylaws."[34] The Order Denying Preliminary Injunction noted that none of the burdens URP alleged were "severe," except one, which was not ripe for a challenge:

---

[31] 41 URP MPSJ at 5, ¶ 3 (citing Plaintiff's Motion for a Preliminary Injunction, ECF No. 12 in First Lawsuit, filed Jan. 1, 2015; Plaintiff's Amended Motion for a Preliminary Injunction, ECF No. 13 in First Lawsuit, filed Jan. 5, 2015). Undisputed by the LG. LG Opposition at xiii, ¶ 3. UDP denies this fact, UDP Opposition at 6, ¶ 3(a), but UDP's denial is unfounded. There can be no *genuine* dispute that the URP's motion for preliminary injunction in the First Lawsuit sought to stay the enforcement of SB54.

[32] 41 URP MPSJ at 6, ¶ 7 (citing Notice of Senate Bill 207 Signed by Governor Herbert, ECF No. 66 in First Lawsuit, filed Mar. 31, 2015). The LG disputes that SB207 was not enacted "in response to the [URP]'s allegations" in the First Lawsuit. LG Opposition at xiii, ¶ 7. UDP disputes that SB207 speaks for itself. UDP Opposition at 7, ¶ 7(a). This statement of fact omits the suggestion that SB207 was enacted in response to the URP's allegations.

[33] Memorandum Decision and Order Denying Preliminary Injunction ("Order Denying Preliminary Injunction"), ECF No. 170 in First Lawsuit, entered Sep. 24, 2015.

[34] 41 URP MPSJ at 8, ¶ 19 (citing Order Denying Preliminary Injunction at 19-20). Undisputed by the LG. LG Opposition at xviii, ¶ 19. UDP disputes this statement of fact, arguing that the Order Denying Preliminary Injunction speaks for itself. UDP Opposition at 12, ¶ 19(a). The UDP is correct that the Order Denying Preliminary Injunction speaks for itself and that it makes additional statements not included in this statement of fact. But the quoted statements from the Order Denying Preliminary Injunction are accurate and cannot be genuinely disputed. *See* Order Denying Preliminary Injunction at 19-20.

> **[N]one of the asserted burdens are severe except one,** which is not ripe for review since the evidence now presented by the Party cannot sustain an as-applied challenge to the QPP path of SB54.[35]

The Order Denying Preliminary Injunction explained Utah Code § 20A-9-101(12)(a) was potentially unconstitutional.[36] This subsection forced a political party to allow unaffiliated voters into the party's primary election in order to be considered a "qualified political party" ("QPP"). Subsection (12)(a) was referred to as the "Unaffiliated Voter Provision." The Order Denying Preliminary Injunction explained that the unaffiliated voter issue was not ripe at the preliminary injunction stage because the URP had not yet chosen to become a QPP.[37] All other asserted burdens were rejected. The Order Denying Preliminary Injunction made the following conclusions:

*Requiring Primary Election*

[T]he State can constitutionally require the Party to select its candidates through a primary election and the State can lawfully certify the Party's candidates who receive the most votes in the primary election as the candidates to appear on the general election ballot.[38]

*Use of Party's Symbol on the General Election Ballot*

[T]here is no protected free speech right to communicate the Party's endorsement on the general election ballot. . . . The Party may still hold a convention, campaign for candidates, fundraise, and endorse any candidate the Party chooses to support.[39]

*Interference with Internal Structure of Party*

SB54 does not prevent the Party from holding neighborhood caucus meetings and conducting those meetings as the Party chooses. Moreover, not all regulation of a party's internal processes is prohibited or constitutionally questionable.[40] . . .

---

[35] Order Denying Preliminary Injunction at 15 (emphasis added).

[36] *Id.* at 20.

[37] *Id.* at 31.

[38] *Id.* at 17.

[39] *Id.*

[40] *Id.* at 18.

Moreover, SB207 [a bill enacted in 2015 by the Utah Legislature] eliminates the Party's concern that its nominees may not be members of the Republican Party. . . . Thus, the Party's concern that its nominees will not be members of the Party is unfounded.[41]

*Plurality*

The Party accurately identifies the possibility that, under the provisions of SB54, its nominee may be elected by a plurality, as opposed to a majority, of its members. However, the Party presented no legal authority indicating that there is any constitutional deficiency in a party's candidate gaining access to the general election ballot based on a plurality vote from a primary election.[42]

Thus, the only potentially "severe" burden identified in the First Lawsuit was the Unaffiliated Voter Provision because it *forced* a QPP to allow unaffiliated voters in the QPP's primary election.

Under SB54, political parties desiring to have candidates featured with party affiliation on the upcoming general election ballot must file a statement with the LG to proceed as a "registered political party" ("RPP") or a QPP.[43] On or about August 18, 2015, the URP sent a letter to the LG's office designating itself a QPP in the 2016 election cycle. The letter stated:

Pursuant to Utah Code Ann. § 20A-9-101(12)(e), the Utah Republican Party certifies its intent to nominate candidates in 2016 in accordance with its internal rules and procedures and Utah Code Ann. § 20A-9-406. This is without prejudice to the positions the party has asserted in the matter *Utah Republican Party v.*

---

[41] *Id.* at 20.

[42] *Id.*

[43] 41 URP MPSJ at 7, ¶ 14 (citing Deposition Transcript of Mark J. Thomas (Mar. 20, 2015) ("Thomas Dep.") at 100:15-103:16, ECF No. 69-3 in First Lawsuit, filed Apr. 1, 2015). Undisputed by the LG. LG Opposition at xvi, ¶ 14. UDP disputes this fact, arguing that URP did not cite to any provision of state law to support it. UDP Opposition at 9-10, ¶ 14(a). UDP is correct that URP did not cite any provision of state law to support this proposition, but the UDP is incorrect that state law does not support it. *See* Utah Code § 20A-9-101(12)(e) (requiring political party to certify to the LG by September 30 whether the party will nominate candidates in accordance with Utah Code § 20A-9-406 (Qualified political party – Requirements and exemptions)); Utah Code § 20A-9-403(1) and (2) (requiring political party to declare its intent to participate in the next general election if it wishes to have its candidates appear on the general election ballot with party affiliation). A comprehensive explanation of the QPP/RPP path distinction is included in the Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment [162] and Granting in Part and Denying in Part Constitution Party of Utah's Motion for Partial Summary Judgment [163] ("First Lawsuit Summary Judgment Order"), ECF No. 207 in First Lawsuit, entered Nov. 3, 2015. It will not be repeated here.

*Herbert, et al.*, Case No. 2:14-cv-876 (D. Utah), challenging the constitutionality of recent amendments to the Utah Election Code.[44]

Later in the First Lawsuit, the State Defendants and the CPU brought separate motions for summary judgment.[45] The central issue in those motions was whether the Unaffiliated Voter Provision was unconstitutional.[46] The CPU argued it was unconstitutional because it forced QPPs to allow unaffiliated voters to vote in the QPP's primary election, thus imposing a "severe" burden, and the State did not have a compelling state interest to justify the burden imposed. The State argued the Unaffiliated Voter Provision was constitutionally sound.

On October 27, 2015, a hearing was held regarding the CPU's and the State Defendants' motions for summary judgment. Discussion was held on the Unaffiliated Voter Provision and other topics, including a very brief discussion regarding the Signature Gathering Provision. State Defendants' counsel, Mr. Wolf, stated that "in order to be a qualified political party, the party has to allow the member to either seek the nomination through the convention process or seek the nomination through the signature process or both."[47] Mr. Wolf was referring to Utah Code § 20A-9-101(12)(d) ("Either or Both Provision"), which states that in order to qualify as a QPP, the political party must allow the party candidate to seek the party's nomination "by the member choosing to seek the nomination by either or both of the following methods: [convention] or

---

[44] 41 URP MPSJ at 9-10, ¶ 25 (citing Letter from URP Chairman James Evans to Lt. Gov. Office (Aug. 17, 2015), ECF No. 168-4 in First Lawsuit, filed Sep. 23, 2015). Undisputed by LG. LG Opposition at xxi, ¶ 25. Undisputed by UDP. UDP Opposition at 15, ¶ 15(a).

[45] Defendants' Motion for Summary Judgment and Memorandum in Support, ECF No. 162 in First Lawsuit, filed Sep. 21, 2015; Motion for Partial Summary Judgment and Memorandum in Support, ECF No. 163 in First Lawsuit, filed Sep. 21, 2015. The URP also filed a motion for summary judgment, but it was stricken. Order Striking [167] Motion for Summary Judgment and [168] Corrected Motion for Summary Judgment, ECF No. 171 in First Lawsuit, entered Sep. 24, 2015.

[46] First Lawsuit Summary Judgment Order at 10.

[47] Transcript of Summary Judgment Oral Argument held Oct. 27, 2015 ("Oct. 27 Tr.") at 34, Ex. A to 38 LG MJP, docket no. 38-1, filed Feb. 12, 2016.

[signature gathering]."[48] Questions of interpretation of the Either or Both Provision were

certified to the Utah Supreme Court and are discussed below.[49]

The following exchange took place between the court and Mr. Wolf:

THE COURT: So are there two levels of choice here, then? The qualified political party -- let me go back to that – under 12(d), has to permit the member to do one or both of the petition method or nomination through the convention method. So if they only permit nomination by convention, they would be a QPP under 12(d). But then under 406 –

MR. WOLF: Yes.

THE COURT: -- the member of the party has the option to use either method regardless of what the party permitted.

MR. WOLF: And therein lays the dispute or the conflict between the party defining its membership.

THE COURT: That's the next lawsuit. I can't deal with it today.

MR. WOLF: It's not before you today, but I want to make sure our record is clear when we go through and create these facts. So I agree with you. You can be a QPP by providing either of those methods or both.

THE COURT: Okay.

MR. WOLF: But the candidate or the member or the individual has the right to seek the nomination through either or both of those methods. And that sets up a conflict between the party and its members who choose to run for office and potentially the Lieutenant Governor's office, the Lieutenant Governor is called on to make a decision concerning the objection.[50]

Discussion also took place during the October 27 hearing about whether the claims raised

by the CPU and the URP in their respective complaints were moot if the Unaffiliated Voter

Provision were held to be unconstitutional. The following exchange took place between the court

and Messrs. Troupis and Mumford, counsel for the URP:

---

[48] Utah Code § 20A-9-101(12)(d).

[49] Memorandum Decision and Order of Certification ("First Certification Order"), docket no. 22, filed Feb. 4, 2016; Second Memorandum Decision and Order of Certification ("Second Certification Order"), docket no. 34, filed Feb. 11, 2016.

[50] Oct. 27 Tr. at 35-36.

THE COURT: I want to turn now to the Republican Party. If I rule and enter a declaratory judgment and possibly an injunction that 12(a) is unconstitutional and strike it, what other claims remain for adjudication in this case?

MR. MUMFORD: May we just confer?

THE COURT: Yeah. Everybody talk for a minute. Well, not everybody, just counsel. (Time lapse.)

MR. TROUPIS: Your Honor, there would be no other issues for the Republican Party. No other claims. That would resolve the issues.[51]

The CPU's counsel also made similar statements that no other claims would remain, other than a "prevailing party" issue.[52] Based upon the statements made by the CPU's and the URP's counsel that no other claims beyond the Unaffiliated Voter Provision required resolution, and after analyzing in detail the Unaffiliated Voter Provision and the governing law regarding forced association, an order was entered on November 3, 2015, finding the Unaffiliated Voter Provision unconstitutional as applied to the CPU and the URP.[53] The order noted, however, that Utah Code § 20A-9-406(1) replaced the function of the Unaffiliated Voter Provision even though "subsection 406 does not expressly allow a QPP to designate unaffiliated voters to vote in its primary."[54] The order stated that "such a deficiency is not unconstitutional."[55] On November 23, 2015, a Declaratory Judgment and Injunction was entered which closed the case.[56] The practical effect of the First Lawsuit was that unaffiliated voters were not able to participate in the URP or CPU primary elections, and were not able to sign petitions for URP or CPU candidates. There

---

[51] *Id.* at 90.

[52] *Id.* at 91.

[53] The court granted summary judgment in favor of nonmovant URP under Rule 56(f). First Lawsuit Summary Judgment Order at 37-38.

[54] *Id.* at 36.

[55] *Id.*

[56] Declaratory Judgment and Injunction, ECF No. 215 in First Lawsuit, entered Nov. 23, 2015.

are 610,654 unaffiliated registered voters in Utah.[57] There are about 640,000 registered Republicans in Utah.[58]

**URP and LG Communication Following the First Lawsuit**

After the First Lawsuit concluded, the URP formally declared to the LG that it would restrict its candidate-selection procedures to the convention method.[59] On November 19, 2015, the LG responded that he disagreed that the URP could make this restriction, asserting "it is the individual who has the right to choose their path to the ballot and the individual may seek a nomination by the use of both methods."[60] Republican State Senator Todd Weiler wrote a letter to the LG's Office asking about his options for gathering signatures in light of the URP's formal declaration. The LG's Office replied in a letter dated November 20, 2015 that Sen. Weiler had the option to gather signatures and if the URP revoked Sen. Weiler's party membership for gathering signatures, the URP *would no longer qualify as a QPP under Utah election law*.[61]

Subsequently, on January 19, 2016, the LG's Office issued a Voter and Candidate Clarification memorandum which modified the position taken in the letter to Sen. Weiler:

> Question #5: Is it possible that the Republican Party will lose its Qualified Political Party (QPP) status and that candidates who choose only the caucus/convention path will be removed from the ballot?
>
> No. Because there is nothing in the law that anticipates what happens if a party fails to follow the requirements of a QPP, and because there is no provision to subsequently disqualify a party, this has been subject to different legal interpretations. On August 17, 2015, the Utah Republican Party certified their

---

[57] First Lawsuit Summary Judgment Order at 8, ¶ 25.

[58] *Id.* at 8, ¶ 26.

[59] Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox at 2-3 (Dec. 3, 2015), attached as Ex. 1 to Notice of Filing of December 3, 2015 Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox, docket no. 74-1, filed Apr. 5, 2016.

[60] Letter from Lt. Gov. Spencer J. Cox to URP Chairman James Evans at 1 (Nov. 19, 2015), attached as Ex. 2 to Complaint of Intervenor Utah Democratic Party, docket no. 20-2, filed Feb. 4, 2016.

[61] Letter from Utah Director of Elections Mark Thomas, Lt. Gov.'s Office, to Utah State Senator Todd Weiler (Nov. 20, 2015), attached as Ex. 2 to URP Complaint, docket no. 2-2, filed Jan. 15, 2016.

> designation as a QPP and specifically stated their intention to follow all of the
> statutory QPP provisions and requirements. As such, my intention is to rely on
> this certification, and allow candidates access to the ballot through the
> caucus/convention process, unless and until the party officially revokes that
> certification. While I reject the possibility of removing candidates that rely on the
> law to get on the ballot by gathering signatures, I also reject the possibility of
> removing candidates that rely on the law to participate in the caucus/convention
> system.[62]

The LG's Office's position at the time it issued the Voter and Candidate Clarification

Memorandum, then, is that a political party which has expressed its intent to restrict candidate-

selection procedures to the convention method will still remain a QPP, and that the political

party's candidates who use the convention method will have access to the ballot without concern

that their party's QPP status will be revoked. The LG's Office has also taken the position that

signature-gathering candidates from that political party will still have access to the ballot even

though use of that method is contrary to stated URP intent.[63] To date, several URP members

have declared their intention to gather signatures and have been qualified by the LG as having

gathered enough verified signatures to appear on the URP's primary election ballot, including

Sen. Weiler and the LG's running mate, Governor Gary R. Herbert.[64]

### The Current Lawsuit

The URP filed the current lawsuit on January 15, 2016, asserting that SB54 was

unconstitutional.[65] The current lawsuit appears to be very similar to the First Lawsuit in that it

named the Governor and the LG as Defendants and seeks relief under the First and Fourteenth

---

[62] Voter and Candidate Clarification Memorandum at 3 (Jan. 19, 2016), docket no. 73, lodged Apr. 5, 2016.

[63] However, it is unclear if the Lieutenant Governor's Office will place signature-gathering candidates from that political party on the ballot *as a candidate of the political party* they listed on their declaration of candidacy or if the signature-gathering candidates will appear on the ballot *with no party affiliation*.

[64] Utah Lieutenant Governor's Office, 2016 Candidate Signatures (Apr. 4, 2016, 04:18:41 PM), http://www.elections.utah.gov/election-resources/2016-candidate-signatures (last visited Apr. 14, 2016).

[65] URP Complaint ¶ 36.

Amendments of the United States Constitution.[66] Specifically, in language very similar to

paragraphs 110(a) through (h) of URP Complaint 1 in the First Lawsuit, paragraph 73 of the

URP Complaint in this lawsuit asserts that:

> 73. The Party is entitled to a declaratory judgment establishing the unconstitutionality of the SB54 set forth above as applied to the manner in which
>
> . . .
>
> b. the State has taken away and misappropriated the Party's right to certify and endorse its nominees for elected office;
>
> c. the State has taken away and misappropriated the Party's right to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot;
>
> d. the State has taken away and misappropriated the Party's right to determine for itself the candidate selection process that will produce a nominee who best represents the Party's political platform;
>
> e. burdened the Party's associational rights by mandating changes to the Party's internal rules and procedures, at the threat of depriving the Party of its rights if it refuses to comply, that disadvantage the Party, and that the Party has rejected and that conflict with the rules the Party has determined for itself, as set forth in its Constitution and Bylaws, will produce a nominee who best represents the Party's political platform;
>
> f. burdened the Party's associational rights, and the rights of disassociation, by imposing upon the Party a nominee who may not necessarily be a Party member and without guaranteeing that nominee has been selected by a majority of Party members participating in the primary election;
>
> g. burdened the Party's associational rights and rights to free speech, by taking away the Party's right to have its nominees commit themselves to the Party Platform "as the standard by which my performance as a candidate and as an officeholder should be evaluated," and replacing it with a process that requires only that candidates gather signatures;
>
> . . . [67]

---

[66] *Id.* ¶ 5.

[67] *Id.* ¶ 73. Summary judgment was previously granted in favor of the LG with respect to subparagraphs 73(a), (i), and (j). *See* 75 Order at 42. Also, the URP acknowledged in a hearing on February 4, 2016 that subparagraph 73(h) was not at issue because it was resolved in the First Lawsuit. Feb. 4 Tr. at 23. Further, subparagraph 73(k) is a

The UDP was permitted to intervene in the current lawsuit, and it asserts claims under the First and Fourteenth Amendment as well.[68]

   After the current lawsuit was filed, a hearing was held to discuss the claims raised by the current lawsuit.[69] At the hearing, upcoming election deadlines were discussed and an expedited schedule was set for briefing of motions.[70] Certification of certain questions was also discussed.[71]

## Certified Questions

   Two questions from the current lawsuit were certified to the Utah Supreme Court. Both questions are based largely on the Either or Both Provision. The first question asks whether it is up to the *member* or the *party* to choose how the member of the party seeks nomination:

> In interpreting Utah Code § 20A-9-101(12)(d), § 20A-9-406(3) and § 20A-9-406(4), does Utah law require that a Qualified Political Party (QPP) permit its members to seek its nomination by "either" or "both" of the methods set forth in § 20A-9-407 and § 20A-9-408, or may a QPP preclude a member from seeking the party's nomination by gathering signatures under § 20A-9-408?[72]

The second question asks whether the LG must revoke the QPP status of a political party that has elected to be a QPP but has not satisfied one or some of the requirements of a QPP, such as those listed in Utah Code § 20A-9-101(12):

---

"catch-all" which does not raise new subject matter that is not already alleged in the previous subparagraphs. Thus, this memorandum decision and order addresses only subparagraphs 73(b) through (g).

[68] Complaint of Intervenor Utah Democratic Party ("UDP Complaint") ¶¶ 36, 49, 56, docket no. 20, filed Feb. 4, 2016.

[69] Minute Entry, docket no. 21, entered Feb. 4, 2016.

[70] *Id.*; *see also* Important Dates in 2016 Utah Election Schedule, attached to Minute Entry, docket no. 21, filed Feb. 4, 2016.

[71] Minute Entry, docket no. 21, entered Feb. 4, 2016.

[72] First Certification Order at 1.

If a registered political party ("RPP") that has elected to be designated as a Qualified Political Party ("QPP") fails to satisfy the requirements of a QPP, must the Lieutenant Governor treat that political party as an RPP under Utah law?[73]

**Utah Supreme Court Ruling on Certified Questions**

On April 8, 2016, the Utah Supreme Court issued a ruling on the first certified question.[74] The Court concluded that the Either or Both Provision requires a QPP to permit the member, not the party, to choose which path to take to the party's nomination.[75] The Court noted that "to meet the definitional requirements of a QPP, a political party must permit its members to seek its nomination by 'choosing to seek the nomination by either or both' the convention and the signature process."[76] The Court stated that it could not accept the URP's first assertion—that the language of the Either or Both Provision actually permits the party, not the member, to choose the path to the ballot—because that argument "simply ignores the structure of the statutory language . . . ."[77] The Court also held that allowing the member to choose the path to the ballot was in harmony with Utah Code §§ 20A-9-406(3) and -406(4).[78]

In rejecting the URP's argument that allowing the member to choose the path to the ballot interfered with the URP's internal procedures, the Court noted that "[t]he statute does not require the [URP] to seek certification as a [QPP], and it does not purport to mandate the adoption of any provisions in its constitution, bylaws, rules, or other internal procedures."[79] "However, if a party seeks certification as a QPP, it must comply with the statute's

---

[73] Second Certification Order at 3.

[74] *Utah Republican Party*, 2016 UT 17.

[75] *Id.* ¶ 4.

[76] *Id.*

[77] *Id.* ¶ 5.

[78] *Id.*

[79] *Id.* ¶ 6.

requirements."[80] The Court also stated that it "harbor[ed] some doubt as to whether the [URP] has raised any legitimate constitutional arguments that the State may not regulate the election process and favor particular measures to increase access to the ballot."[81]

Finally, the Court declined to answer the second question because it was "purely hypothetical and not ripe for review."[82] "[T]here are multiple options available to the [URP] once this court's interpretation of the QPP statute is published, and it is not clearly established in the record which of those the party will choose."[83] The Court stated that there was no process identified "by which the [URP] could or would revoke the membership of a non-compliant candidate."[84] In fact, the Court noted, "counsel for the [URP] in this case made the following statement to the federal district court on February [4], 2016: 'If the state law says that we have to allow both routes and if that is what the Supreme Court decides and if we have elected to be a QPP, then we would have to figure a way how to change our constitution and by-laws to conform to the state law.'"[85] The Court stated that the "differing and hypothetical indications" of the URP's "future behavior" discouraged the Court from "offer[ing] an advisory opinion on the future obligations of the [LG], where such advice would have to account for predicted future behavior of the party."[86]

---

[80] *Id.*

[81] *Id.* ¶ 7.

[82] *Id.* ¶ 8.

[83] *Id.* ¶ 9.

[84] *Id.*

[85] *Id.* ¶ 10.

[86] *Id.*

### URP's Constitution, Bylaws, and Rules

The URP is a Utah RPP.[87] The URP's candidate selection process includes caucus meetings, nominating and organizing conventions, and a primary election under certain circumstances.[88] The URP's Constitution provides that "Party membership is open to any resident of the State of Utah who registers to vote as a Republican and complies with the Utah Republican Party Constitution and Bylaws, and membership [requirements] may be further set forth in the Utah Republican Party Bylaws."[89] The URP's Bylaws require that candidates running for "any federal or statewide office" must "sign and submit a certification . . . and a disclosure statement."[90] The certification states that the candidate "will comply with the rules and processes set forth in the Utah Republican Party Constitution and these Bylaws . . . ."[91] The disclosure statement must state that

> either: (1) "I have read the Utah Republican Party Platform. I support that Platform and accept it as the standard by which my performance as a candidate and as an officeholder should be evaluated. I certify that I am not a candidate, officer, delegate nor position holder in any party other than the Republican party [sic]." Or (2) "I have read the Utah Republican Party Platform. Except for the provisions specifically noted below, I support that Platform and accept it as the standard by which my performance as a candidate and as an officeholder should be evaluated. I certify that I am not a candidate, officer, delegate nor position holder in any party other than the Republican party [sic]."[92]

---

[87] 41 URP MPSJ at 5, ¶ 1 (citing Thomas Dep. at 100:13). Undisputed by the LG. LG Opposition at xii, ¶ 1. Undisputed by UDP. UDP Opposition at 5, ¶ 1(a).

[88] 41 URP MPSJ at 7, ¶ 13 (citing Declaration of James Evans ("Evans Decl.") ¶ 20, attached as Ex. C to Plaintiff's Amended Motion for a Preliminary Injunction, ECF No. 13-3 in First Lawsuit, filed Jan 5, 2015; Utah Republican Party Constitution ("URP Constitution") Art XII.1.A-.B & .2.A-J, Ex. 1 to Memorandum in Opposition to Defendant's Motion for Summary Judgment, ECF No. 177-1 in First Lawsuit, filed Oct. 9, 2015). Undisputed by the LG. LG Opposition at xvi, ¶ 13. Undisputed by UDP. UDP Opposition at 9, ¶ 13.

[89] URP Constitution Art. I.C.

[90] Utah Republican Party Bylaws ("URP Bylaws") at § 8.0(A), Ex. 2 to Memorandum in Opposition to Defendant's Motion for Summary Judgment, ECF No. 177-1 in First Lawsuit, filed Oct. 9, 2015.

[91] *Id.*

[92] *Id.*

The URP's nominating convention procedures require that delegates be notified of any candidate's failure to submit a Platform disclosure statement immediately prior to balloting for that candidate's office.[93] Except for candidates running unopposed, delegates to the nominating convention vote for URP nominees only after substantive speeches are made either by the individual candidates or on their behalf.[94]

The URP's Constitution and Bylaws dictate the voting procedure for the nominating conventions, mandating multiple ballots for each elected office until the field is winnowed to the top two candidates, or until a candidate receives 60% or more of the delegate's vote.[95] The URP's Constitution provides that "[a] candidate for an office that receives 60% or more of the votes cast at any point in the balloting process at the state nominating conventions shall proceed to the general election."[96] If no candidate receives 60% or more of the delegates' vote at convention as to a particular elected office, the URP nominates the top two candidates to run in a primary election.[97]

### URP's Additional Statements of Position

After the Utah Supreme Court issued its ruling on the certified questions, the URP was asked to file a memorandum:

- Stating whether URP claims the statute, as interpreted by the Utah Supreme Court in *Utah Republican Party v. Cox*, 2016 UT 17 impermissibly burdens the party;

- Stating whether the URP will "comply with the requirements of the QPP statute as confirmed in [the] opinion," *Utah Republican Party*, 2016 UT 17 [¶] 11, and if so, which relief sought by various parties would be moot;

---

[93] *Id.* at § 8.0(B).

[94] URP Constitution Art. XII, § 2(F).

[95] *Id.* § 2(I); URP Bylaws §7.0(D)(3).

[96] URP Constitution Art. XII, § 2(I).

[97] URP Bylaws §7.0(D)(3).

- Identifying any URP rule, regulation, procedure, bylaw or other provisions which expressly prohibits, limits, or penalizes a member from using the signature gathering process and attaching the identified materials;

- Identifying any process by which the Utah Republican Party may revoke a person[']s membership and attaching the identified materials;

- Stating whether the URP has commenced any such revocation proceeding as of the date of this docket text order and attaching all documentation of it;

. . . .[98]

The URP filed its memorandum on April 13, 2016 ("April 13 Response").[99] The URP stated that the Utah Supreme Court's interpretation of the Either or Both Provision impermissibly burdened the URP's rights[100] and "impos[es] internal candidate selection procedures on the URP that conflict with those set forth in its Constitution and Bylaws."[101] The URP stated that it "will NOT" comply with the Utah Supreme Court's interpretation of the Either or Both Provision.[102] In earlier briefing the URP had taken this position, stating that it had "notified its members that it intends to select its candidates through the convention process rather than the signature gathering process, and that any person who seeks to avoid the convention selection process by declaring candidacy through the signature gathering process will be in violation of the [URP] rules and his or her membership revoked."[103]

In the URP's April 13 Response, the URP clarified that its position was that "[a] member's act of gathering signatures does not disqualify him or her from also seeking the party's

---

[98] Docket Text Order, docket no. 77, entered Apr. 11, 2016.

[99] The Utah Republican Party's Memorandum in Response to Docket Order 77 ("April 13 Response"), docket no. 80, filed Apr. 13, 2016.

[100] *Id.* at 1.

[101] *Id.* at 2.

[102] *Id.* at 14. The URP later clarified that it meant it would comply with the requirements of the law "[i]f this Court rules that the QPP provisions of SB54 are constitutional . . . ." Utah Republican Party's Clarification and Correction to Response to Court's Order (Dkt. 77), docket no. 85, filed Apr. 15, 2016.

[103] 41 URP MPSJ at 16-17.

nomination through the convention process. Only if that member fails to also satisfy the party requirement to obtain at least 40% of the convention votes for that office would a member be barred from seeking the nomination."[104] The URP stated that the LG's "act of certifying candidates who qualify for the ballot only by gathering signatures violates the [URP]'s right to freedom of association, whether or not the [URP] terminates the member who is certified."[105]

Because the URP had stated it would revoke the membership of any URP candidate using the signature gathering process,[106] the URP was asked about the revocation process. The URP stated that it had "not commenced any revocation proceeding against a member as of April 11, 2016,"[107] but that if it needed to do so, the proceeding would follow the procedures outlined in Roberts Rules of Order.[108] The URP quotes several pages verbatim from the Roberts Rules of Order.[109]

## DISCUSSION

The URP seeks summary judgment on two claims: (1) the constitutionality of SB54 and (2) invidious discrimination.[110] Each of these claims will be discussed below. Prior to discussing those claims, however, there are three non-merits arguments that must be addressed. Those arguments are preclusion, ripeness, and standing.

---

[104] April 13 Response at 49.

[105] *Id.*

[106] 41 URP MPSJ at 16-17.

[107] April 13 Response at 49.

[108] *Id.* at 16.

[109] *Id.* at 17-20.

[110] 41 URP MPSJ at 3-5.

**Preclusion Issues Presented**

The 75 Order denied the LG's and the UDP's preclusion defenses, but did not rule whether claim preclusion bars the URP claims regarding the Either or Both Provision.[111] The 75 Order also did not rule on the LG's argument that claim preclusion bars "all [URP] claims."[112] The LG does not articulate what it means by "all claims," but because the 75 Order denied all arguments that were not expressly addressed, the only claim preclusion argument that will be addressed in this Memorandum Decision and Order is the argument that claim preclusion bars URP's claims *with respect to the Either or Both Provision*. That argument is construed to mean that claim preclusion bars the URP from pursuing subparagraphs 73(b) through (g).

The UDP also argues that *issue preclusion* bars URP from pursuing subparagraphs 73(b) through (g).[113] Claim preclusion will be discussed first, followed by discussion of issue preclusion.

**Claim Preclusion Does Not Bar URP Claims in Subparagraphs 73(b) through (g)**

Claim preclusion "ensures finality of decisions."[114] "A final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[115] Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."[116] Claim preclusion applies when the following elements are present: (1) a final judgment on the

---

[111] 75 Order at 40-41.

[112] *Id.* ("The LG's argument that claim preclusion applies to bar *all* of URP's claims is not addressed in this Memorandum Decision and Order." (emphasis in original)).

[113] UDP Opposition at 20.

[114] *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

[115] *Id.*

[116] *Id.*

merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.[117]

With respect to the first element, all parties agree that the First Lawsuit resulted in a final judgment on the merits.[118]

The second element also is satisfied since there is "identity of parties" in the two lawsuits. The URP was a party to the First Lawsuit and initially sued the Governor and LG in their official capacities. While it is true that the intervenors in the two cases are different,[119] and that the Governor was dismissed from the current case,[120] the named parties at the commencement of each suit are identical—the URP, as plaintiff, sued the Governor and the LG. Often the "identity of parties" element is asserted against a plaintiff who *did not* take part in a prior lawsuit, and a defendant will argue that the plaintiff was in "privity" with the plaintiff who was a party in the prior lawsuit.[121] Thus, as to the UDP, this element is not satisfied because the UDP was not a plaintiff in the First Lawsuit and likely cannot be said to be in "privity" with the URP. However, claim preclusion is not raised as to the UDP. It is raised as to the URP. Thus, *as to the URP*, the "identity of parties" element is satisfied.

The third element is not satisfied, however, because the causes of action are not identical in both suits. The LG and the UDP argue that the causes of action are identical because the

---

[117] *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999) ("Generally, Supreme Court precedent, Tenth Circuit precedent, and the majority of circuit courts note only three requirements in the initial determination of whether claim preclusion may apply."); *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008).

[118] URP Reply at 2; Combined Opposition to the Motions of Lieutenant Governor Cox and the Utah Democratic Party for Judgment on the Pleadings ("47 URP Opposition") at 13, docket no. 47, filed Feb. 19, 2016 ("[T]he First Lawsuit already resulted in a final judgment"); UDP Opposition at 24 ("[T]here was a final adjudication on the merits"); LG Opposition at 1 (incorporating previous briefing); 38 LG MJP at 2 ("The Court's orders of dismissal in the prior case constitute a final judgment on the merits.").

[119] CPU intervened in the First Lawsuit; UDP intervened in the current lawsuit.

[120] Order Dismissing Defendant Gary R. Herbert Governor of Utah, docket no. 16, entered Feb. 1, 2016.

[121] *See Pelt*, 539 F.3d at 1281.

wording of subparagraphs 73(b) through (g) is identical to some of the language in the complaint in the First Lawsuit.[122] The LG and the UDP argue that the URP now makes the same assertions it made in the First Lawsuit, such as the contention that "the State" has taken away the URP's right to communicate its endorsement on the general election ballot and has taken away the URP's right to determine for itself the candidate selection process that will produce a nominee who represents the URP's platform.[123] The LG and the UDP are correct that the wording in both complaints is the same, but this case arises in a different factual context than the First Lawsuit. The words are directed at and allegedly descriptive of different alleged defects in SB54.

In the First Lawsuit, the URP had not made a statement that its candidates would be prohibited from following the QPP signature gathering path. The URP now takes that position.[124] In the First Lawsuit, the LG had not stated whether the URP could bar its candidates from pursuing signature gathering. Now the LG has issued at least two statements on that question, stating that the URP must allow the member to have access to the primary ballot by gathering signatures.[125] And in the First Lawsuit, the Utah Supreme Court had not interpreted the Either or Both Provision. Now a ruling from the Utah Supreme Court states that it is the member's right to choose their path to the ballot.[126]

Thus, the central issue in this case is different from the issues presented in the First Lawsuit. Here, the central question is whether it is a "severe" burden on the URP's rights for the

---

[122] UDP Opposition at 24; 38 LG MJP at 5.

[123] 38 LG MJP at 4; UDP Opposition at 24.

[124] Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox at 2-3 (Dec. 3, 2015), attached as Ex. 1 to Notice of Filing of December 3, 2015 Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox, docket no. 74-1, filed Apr. 5, 2016.

[125] Letter from Utah Director of Elections Mark Thomas, Lt. Gov.'s Office, to Utah State Senator Todd Weiler (Nov. 20, 2015), attached as Ex. 2 to URP Complaint; Voter and Candidate Clarification Memorandum at 3 (Jan. 19, 2016), docket no. 73, lodged Apr. 5, 2016.

[126] *Utah Republican Party*, 2016 UT 17, ¶ 4.

LG to allow a URP candidate to gather signatures to obtain primary ballot access when the URP has expressed a desire that its candidates obtain primary ballot access only by participating in the URP's convention.

To be sure, claim preclusion does not apply with respect to the URP claims about the Either or Both Provision. The Either or Both Provision provides that a QPP is a registered political party that:

> (d) permits a member of the registered political party to seek the registered political party's nomination for any elective office by the member choosing to seek the nomination by either or both of the following methods:
>
> > (i) seeking the nomination through the registered political party's convention process, in accordance with the provisions of Section 20A-9-407; or
> >
> > (ii) seeking the nomination by collecting signatures, in accordance with the provisions of Section 20A-9-408; . . . .[127]

The parties disagreed as to the interpretation of this section. The UDP and the LG agreed that the proper interpretation was that a QPP must allow *the member* to choose the method of nomination. But the URP argued that the proper interpretation was that the *party* may choose the method of nomination. The URP took the position that as long as the party provided *either* of the methods identified in the statute—convention (-407) *or* signature gathering (-408)—the party has satisfied the requirements of the Either or Both Provision. The Utah Supreme Court has now held that the statute gives the member the right to seek a place on the primary election ballot by signature gathering, by the convention, or both.[128] The Supreme Court's definitive interpretation of the Either or Both Provision places this case in a different context than the First Lawsuit.

---

[127] Utah Code § 20A-9-101(12)(d).

[128] *Utah Republican Party*, 2016 UT 17, ¶ 4.

Also, the Either or Both Provision was not squarely at issue in the First Lawsuit. While it is true that some discussion took place about this provision in the October 27 hearing, the proper interpretation of the Either or Both Provision became ripe only after the conclusion of the First Lawsuit when the URP formally declared to the LG that it would restrict its candidate-selection procedures to the convention method, thereby prohibiting any URP candidate from gathering signatures.[129] That position was different than the LG's interpretation, and the LG stated that he disagreed that URP could make this restriction.[130] Later, the LG's Office stated that if the URP revoked Sen. Weiler's party membership for gathering signatures, the URP *would no longer qualify as a QPP under Utah election law*.[131]

Subsequently, on January 19, 2016, the LG's Office issued a Voter and Candidate Clarification memorandum which modified the position taken in the letter to Sen. Weiler.[132] The LG's Office no longer took the position that it would revoke the URP's QPP status if it refused to allow its candidates to gather signatures. Rather, the LG's Office took the position that the URP could still remain a QPP if it restricted its candidate selection process to only the convention route. The LG's Office has also taken the position that signature-gathering candidates from the URP will still have access to the ballot.[133]

---

[129] Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox at 2-3 (Dec. 3, 2015), attached as Ex. 1 to Notice of Filing of December 3, 2015 Letter from URP Chairman James Evans to Lt. Gov. Spencer J. Cox, docket no. 74-1, filed Apr. 5, 2016.

[130] Letter from Lt. Gov. Spencer J. Cox to URP Chairman James Evans at 1 (Nov. 19, 2015), attached as Ex. 2 to Complaint of Intervenor Utah Democratic Party, docket no. 20-2, filed Feb. 4, 2016.

[131] Letter from Utah Director of Elections Mark Thomas, Lieutenant Governor's Office, to Utah State Senator Todd Weiler (Nov. 20, 2015), attached as Ex. 2 to URP Complaint, docket no. 2-2, filed Jan. 15, 2016.

[132] Voter and Candidate Clarification Memorandum (Jan. 19, 2016), docket no. 73, lodged Apr. 5, 2016.

[133] However, it is unclear if the LG's Office will place signature-gathering candidates on the ballot *as a candidate of the political party* they listed on their declaration of candidacy or if the signature-gathering candidates will appear on the ballot *with no party affiliation*.

After the First Lawsuit ended, several URP members have declared their intention to gather signatures and have been qualified by the LG as having gathered enough verified signatures to appear on the URP's primary election ballot, including Sen. Weiler and the LG's running mate, Governor Gary R. Herbert.[134] These events were not addressed in any of the rulings of the First Lawsuit. Thus, arguments regarding the Either or Both Provision are not subject to claim preclusion because they were not "previously available to the parties"[135] and only became ripe after the conclusion of the First Lawsuit.

Even though the URP alleges the same rights are threatened, the factual circumstances and the issues raised in this lawsuit are different. Therefore, the "identity of the cause of action" element is not satisfied and claim preclusion does not bar URP from pursuing its claims under subparagraphs 73(b) through (g).

**Issue Preclusion Does Not Bar URP Claims in Subparagraphs 73(b) through (g)**

"In contrast to claim preclusion, issue preclusion [also known as collateral estoppel] bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."[136] Issue preclusion applies when the following elements are present: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in

---

[134] Utah Lieutenant Governor's Office, 2016 Candidate Signatures (Apr. 4, 2016, 04:18:41 PM), http://www.elections.utah.gov/election-resources/2016-candidate-signatures (last visited Apr. 14, 2016).

[135] *Brown*, 442 U.S. at 131 ("Res judicata [claim preclusion] prevents litigation of all grounds for, or defenses to, recovery *that were previously available to the parties*, regardless of whether they were asserted or determined in the prior proceeding." (emphasis added)).

[136] *Park Lake Resources LLC v. U.S. Dep't of Ag.*, 378 F.3d 1132, 1136 (10th Cir. 2004).

privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."[137]

The second and third elements are satisfied. The parties agree that the First Lawsuit was finally adjudicated on the merits[138] and URP—the party against whom issue preclusion is invoked—was a party to the First Lawsuit. However, as discussed above, the issues raised in this lawsuit are not identical to the ones presented in the First Lawsuit and therefore, the URP did not have a full and fair opportunity to litigate them. Consequently, the first and fourth elements of issue preclusion are not satisfied and URP is not barred under the doctrine of issue preclusion from pursuing its claims under subparagraphs 73(b) through (g).

Because neither claim preclusion nor issue preclusion apply to bar URP from pursuing its claims under subparagraphs 73(b) through (g), the preclusion arguments fail. This conclusion fully resolves the 37 UDP MJP and the 38 LG MJP. Accordingly, those motions are DENIED.

### The Issues are Ripe

The LG argues the URP's claims are not ripe "because URP's rules and internal procedures are not in conflict with state law."[139] In other words, the LG argues that the URP's Constitution and Bylaws do not restrict candidates from gathering signatures and do not require revocation of membership if a URP candidate decides to gather signatures.[140] Instead, the LG argues, the URP Constitution provides that membership is open to all who register to vote as a

---

[137] *Id.*

[138] URP Reply at 2 (incorporating previous briefing); 47 URP Opposition at 13 ("[T]he First Lawsuit already resulted in a final judgment"); UDP Opposition at 24 ("[T]here was a final adjudication on the merits"); LG Opposition at 1 (incorporating previous briefing); 38 LG MJP at 2 ("The Court's orders of dismissal in the prior case constitute a final judgment on the merits.").

[139] LG Opposition at 4.

[140] *Id.* at 5.

Republican and commit to comply with the URP Constitution and Bylaws.[141] The LG further argues that the URP Bylaws require a URP candidate to agree to comply with the procedures governing the URP convention and must submit a disclosure statement stating the candidate either supports or partially supports the URP Platform.[142] But "[c]onspicuously absent from URP's Bylaws is any restriction on candidates collecting signatures to access the primary ballot."[143] Therefore, the LG argues, the URP's claims "depend on contingent future events" and are not ripe.[144]

The URP disagrees, arguing that the claims are ripe for adjudication because signature gathering has already begun and the LG "has stated that he will overrule any objection by the [URP] to nominees who bypass the convention method in favor of signature gathering."[145] This, the URP argues, constitutes "injury in fact" because it is a "threat of enforcement" of an unconstitutional law.[146] The URP argues that if it is required to wait until future events occur, "the 2016 primary election will have already concluded with the risk that the entire election could be invalidated."[147]

"In order for a claim to be justiciable under Article III, it must present a live controversy, ripe for determination, advanced in a 'clean-cut and concrete form.'"[148] The ripeness inquiry, however, "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm

---

[141] *Id.* at 4-5.

[142] *Id.*

[143] *Id.* at 5.

[144] *Id.* at 5-6 (citing Utah Code §§ 20A-9-101(12)(d) and -202(5)).

[145] URP Reply at 5.

[146] *Id.*

[147] *Id.* at 4.

[148] *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008).

asserted has matured sufficiently to warrant judicial intervention."[149] "First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss."[150] "The principle that one does not have to await the consummation of threatened injury to obtain preventative relief is particularly true in the election context . . . ."[151]

The election process is currently well underway. Political parties have already designated whether they will be a QPP[152] and QPPs have indicated which political parties' members may vote in their primary election.[153] QPP candidates have filed their "notice of intent" to gather signatures[154] and have filed declarations of candidacy to participate in the QPP's convention[155] and gather signatures.[156] The time for filing objections to QPP candidates' declarations of candidacy has passed.[157] QPP candidates have gathered signatures[158] and submitted those signatures for verification.[159] The URP convention is scheduled to take place on April 23, 2016, and the LG must indicate to the URP which signature-gathering candidates have qualified for the URP's primary election ballot on April 22, 2016, the day before the URP convention.[160] On April 29, 2016, ballot forms must be at the printer so that by May 13, 2016, ballots may be

---

[149] *Id.*

[150] *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995).

[151] *Id.* at 1501 (citations and internal quotation marks omitted, alterations incorporated).

[152] *See* Utah Code § 20A-9-101(12)(e) (requiring notice by Sep. 30, 2015).

[153] *See id.* § 20A-9-406(1) (requiring notice by Mar. 1, 2016).

[154] *See id.* § 20A-9-408(3)(a) (requiring notice between Jan. 1, 2016 and Mar. 17, 2016).

[155] *See id.* § 20A-9-407(3)(a) (requiring notice between Mar. 11, 2016 and Mar. 17, 2016).

[156] *See id.* § 20A-9-407(3)(b) (requiring notice between Mar. 11, 2016 and Mar. 17, 2016).

[157] *See id.* § 20A-9-202(5)(a) (requiring objection by Mar. 24, 2016).

[158] *See id.* § 20A-9-408(8)(b) (allowing signature-gathering between Jan. 1, 2016 and Apr. 9, 2016).

[159] *See id.* § 20A-9-4080(9)(a)(ii) (requiring submission by Apr. 11, 2016).

[160] *See id.* § 20A-9-408(9)(d) (requiring notice by Apr. 22, 2016).

mailed to overseas and military voters.[161] Primary elections will be held on June 28, 2016, just two months away.[162] It would be imprudent to defer the claims raised by the URP until they ripen into the most complete and full injury. At that point, conventions will be past, ballots will be printed, and the election process will be at an advanced stage. Such a delay could risk invalidation of election results.

While the LG is correct that there is nothing in the URP Constitution or Bylaws that expressly prohibits a candidate from gathering signatures, the URP has stated it will revoke the membership of signature-gathering candidates.[163] The URP reaffirmed its position after the Utah Supreme Court definitively ruled on the interpretation of the Either or Both Provision, holding that it is the member's right to gather signatures. The URP has stated it will challenge the placement of signature-gathering candidates on the URP primary ballot.[164] The LG has stated that it will place such candidates on the ballot despite the URP's objection.[165] These opposing positions present the risk that a candidate may appear on the URP's primary election ballot as a member of the URP, in spite of a URP claim that the candidate is not a member,[166] which would raise the issue of the URP's associational rights. The pressing election schedule[167] and the need for an orderly election process require current consideration of the issues.

---

[161] Important Dates in 2016 Utah Election Schedule, docket no. 21, filed Feb. 4, 2016.

[162] *Id.*

[163] 41 URP MPSJ at 16-17 ("The [URP] has notified its members that it intends to select its candidates through the convention process rather than the signature gathering process, and that any person who seeks to avoid the convention selection process by declaring candidacy through the signature gathering process will be in violation of the [URP] rules and his or her membership revoked.").

[164] April 13 Response at 14.

[165] Voter and Candidate Clarification Memo at 3 (Jan. 19, 2016), docket no. 73, lodged Apr. 5, 2016 (rejecting "the possibility of removing candidates that rely on the law to get on the ballot by gathering signatures").

[166] The URP has not indicated that it objected to any candidate's declaration of candidacy on the basis that the candidate is not a member of the URP. *See* Utah Code § 20A-9-202(5) (allowing objection to be made to a candidate's declaration of candidacy "within five days after the last day for filing").

[167] Important Dates in 2016 Utah Election Schedule, docket no. 21, filed Feb. 4, 2016.

Moreover, even if there were no risk that a non-member candidate would appear on the URP's primary election ballot, the URP has indicated that it is injured by the existence of the signature gathering option because it takes away the URP's right to endorse nominees for office, to control the use of its name and to determine its own candidate selection process, and also burdens its associational rights.[168] The substance of these arguments is addressed below. No statement about their sufficiency is made here. For purposes of ripeness, these alleged injuries do not have to take place in order for the URP to have raised a justiciable claim, especially in the context of the First Amendment.[169] The URP's claims are ripe for review.

### Standing Issues and Doctrine

Two standing arguments are raised in the briefing on the 41 URP MPSJ. One is raised by the LG and the other is raised by the URP. The LG argues that the URP does not have standing to bring claims without a URP member joined in the lawsuit.[170] The URP argues the UDP does not have standing to assert the LG's legal rights and interests and participate in the briefing on the 41 URP MPSJ.[171] Each of these arguments is incorrect.

The U.S. Supreme Court has explained that standing must be established by three elements:

> (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;]" (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court[;]" and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of

---

[168] URP Complaint ¶ 73; April 13 Response at 49 (arguing that the LG's "act of certifying candidates who qualify for the ballot only by gathering signatures violates the [URP]'s right to freedom of association, whether or not the [URP] terminates the member who is certified").

[169] *See Kansas Judicial Review*, 519 F.3d at 1116; *New Mexicans for Bill Richardson*, 64 F.3d at 1500-01.

[170] LG Opposition at 7.

[171] URP Reply at 1.

obtaining relief from the injury as a result of a favorable ruling" is not "too speculative[.]" These elements are the "irreducible minimum" required by the Constitution.[172]

**The URP has Standing in the Case**

The three elements of standing are satisfied with respect to the URP. First, the URP has pleaded concrete and particularized injury that is actual or imminent by asserting that its First Amendment rights would be impacted by the LG's decision to allow URP candidates access to the ballot against the URP's wishes. Since the LG has indicated it will authorize signature-gathering candidates to appear on the primary election ballot despite the URP's objections, there is an actual potential injury. Second, the URP has demonstrated a sufficient causal relationship between the alleged injury and the LG's actions. The URP alleges that the LG's placement of signature-gathering candidates on the ballot will injure the URP if the application of the law is unconstitutional as to the URP. Third, the injury will be redressed if the LG is prohibited from enforcing the law as to the URP. Thus, the standing elements are satisfied with respect to the URP.

The LG argues that the URP lacks standing because it has not joined a member of the URP in its claims. As the LG recognizes,[173] a political party has constitutional interests that are distinct from the constitutional interests held by a candidate seeking the nomination of that political party. The URP has established standing as an entity because it has rights that are separate from the interests of an individual member-candidate.

---

[172] *Northeastern Fl. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 508 U.S. 656, 663-64 (1993) (citations omitted).

[173] LG Opposition at 8 ("Regulations of party membership and regulations of primary candidates raise different constitutional issues").

The LG raises valid distinctions between the rights of candidates and parties,[174] but these points do not establish a lack of standing for the URP. Instead, they show that a URP candidate may not have a justiciable claim against the URP until the URP actually revokes the candidate's membership as the URP has indicated it may do. As discussed more fully below, that claim is not presented here. This Memorandum Decision and Order deals only with the claims of the URP as an entity, which the URP has standing to raise.

**The UDP has Standing on the Motion**

The URP's argument that the UDP lacks standing "to oppose the [41 URP MPSJ] Motion"[175] is rejected for three reasons. First, the URP makes no effort to explain how the three elements of standing—injury, causation, and redressability—are not satisfied. Instead, the URP argues that the LG is fully capable of defending the law and does not need the UDP's help to do so.[176] The URP makes this argument because it believes the UDP is merely advancing the rights of "the State," and in that circumstance, a different standing analysis applies.[177] But this is the second reason URP's standing argument fails: the UDP is not seeking to advance the rights of a third party.[178] Rather, it is seeking to advance its own legal rights and to urge the LG to enforce the election laws equally and consistently as to all political parties so that one political party does

---

[174] *Id.* (citing Nathaniel Persily, *Candidates v. Parties: The Constitutional Constraints on Primary Ballot Access Laws*, 89 Geo. L.J. 2181, 2212 (2001)).

[175] URP Reply at 1.

[176] *Id.* at 2 (citing 47 URP Opposition at 3).

[177] *See* URP Opposition at 3 (citing *Brokaw v. Salt Lake City*, Case No. 2:06-cv-00729-TS, 2007 WL 2221065, at *2 (D. Utah Aug. 1, 2007) (stating that "there may be circumstances where it is necessary to grant a third party standing to assert the rights of others," but two additional showings must be made: "(1) that the party asserting the right has a close relationship with the person who possesses the right; and (2) that there is a hindrance to the possessor's ability to protect his own interests.")).

[178] 47 URP Opposition at 3 (citing *Brokaw*, 2007 WL 2221065, at *2 (holding that "a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.")).

not have an advantage over another.[179] As a political party in the State of Utah and as a party in this lawsuit, the UDP may take a position that is contrary to the URP and assert arguments as to the URP's interpretation of the law—even if UDP is an intervenor-plaintiff with no asserted claims against the URP.[180] Third, the URP's argument is rejected because it is an effort to reargue why UDP should not have been allowed to intervene.[181] URP's effort to revisit intervention is improper.[182] The other arguments URP raises with respect to standing, such as the argument that UDP should be realigned as a defendant instead of a plaintiff,[183] are immaterial to the standing issue and are rejected. The UDP has standing to oppose the URP's positions.

Having reviewed the non-merits arguments and finding none of them bar consideration of the merits of the 41 URP MPSJ, the URP's merits arguments will now be discussed. They are: (1) the constitutionality of SB54; and (2) invidious discrimination. Each will be discussed in turn.

**The Either or Both Provision is Constitutional**

The URP argues that it has a "First Amendment Right to limit its membership as it wishes and to choose a candidate selection process that will in its view produce the nominee who best represents its political platform."[184]The URP Complaint alleges "the State is seeking to impose on the Party a system of candidate-selection rules and internal processes that is different from the rules and processes the Party has chosen for itself" and thereby "the State is violating

---

[179] First Amended Complaint of Intervenor Utah Democratic Party ("UDP Amended Complaint") ¶ 32, docket no. 83, filed Apr. 14, 2016.

[180] *See Seminole Nation of Okla. v. Norton*, 223 F.Supp.2d 122, 130 n.11 (allowing plaintiff-intervenor to oppose plaintiff's motion for summary judgment).

[181] URP Reply at 2 ("This is improper and further demonstrates why the UDP should not be a party to this lawsuit.").

[182] Order Granting Motion to Intervene, docket no. 18, entered Feb. 3, 2016.

[183] 47 URP Opposition at 4.

[184] 41 URP MPSJ at 12 (quoting *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008)).

the rights of the Party . . . ."[185] Subparagraphs 73(b) – (g) of the URP Complaint specify these asserted rights.

> b. . . . the . . . right to certify and endorse its nominees for elected office;
>
> c. . . . the . . . right to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot;
>
> d. . . . the . . . right to determine for itself the candidate selection process that will produce a nominee who best represents the Party's political platform;
>
> e. . . . associational rights [to control] the [URP]'s internal rules and procedures . . . ;
>
> f. . . . associational rights, and the rights of disassociation [to ensure that a nominee is a member of the URP and is selected by a majority of URP members] . . . ;
>
> g. . . . associational rights and rights to free speech [to ensure nominees commit themselves to the URP Platform instead of being replaced] with a process that requires only that candidates gather signatures;[186]

Before discussing each of the URP's asserted rights, however, it is important to review the principles and standards used when determining the constitutionality of an election law. As explained in the summary judgment ruling in the First Lawsuit, many cases explain the constitutionality of election laws as the courts analyze whether a law imposes a "severe" burden.[187] That line of cases will not be repeated here. The principle that emerges from those cases is that while a state may regulate elections and political parties, it may not go too far in such regulation. It is "too plain for argument that a State may prescribe party use of primaries or conventions to select nominees who appear on the general-election ballot."[188] But a state may

---

[185] URP Complaint ¶ 54.

[186] *Id.* ¶ 73(b) through (g).

[187] *See* First Lawsuit Summary Judgment Order at 14-22 (explaining line of cases involving election law in First Amendment context).

[188] *Lopez-Torres*, 552 U.S. at 202-03.

not force a political party to associate with unwanted members or voters.[189] Thus, a state has

power to structure and monitor the election process,[190] but the state's power "is not without

limits."[191] The challenge is to determine the state's limits and when a state has crossed the line

between appropriate and inappropriate regulation. The test was thoroughly explained in

*Greenville County Republican Party Executive Committee v. South Carolina*:

> It is unavoidable that election laws will impose some burden upon individual
> voters [and political organizations]. *Burdick*, 504 U.S. at 433, 112 S.Ct. 2059.
> However, "the mere fact that a State's system 'creates barriers . . . does not of
> itself compel close scrutiny.'" *Id.* (internal citations omitted). Instead, "[a] court
> considering a challenge to a state election law must weigh 'the character and
> magnitude of the asserted injury to the rights protected by the First and Fourteenth
> Amendments that the plaintiff seeks to vindicate' against 'the precise interests put
> forward by the State as justifications for the burden imposed by its rule,' taking
> into consideration 'the extent to which those interests make it necessary to burden
> the plaintiff's rights.'" *Id.* at 434, 112 S.Ct. 2059; *see also Eu v. San Francisco
> Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 222, 109 S.Ct. 1013, 103 L.Ed.2d
> 271 (1989). If the court finds that the election regulations impose a severe burden
> on associational rights, they are subject to strict scrutiny and the court will uphold
> them only if they are "narrowly tailored to serve a compelling state interest."
> *Wash. State Grange*, 552 U.S. at 451–52, 128 S.Ct. 1184 (internal citations
> omitted). "If a statute imposes only modest burdens, however, then 'the State's
> important regulatory interests are generally sufficient to justify reasonable,
> nondiscriminatory restrictions on election procedures." *Id.* at 452, 128 S.Ct. 1184
> (internal citations omitted).[192]

Under this framework, the Either or Both Provision is constitutional. It is not a violation

of the URP's constitutional rights to allow a URP candidate to access the URP primary election

ballot by the candidate choosing to gather signatures, participate in the party's convention, or

engage in both processes. This is true even if the URP would prefer to limit the candidate's

options for ballot access to only a single process.

---

[189] *Clingman v. Beaver*, 544 U.S. 581, 589 (2005); *Idaho Republican Party v. Ysursa*, 765 F.Supp.2d 1266 (D. Idaho 2011); *Arizona Libertarian Party et al. v. Brewer*, No. 02-144-TUC-RCC (D. Ariz. 2007).

[190] *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000).

[191] *Lopez-Torres*, 552 U.S. at 203.

[192] *Greenville*, 824 F. Supp. 2d at 662.

**The Signature Gathering Provision and the Either or Both Provision Fulfill Important State Regulatory Interests**

At the outset, it is clear that the Signature Gathering Provision and the Either or Both Provision fulfill important state regulatory interests. Those interests include managing elections in a controlled manner, increasing voter participation, and increasing access to the ballot.[193] By providing more ways for a candidate to qualify for the primary election ballot, ballot access is increased. By requiring that all candidates participate in a primary after participating in a convention or gathering signatures, voter participation and control is increased. Primaries allow all qualified voters to participate rather than limiting voting power to selected delegates. Requiring a primary allows the LG to "ensure compliance with state and federal election laws"[194] more effectively than if nominee selection is left to a party-managed convention process. Unless one of the URP's asserted rights is severely burdened, the important state regulatory interest will support the state requirement of access to the primary election ballot by signature gathering, in spite of party wishes to the contrary.

**Issue Framing is Not Determinative**

The URP and the LG frame the issues differently when speaking of the constitutionality of SB54's requirement that party members have access to the primary election ballot through signature gathering. The variant framing leads them to cite different legal authority and to draw different conclusions. The LG claims that the signature gathering path to the primary election ballot is a legitimate exercise of state regulation of elections,[195] while the URP claims its ability

---

[193] Utah Code § 20A-9-401 ("This part shall be construed liberally so as to ensure full opportunity for persons to become candidates and for voters to express their choice."); Utah Code § 20A-2-300.6 (stating that the LG is "Utah's chief elections officer" and shall "ensure compliance with state and federal election laws").

[194] *Id.* § 20A-2-300.6.

[195] LG Opposition at 9-10.

to regulate membership allows it to bar members who use this state-authorized path.[196] The LG
cites cases upholding state regulation of the election process, while the URP cites cases allowing
political parties to define their membership, control internal processes, and be free from forced
association.

But the URP attempts to use its power to regulate membership, to control internal
procedure, and its freedom of association to contradict state law. None of the parties cite legal
authority dealing with a party rule attempting to override state election legislation, although the
URP cites several cases that are distinguishable from the issues raised in this case, as noted by
the LG and the UDP.[197]

In this balance of power between political parties and state regulation of elections, the
political party may not disguise a contradiction of a valid state regulation as a legitimate use of
its power to regulate membership, control internal procedure, and enjoy freedom of association.
While a political party may do these things, it may not do so in conflict with valid state
regulation of election processes.

**SB54 Provides Significant Control to the URP in the Primary Election Process**

As the burden imposed by the state's regulation is analyzed, the following factors reduce
any burden placed on the URP:

- The URP maintains complete control over who votes in its primary election and has
  the ability to close its primary to all other parties.[198]

---

[196] 41 URP MPSJ at 12-13.

[197] *See* Utah Democratic Party's Response to [80] Utah Republican Party's Memorandum Response to Docket Order
77 at 4-7, docket no. 82, filed Apr. 14, 2016 (distinguishing *Democratic Party v. Wisconsin ex rel. La Follette*,
*Cousins v. Wigoda*, *Ray v. Blair*, *Langone v. Secretary of the Commonwealth*, *Hopfmann v. Connolly*, *United States
v. Classic*, and *Smith v. Allwright*); Defendant's Response to Utah Republican Party's Memorandum in Response to
Docket Order 77 at 3-8, docket no. 84, filed Apr. 14, 2016 (distinguishing *Ray v. Blair*, *Cousins v. Wigoda*, and
*Duke v. Cleland*).

[198] *See* Utah Code § 20A-9-406(1).

- The URP has the ability to restrict signature gathering to members of the URP only.[199]
- An individual may not file a declaration of candidacy as a URP candidate unless the individual is a member of the URP.[200]
- The URP may object to a candidate's declaration of candidacy.[201]

Any burden placed on the URP is significantly reduced because the URP maintains a great deal of control over the primary election process.

**None of the URP's Rights Are Severely Burdened**

Each of the URP's asserted constitutional rights, and the burden placed upon them, will now be addressed specifically below. This section determines that none of the URP's rights are severely burdened.

***The URP's Asserted Right to Certify and Endorse Nominees is Not Severely Burdened***

The URP argues that SB54 takes away its right to certify and endorse nominees. The URP is incorrect. The URP's preferred caucus and convention method is still available to it. If a candidate succeeds at the convention, the URP "shall certify the name of the candidate to the [LG] before 5 p.m. on the first Monday after the fourth Saturday in April [April 25, 2016]."[202] Thus, the URP still retains its ability to hold a convention and certify winning candidates to the LG. Although the URP does not certify candidates directly to the general election ballot as it once was able to do, the URP has cited no case law establishing that it has a constitutional right to certify candidates to the general election ballot.[203] Instead, the URP's right to certify

---

[199] *See id.* § 20A-9-408(8)(b)(i) through (v) (allowing signatures from those who "are permitted by the qualified political party to vote for the qualified political party's candidates in a primary election").

[200] *Id.* § 20A-9-201(2)(a)(iii).

[201] *Id.* § 20A-9-202(5).

[202] *Id.* § 20A-9-407(6)(a).

[203] The URP Constitution Article XII, § 2(I) conflicts with Utah Code § 20A-9-409(4). The URP Constitution states that winners from the URP convention will "proceed to the general election," while the law states that winners from party conventions "shall participate in the primary election for that office."

candidates is derived from the state, which has the power to mandate a primary election and regulate how the primary is structured.[204] Thus, although the URP is not able to certify convention candidates to the general election ballot, the URP has not shown that this is a right for which balancing is required.

Likewise, the URP's right to endorse any candidate it chooses is not affected by SB54. The URP is free to endorse any candidate participating in the convention, any candidate gathering signatures, or any candidate listed on a primary ballot. While it is true that the URP is not able to completely control who appears on the primary ballot, or choose who wins the primary election, the URP's ability to support or endorse a particular candidate is not affected. The URP's attempt to argue that it has an unfettered constitutional right to indicate its endorsement by controlling who appears on a primary ballot or who wins a primary election is not supported by case law. Instead, the case law establishes that a state may mandate a primary election and may enact reasonable regulations to structure the primary election.[205] The Utah Legislature has mandated a primary election in order to increase voter participation, and has allowed the URP to close its primary if it so desires. The URP has not shown that endorsement of a candidate is a right for which balancing is needed.

The URP may still hold a convention, campaign for candidates, fundraise, and endorse any candidate the URP chooses to support.[206] The URP is free to certify any candidate who wins at convention and during the election season may endorse any candidate it chooses. Nothing in SB54 takes these rights away. Thus, the URP is not entitled to relief under subparagraph 73(b).

---

[204] *Lopez Torres*, 552 U.S. at 202-03.

[205] *Id.*

[206] Order Denying Preliminary Injunction at 17.

***The URP Does Not Have a Right to Communicate Its Endorsement on the General Election Ballot and the URP's Ability to Control the Use of Its Name and Emblem on the Ballot is Not Severely Burdened***

As explained in the Order Denying Preliminary Injunction, "there is no protected free speech right to communicate the Party's endorsement on the general election ballot. Ballots serve primarily to elect candidates, not as forums for political expression."[207] "The Supreme 'Court has rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message.'"[208] Therefore, the URP is incorrect that it has a right to communicate its endorsement on the general election ballot.

Further, the URP retains significant control over the use of its name and emblem on the general election ballot because the URP *alone* decides who may vote in the URP primary.[209] Therefore, although the URP no longer is able to certify candidates directly from the convention to the general election ballot, which means a candidate may appear on the general election ballot as the representative of the URP who was not the winner in the convention, this does not constitute a severe burden on the URP. The URP still retains a significant amount of control over the use of its emblem by being able to decide who votes in the URP primary and by endorsing candidates.[210] The URP is not entitled to relief under subparagraph 73(c).

---

[207] Order Denying Preliminary Injunction at 17 (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 453 n. 7 (2008) (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997))).

[208] Order Denying Preliminary Injunction at 17 (quoting *Nevada Com'n on Ethics v. Carigan*, 564 U.S. 117, 131 S.Ct. 2343, 2351 (2011) (quoting *Timmons*, 520 U.S. at 362-63; *Burdick v. Takushi*, 504 U.S. 428, 438 (1991))).

[209] Utah Code § 20A-9-406(1) (allowing QPP to "certify to the lieutenant governor the identity of one or more registered political parties whose members may vote for the qualified political party's candidates").

[210] It is unclear if the Lieutenant Governor's Office will place signature-gathering candidates on the ballot *as a candidate of the political party* they listed on their declaration of candidacy or if the signature-gathering candidates will appear on the ballot *with no party affiliation*.

*The URP's Right to Choose a Candidate Selection Process is Not Severely Burdened*

The URP erroneously believes that it has a constitutional right to choose its nominee only by convention. There is no constitutional right for a political party to choose its nominee exclusively by convention. Instead, the law is clear that the right to "choose a candidate selection process that will in [the political party's] view produce the nominee who best represents [the political party's] platform" is "circumscribed . . . when the State gives the party a role in the election process . . . ."[211] When that happens, the political party's action can be considered "state action," and the state acquires a "legitimate governmental interest in ensuring the fairness of the party's nominating process, enabling [the State] to prescribe what the process must be."[212] The U.S. Supreme Court has "considered it 'too plain for argument' that a State may prescribe party use of primaries or conventions to select nominees who appear on the general election ballot."[213] The URP has not shown its right to choose a candidate selection process is severely burdened.

Under SB54, the URP remains free to choose to be a QPP rather than an RPP. This important decision is left entirely up to the URP without any state interference. By choosing to be a QPP, the URP avails itself of the option to hold a convention. SB54 says nothing about how the URP convention must run. Rather, the URP is free to conduct its convention free from state interference. The candidates emerging from the convention are certified by the URP and appear on the URP primary election ballot. The URP has not identified any way in which the state interferes with the URP's right to choose this candidate selection process.

But the URP argues that is not enough. The URP argues that the signature gathering route circumvents the convention route and thereby undermines the URP's ability to choose the

---

[211] *Lopez Torres*, 552 U.S. at 202-03.

[212] *Id.*

[213] *Id.*

candidate selection process that it believes is best.[214] But as explained above, a political party does not have exclusive power over its candidate selection process. A state may mandate a primary for the selection of nominees and may enact reasonable regulations to conduct the primary.[215]

The addition of a signature route to the ballot may inconvenience the URP leadership or not be preferred by them. But this is the method the Utah Legislature chose to enact. It is a reasonable regulation within the state's general power to manage elections.[216] The URP is not entitled to relief under subparagraph 73(d).

### The URP's Right to Control Internal Rules and Procedures is Not Severely Burdened

The URP also argues that SB54 seeks to control the URP's internal rules and procedures.[217] This argument is similar to the argument immediately above that SB54 impairs the URP's right to choose the candidate selection process the URP views as best. But there are additional aspects which will be addressed in this section.

The Undisputed Material Facts recite that the convention route is the only route the URP Constitution and Bylaws provide. There is no provision in the URP's Constitution and Bylaws that expressly allows a URP candidate to gather signatures. The URP argues that this lack of express authorization is its affirmative bar on gathering signatures.[218] But the URP is incorrect. The URP has failed to cite to any section of its Constitution, Bylaws, or "internal rules" that affirmatively prohibits signature gathering. Silence will not be interpreted as an affirmative bar.

---

[214] 41 URP MPSJ at 17.

[215] *Lopez-Torres*, 552 U.S. at 202-03.

[216] 75 Order at 35-36.

[217] 41 URP MPSJ at 18-19 ("[T]he [LG] is seeking to undercut and eviscerate the [URP]'s candidate selection rules and internal processes . . . .").

[218] *Id.* at 16.

The URP also argues, without any citation to the record or any supporting documentation, that it has "notified its members that it intends to select its candidates through the convention process rather than the signature gathering process[,]"[219] and has apparently informed URP candidates that "any person who seeks to avoid the convention selection process by declaring candidacy through the signature gathering process will be in violation of the Party rules and his or her membership [will be] revoked."[220] There is no indication that the URP's stated intention is supported in the URP Constitution, Bylaws, or any other written documentation, or that the URP has taken any affirmative step in revoking the membership of any URP member for declaring candidacy through the signature gathering process alone.[221] The URP's failure to show a clear party policy defeats its claim that SB54 burdens its internal processes.

In contrast to the URP's silence and inaction, state law *expressly permits* signature gathering.[222] When the Utah Supreme Court interpreted the Either or Both Provision to provide a right to the member to gather signatures,[223] it explained that allowing primary ballot access through signature gathering does not impermissibly interfere with the party's internal procedures:

> The Republican Party argues that our plain language construction of section 20A-9-101(12)(d) would violate [Utah Code § 20A-9-401(2)[224]] by governing or regulating its internal procedures. We disagree. The statute does not require the Republican Party to seek certification as a qualified political party, and it does not purport to mandate the adoption of any provisions in its constitution, bylaws,

---

[219] *Id.* at 16-17.

[220] *Id.* at 17.

[221] April 13 Response at 49.

[222] Utah Code §§ 20A-9-101(12)(d) and -408; *Utah Republican Party*, 2016 UT 17, ¶ 4 ("[T]o meet the definitional requirements of a QPP, a political party must permit its members to seek its nomination by 'choosing to seek the nomination by either or both' the convention and the signature process.").

[223] *Utah Republican Party*, 2016 UT 17, ¶ 5.

[224] Utah Code § 20A-9-401(2) provides that "[t]his part may not be construed to govern or regulate the internal procedures of a registered political party."

rules, or other internal procedures. A registered political party that chooses to function as such incurs no obligation under subsection (12)(d). However, if a party seeks certification as a QPP, it must comply with the statute's requirements. This does not amount to internal control or regulation of the party by the State.[225]

As pointed out above, the URP may not enact rules or procedures contradictory to state regulation in the guise of membership regulation or control of internal procedure. For example, the stated URP intention to ban a member from nomination if that member fails to secure at least 40% of the delegate vote at convention[226] is directly contrary to state law[227] and is invalid. Even if the URP had enacted clear prohibitions on members' use of the signature gathering process, or provisions expelling members who use the process, those rules would be ineffective against valid state regulation of the election process because a state has a "legitimate governmental interest in ensuring the fairness of the party's nominating process, enabling it [the state] to prescribe what the process must be."[228] The U.S. Supreme Court has "considered it 'too plain for argument' that a State may prescribe party use of primaries or conventions to select nominees who appear on the general election ballot."[229]

Thus, a state has the authority to create the process by which candidates appear on the general election ballot, and does not interfere with a political party's internal procedures when it establishes laws regulating primary and general elections. Indeed, rather than interfering with the internal procedures of the party, SB54 gives the URP and all other QPPs considerable control over how they will govern themselves internally. And there is specific instruction in Utah Code § 20A-9-401 stating that the primary election provisions in the law "may not be construed to

---

[225] *Utah Republican Party*, 2016 UT 17, ¶ 6.

[226] April 13 Response at 49.

[227] Utah Code § 20A-9-101(12)(d) (allowing member to access ballot by gathering signatures).

[228] *Lopez Torres*, 552 U.S. at 202-03.

[229] *Id.*

govern or regulate the internal procedures" of the URP.[230] Thus, there is no regulation of the URP's convention procedures, no limitations on membership requirements, no mandate to participate in the general election as a QPP or RPP, and no restriction on who the political party may endorse or support. Further, SB54 offers the URP the opportunity to control who votes in its primary election, to control who signs a candidate's petition, to object to a candidate's declaration of candidacy, and to assure that candidates are URP members. These factors minimize the burden on the URP's internal rules and procedures.

Accordingly, the URP is not entitled to relief under subparagraph 73(e). The URP's concern that its ability to select a "nominee who best represents [its] political platform" is slightly burdened, but "[i]t is unavoidable that election laws will impose some burden upon individual voters [and political organizations]."[231] The presence of a signature gathering route does not prohibit the URP from holding a convention and allowing delegates to select a nominee or two that will, theoretically, represent the URP's views. The URP delegates exercise this right. Now the delegates share the right to designate who appears on the primary election ballot with voters who the URP decides may vote in the party primary election. This is not unconstitutional, and the URP's internal rules must not contradict valid state law.[232]

***The URP's Right of Association and Disassociation to Ensure that a Nominee is a Member of the URP and is Selected by a Majority of URP Members is Not Severely Burdened***

The URP argues that the LG "has threatened to reject any objections made by the [URP] to the candidacy of persons who flaunt the [URP] rules and processes by using the signature

---

[230] Utah Code § 20A-9-401(2) ("This part may not be construed to govern or regulate the internal procedures of a registered political party.").

[231] *Burdick*, 504 U.S. at 433.

[232] *See Greenville*, 824 F. Supp. 2d at 666 ("The statute clearly allows political parties to fashion party rules concerning party primaries, *but those rules must be in accordance with and not in conflict with State law.*" (emphasis added)).

gathering process instead of the convention process" and that the LG "has informed the [URP] that he will certify such candidates as a [URP] candidate, notwithstanding the [URP]'s revocation of that person's membership . . . ."[233] The URP argues that the LG's position on this issue, "coupled with the [LG]'s present ability to [enforce that position] in his capacity as Chief Elections Officer for the State of Utah, has and will chill the First Amendment rights of the [URP] to freely associate with its members, and disassociate with those persons who refuse to abide by the [URP] rules."[234] The URP also argues that if the LG is able to certify signature-gathering candidates to the URP primary ballot, it "will dilute the [URP]'s influence and ability to participate effectively in the political process."[235]

The URP's concern that a nonmember may be selected as the URP's nominee is unfounded. SB207, a bill enacted in 2015 by the Utah Legislature, eliminates the URP's concern that its nominees may not be members of the Republican Party.[236]

There might be constitutional injury to the URP if the LG placed a candidate who was not a member of the URP on the ballot as a nominee of the URP. But no such scenario presents itself here. And in light of the valid implementation of the signature gathering process to fulfill an important state interest, the party may not disguise its rejection of that process as a membership rule or internal process control.

The URP correctly identifies the possibility that a candidate may win the primary election with less than a majority vote.[237] However, as in the First Lawsuit,[238] the URP has failed to

---

[233] 41 URP MPSJ at 17.

[234] *Id.*

[235] *Id.*

[236] Order Denying Preliminary Injunction at 20; *see* Utah Code § 20A-9-201(2)(a)(iii) (stating that an individual may not "file a declaration of candidacy for a registered political party of which the individual is not a member . . . .").

[237] URP Complaint ¶ 73(f).

present legal authority indicating that there is any constitutional guarantee that a party's candidate may only gain access to the general election ballot based on a majority vote. Therefore, the URP is not entitled to relief under subparagraph 73(f).

### *The URP's Right of Free Speech to Ensure Nominees Commit to URP Platform is Not Severely Burdened*

The URP asserts that it has a right to ensure that nominees commit to the URP Platform,[239] but does not cite any legal authority for this proposition.[240] Furthermore, it is undisputed that SB54 does not interfere with the URP's policy of requiring URP candidates running for "any federal or statewide office" to "sign and submit a certification . . . and a disclosure statement."[241] The certification states that the candidate "will comply with the rules and processes set forth in the Utah Republican Party Constitution and these Bylaws . . . ."[242] The disclosure statement must state that

> either: (1) "I have read the Utah Republican Party Platform. I support that Platform and accept it as the standard by which my performance as a candidate and as an officeholder should be evaluated. I certify that I am not a candidate, officer, delegate nor position holder in any party other than the Republican party [sic]." Or (2) "I have read the Utah Republican Party Platform. Except for the provisions specifically noted below, I support that Platform and accept it as the standard by which my performance as a candidate and as an officeholder should be evaluated. I certify that I am not a candidate, officer, delegate nor position holder in any party other than the Republican party [sic]."[243]

Thus, the URP Bylaws require URP candidates to state their adherence to the URP Platform and nothing in SB54 limits the URP requirement. The URP is not entitled to relief under subparagraph 73(g).

---

[238] Order Denying Preliminary Injunction at 20.

[239] URP Complaint ¶ 73(g).

[240] *See* 41 URP MPSJ.

[241] URP Bylaws at § 8.0(A).

[242] *Id.*

[243] *Id.*

***There is No Severe Burden on URP's Asserted Rights***

It is true that the enactment of SB54 changed election laws in the State of Utah. But "the mere fact that a State's system 'creates barriers . . . does not of itself compel close scrutiny.'"[244] The character and magnitude of each of the alleged rights identified by the URP has been analyzed, and when the actual URP rights are measured against the interests offered by the LG as justifications for the burdens imposed—increasing candidate access to the ballot and increasing voter participation—the burdens do not rise to the "severe" level. Thus, the State's important regulatory interests in managing elections in a controlled manner and increasing participation are sufficient to justify the reasonable requirement of access to the primary election ballot through signature gathering.

## SB54 is Not the Product of Invidious Discrimination

The URP argues that it and its members "have a fundamental right to associate and exercise their constitutional rights without being discriminated against based on their allegedly 'extreme' viewpoints."[245] The URP argues that "[u]nder the First Amendment, the government is prohibited from regulating speech 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'"[246] The URP argues that "even under rational-basis review, . . . a law must still have a legitimate purpose" and that "[a]ny legislative motive qualifying as animus is never a legitimate purpose."[247] The URP argues that "once animus is detected, the inquiry is over: the law is unconstitutional."[248]

---

[244] *Burdick*, 504 U.S. at 433 (internal citations omitted).

[245] 41 URP MPSJ at 19 (citing *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 829 (1995)).

[246] 41 URP MPSJ at 19-20 (citing *Rosenberger*, 515 U.S. at 829).

[247] 41 URP MPSJ at 20 (citing *Bishop v. Smith*, 760 F.3d 1070, 1103 (10th Cir. 2014)).

[248] 41 URP MPSJ at 20 (internal quotation marks omitted) (quoting *Bishop*, 760 F.3d at 1103).

While the URP correctly states that animus is not a legitimate purpose for enacting a law, the URP has not shown evidence of animus. The purpose of SB54 is to "ensure full opportunity for persons to become candidates and for voters to express their choice."[249] The Undisputed Material Facts do not show that the URP was targeted or singled out because of its "extreme" viewpoints. Indeed, this argument makes no sense. A majority of the members of the Utah Legislature are members of the URP and it is hard to believe that they would target their own party or the viewpoints their party advances. Furthermore, the URP fails to show how SB54 applies differently to the URP than to other QPPs. All QPPs under SB54 are subject to the same regulations. The "invidious discrimination" argument is rejected on the additional grounds stated in the LG Opposition.[250]

### Severability Need Not Be Considered

No provision of the Utah Code is altered by this Memorandum Decision and Order. Therefore, there is no need to address the severability arguments raised by the 41 URP MPSJ.

### CONCLUSION

Because neither claim preclusion nor issue preclusion apply to bar URP from pursuing its claims under subparagraphs 73(b) through (g), the preclusion arguments fail. This conclusion fully resolves the 37 UDP MJP and the 38 LG MJP. Accordingly, those motions are denied.

Additionally, the URP has failed to establish that SB54 imposes a "severe" burden on any of the alleged rights asserted in subparagraphs 73(b) through (g). To the extent any of those alleged rights are actual constitutional rights, the burden imposed on the URP is not significant and is amply supported by the State's interest in maintaining an orderly election and ensuring

---

[249] Utah Code § 20A-9-401(1).

[250] LG Opposition at 18 (describing *Anderson-Burdick* test and stating that the URP's equal protection challenge "rises or falls on the Court's determination of whether [the URP] has presented evidence to demonstrate the statute severely burdens the [URP]'s constitutional rights"). No severe burden is found here.

increased ballot access and voter participation. The URP's invidious discrimination argument also fails. Accordingly, the URP has failed to establish that it is entitled to summary judgment under subparagraphs 73(b) through (g). The 41 URP MPSJ is denied.

Notice and a reasonable time to respond have been given under Rule 56(f). Therefore, partial summary judgment is granted in favor of the LG and against the URP on the issues raised in the 41 URP MPSJ. Specifically, the LG is entitled to summary judgment that SB54 does not severely burden any of the asserted rights alleged in subparagraphs 73(b) through (g). Declaratory judgment as to the constitutionality of the Either or Both Provision is appropriate.

## ORDER

IT IS HEREBY ORDERED that the 37 UDP MJP[251] is DENIED.

IT IS FURTHER ORDERED that the 38 LG MJP[252] is DENIED.

IT IS FURTHER ORDERED that the 41 URP MPSJ[253] is DENIED.

IT IS FURTHER ORDERED that partial summary judgment is GRANTED for the LG under Rule 56(f) on the issues raised in the 41 URP MPSJ. SB54 does not severely burden any of the asserted rights alleged in subparagraphs 73(b) through (g) of the URP Complaint.

## DECLARATORY JUDGMENT

Declaratory judgment is entered that Utah Code § 20A-9-101(12)(d), which allows candidates for public office to choose to access the primary election ballot by signature gathering, by participating in a party's convention, or both, does not impair the URP's constitutional rights but is a legitimate exercise of the state's power to regulate elections.


Dated April 15, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[251] Utah Democratic Party's Motion for Judgment on the Pleadings and Memorandum in Support Thereof ("37 UDP MJP"), docket no. 37, filed Feb. 12, 2016.

[252] Defendant's Motion for Judgment on the Pleadings and Memorandum in Support ("38 LG MJP"), docket no. 38, filed Feb. 12, 2016.

[253] Utah Republican Party's Motion for Partial Summary Judgment on Subparagraphs 73(b)-(g) ("41 URP MPSJ"), docket no. 41, filed Feb. 17, 2016.